486-07/PJG/EEL
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiffs
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Eric E. Lenck (EL 4547)
Pamela L. Schultz (PS 8675)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NOVOSHIP (UK) LIMITED, CALLY SHIPHOLDINGS
INC., VITAL SHIPPING CORPORATION, and
DAINFORD NAVIGATION INC.,

          Plaintiffs,

- against -

WILMER RUPERTI, SEA PIONEER SHIPPING
CORPORATION, and PMI TRADING INC., JOHN DOE
(fictitious) and JOHN DOE INC. (fictitious),

          Defendants.
------------------------------------------------------------x

**VERIFIED COMPLAINT**

07 CIV 9876

Plaintiffs NOVOSHIP (UK) LIMITED (hereinafter "Novoship"), CALLY SHIPHOLDINGS INC. (hereinafter "Cally"), VITAL SHIPPING CORPORATION (hereinafter "Vital") and DAINFORD NAVIGATION INC. (hereinafter "Dainford"), by their attorneys Freehill, Hogan & Mahar, LLP, as and for their Verified Complaint against the Defendants WILMER RUPERTI (hereinafter "Ruperti"), SEA PIONEER SHIPPING CORPORATION (hereinafter "Sea Pioneer"), and PMI TRADING INC. (hereinafter "PMI"), allege upon information and belief as follows:

NYDOCS1/293320.1

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for fraud arising out of maritime charter party contracts relating to vessels used in maritime commerce. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331.

## THE PARTIES

2. At all material times, Novoship was and still is a company organized and existing under the laws of England with its registered office and principal place of business at Watergate House, 13-15 York Buildings, London WC 2N 6JU and acted as an agent and manager of the vessels *MARSHAL CHUYKOV*, *MOSCOW KREMLIN* and *MOSCOW STARS* on behalf of their owners, respectively, Cally, Vital, and Dainford.

3. At all material times, Plaintiff Cally was and still is a corporation duly organized and existing under the laws of the Republic of Liberia with address and place of business at 80 Broad Street, Monrovia, Liberia and was the owner of the vessel *MARSHAL CHUYKOV*.

4. At all material times, Plaintiff Vital was and still is a corporation duly organized and existing under the laws of the Republic of Liberia, with an address and place of business at 80 Broad Street, Monrovia, Liberia and was the owner of the vessel *MOSCOW KREMLIN*.

5. At all material times, Plaintiff Dainford was and still is a corporation duly organized and existing under the laws of the Republic of Liberia, with an address and place of business at 80 Broad Street, Monrovia, Liberia and was the owner of the vessel *MOSCOW STARS*.

6. At all material times, Defendant Wilmer Ruperti, a/k/a Wilmer Ruperti Perdomo and Wilmer Jose Ruperti Perdomo, was and still is a Venezuelan businessman who at all material

Case 1:07-cv-09876-DLC   Document 1   Filed 11/07/07   Page 3 of 17

3

times owned and controlled Defendants Sea Pioneer and PMI. He has an address c/o Sea Pioneer at Edificio World Trade center, Piso 5, Calle 53-Marbella, Panama City, Panama.

7. At all material times, Defendant Sea Pioneer was and is a corporation duly organized and existing under the laws of the Republic of Panama, with an address at Edificio World Trade center, Piso 5, Calle 53-Marbella, Panama City, Panama. Defendant Ruperti owned or controlled Defendant Sea Pioneer.

8. At all material times, Defendant PMI was and still is a corporation duly organized and existing under the laws of the Republic of Panama with an address at Edificio World Trade center, Piso 5, Calle 53-Marbella, Panama City, Panama. Defendant Ruperti owned or controlled Defendant PMI.

9. Plaintiff Novoship employed Vladimir Mikhaylyuk ("Mr. Mikhaylyuk") as its General Manager from 18 October 2002 to 24 March 2006 pursuant to a written Contract of Employment dated 18 October 2002. From 5 November 2003 to 24 March 2006, Mr. Mikhaylyuk was also a Director of Novoship.

10. In violation of his fiduciary duty to Plaintiffs to act in their best interests, including a duty not to act so as to place himself in the position in which his personal interests would conflict with the interests of Plaintiffs, a duty not to act for the benefit of himself or any third party without the informed consent of Plaintiffs, a duty not to make any secret profit or receive any secret payment from Defendants with whom he was dealing on behalf of Plaintiffs, a duty to account for any secret profit or secret payment, and in violation of his employment contract with Novoship, Mr. Mikhaylyuk conspired with the Defendants to commit and did commit various fraudulent acts relating to the chartering of the vessels *MARSHALL CHUYKOV, MOSCOW KREMLIN* and *MOSCOW STARS*.

11. Working in conjunction with Mr. Mikhaylyuk, Defendants committed fraudulent acts against the Plaintiffs including, but not limited to arranging and paying bribes to Mr. Mikhaylyuk and/or secret commissions and/or secret payments and/or secret profits for themselves and in creating false and fraudulent charter party documents and false communications in furtherance of such frauds, all to the detriment of the Plaintiffs.

12. The charter party frauds involved charter parties with Petroleos de Venezuela S.A. ("PDVSA"), with Interpetrol y Trafigura de Venezuela ("Trafigura") and Nautica Ship Brokers a/k/a Nautika Ship Brokers ("Nautica"), acting as brokers.

13. PDVSA is the Venezuelan National Oil Company, sometimes acting under PDVSA Marketing International, and is a major charterer of oil carrying vessels such as the *MARSHAL CHUYKOV*, the *MOSCOW KREMLIN* and *MOSCOW STARS*.

14. Trafigura, which has offices at Av Fco de Miranda, Parque Cristal Torre Geste, Ofi 3-1, Los Palos Grandes, Caracas, 1060, Venezuela and Nautica, also located in Venezuela were maritime chartering brokers who, on information and belief, were employed by Defendants in the chartering of the vessels *MARSHAL CHUYKOV*, *MOSCOW KREMLIN* and *MOSCOW STARS*.

15. Defendants Ruperti, Sea Pioneer and PMI participated in arrangements with Mr. Mikhaylyuk pursuant to which:

 (a) instead of being chartered by Plaintiffs directly to PDVSA, the *MARSHAL CHUYKOV*, the *MOSCOW KREMLIN* and the *MOSCOW STARS* were secretly chartered to PMI Trading Inc. and then sub-chartered by or through Sea Pioneer Shipping to PDVSA at very much higher rates;

(b)     false documents were produced in order to conceal these arrangements from Plaintiffs and designed to give the impression that the charters of the *MARSHAL CHUYKOV*, the *MOSCOW KREMLIN* and the *MOSCOW STARS* were directly with PDVSA;

(c)     substantial profits were made on the sub-charters by Defendants; and

(d)     substantial payments were made by Defendant Sea Pioneer for the benefit of Mr. Mikhaylyuk through a company called Pulley Shipping Ltd. as bribes through secret commissions relating to such arrangements.

### The *MARSHAL CHUYKOV*.

16. By an email dated 2 October 2002, Mr. Francisco Morillo, of Trafigura, informed Mr. Mikhaylyuk that PDVSA was interested in a time charter of a Panamax tanker. The email was copied to Mr. Ruperti. In an email dated 7 October 2002 to Mr. Ruperti, Mr. Mikhaylyuk offered the *MARSHAL CHUYKOV* for 6 months at a rate of US$13,500 for the first three months and US$13,950 for the second three months. The offer named the account as "PDVSA Petroleo y Gas SA".

17. By email dated 22 October 2002 to Mr. Mikhaylyuk, headed 'Re: Marshal Chuykov/PDVSA', Mr. Ruperti informed Mr. Mikhaylyuk that the management's 'subjects' had been lifted.

18. On 31 October 2002 Mr. Mikhaylyuk sent Mr. Ruperti an email with the heading:

"MT MARSHALL CHUYKOV/PMI TRADING INC//TCP
DATED OCTOBER 25TH, 2002"

The body of the email contained the following:

FINAL RECAP

BEING ALL SUBJECTS LIFTED, WE ARE PLEASED TO RECAP HEREWITH TERMS AND CONDITIONS OF FIXTURE BETWEEN MESSRS PMI TRADING INC AS CHARTERERS AND MESSRS NOVOSHIP AS AGENTS TO OWNERS "CALLY SHIPHOLDINGS INC"...

No copy of this email has been located among Novoship's records.

19. Among Novoship's records is an email dated 1 November 2002 from Mr. Frandcisco Morillo of Trafigura to Mr. Mikhaylyuk. In contrast to the 31 October 202 email referred to above, this 1 November 2002 email is headed as follows:

"M Chuykov/PDVSA Marketing Int t/c/p 25.10.2002—Final Recap.

and, the body of the email has the following:

"BEING ALL SUBJECTGS LIFTED, WE ARE PLEASED TO RECAP HEREWITH TERMS AND CONDITIONS OF FIXTURE BETWEEN MESSRS. PDVSA MARKETING INTERNATIONAL (PMI) AS CHARTERERS AND MESSRS. NOVOSHIP AS AGENTS TO OWNERS 'CALLY SHIPHOLDINGS INC'..."

As appears below, this email, which (unlike the 31 October 2002 email) was retained on Novoship's files, was false in that the *MARSHAL CHUYKOV* was not chartered by Cally Shipping to PDVSA, but to PMI Trading Inc.

20. The hire rate in each of the 31 October 2002 email and the 1 November 2002 email was US$12,152 per day pro rata ("pdpr"). The Plaintiffs are not at present aware of the hire rate charged on the sub-charter to PDVSA.

21. On 28 January 2003, Mr. Mikhaylyuk concluded a further charter party for three months. According to Mr. Mikhaylyuk's January 2003 report (attached to his email of 10 February 2003 to Mr. Vladimir Sakovich and Mr. Vladimir Oskirko of Novoship), the hire rate

was US$12,750 per day, the charterer was PDVSA and the broker was Nautica. The Plaintiffs are not at present aware of the hire rate charged on the sub-charter to PDVSA.

22. According to Mr. Mikhaylyuk's March 2003 report (attached to his email of 23 April 2003 to Mr. Sakovich and Mr. Oskirko), a further 12 months was agreed on 1 April 2003 at a hire rate of US$13,700 pdpr. Again the charterer was PDVSA and the broker was Nautica. The Plaintiffs are not at present aware of the hire rate charged on the sub-charter to PDVSA.

23. To an email dated 29 April 2004 to Novoship's Operations Department, Mr. Mikhaylyuk attached an email of the previous day from Mr. Ruperti, at Trafigura, to Mr. Mikhaylyuk. Mr. Ruperti's email concerned an extension of a time charter in relation to the *SOROKALETIE POBEDY* (a vessel also managed by Novoship). That extension extended the charter to PDVSA for three years from 1 May 2004. Mr. Mikhaylyuk wrote, when forwarding Mr. Ruperti's email to the Operations Department:

> "please use this as well as on MACH [that is to say the *MARSHAL CHUYKOV*] with agreed amendments as per Addendum."

The Plaintiffs have been unable to find further documentation relating to this extension, but Cally Shipping has been receiving US$16,000 per day in hire.

24. PDVSA in fact paid hire at the rate of US$28,750 pdpr under a 1 year charter party between PDVSA and disponent owners Sea Pioneer Shipping. That charter party came to an end in May 2007. The difference in the rates came to about US$4,653,750 over the 1 year term. The Plaintiffs are not aware of what payments PDVSA made for the hire of the *MARSHAL CHUYKOV* prior to May 2006.

### The *MOSCOW KREMLIN*.

25. An email dated February 2003 from Mr. Mikhaylyuk to Mr. Ruperti, at Trafigura, copied to Mr. Morillo and headed:

"Moscow Kremlin/PDVSA—Owner's Offer"

offered a time charter of the *MOSCOW KREMLIN* (owned by Vital Shipping) to PDVSA for a period of 6 months or one year (at the charterer's option) at rates of US$34,500 pdpr for the first 6 months, US$35,500 pdpr for the second six months or US$32,500 if for a straight 12 months.

26. On 10 February 2003, Mr. Mikhaylyuk sent to Mr. Ruperti and Mr. Morillo and email headed "MOKR/PDVSA—t/c" in which he wrote:

> "hope can congratulate you with all subs inorder (please see attached Voyage Orders for MOSCOW KREMLIN/PDVSA t/c)."

27. At 1317 on 24 February 2003, Mr. Morillo sent Mr. Mikhaylyuk an email with a recap in relation to the *MOSCOW KREMLIN*. This email was copied to Mr. Ruperti at Interpretrol. The email was headed:

"MOSCOW KREMLIN/PDVSA—Recap"

and the recap described the account as PDVSA. The periods of charter offered were 6 months or 1 year (at the charterer's option), with a hire rate of US$28,300 pdpr. Mr. Mikhaylyuk replied at 1507 with a recap offering a period of 6 months at the rate of US$28,300 pdpr.

28. At 1511 Mr. Morillo returned a recap in essentially the same terms as Mr. Mikhaylyuk had sent him at 1507 (with the charterer defined as PDVSA). At 1530 Mr. Mikhaylyuk sent a "corrected Recap", again in the same terms (so far as material) and at 1532 Mr. Morillo returned a "Corrected Recap", again in essentially the same terms.

29. At 1543 on 24 February 2003 Mr. Morillo wrote an email to Mr. Mikhaylyuk:

"Vladimir; Following our conversation please note that the account must be under the name of PMI trading Inc, in order to guarantee the payments in the due course."

Mr. Mikhaylyuk wrote that he would take care of it. No copy of this email has been found among Novoship's records.

30. At 1559 on 24 February 2003, Mr. Mikhaylyuk sent an email to Mr. Ruperti (copies to Mr. Morillo) asking what was the date of the charter party with PDVSA since (Mr. Mikhaylyuk wrote) his records did not have one.

31. At 1742 on 24 February 2003 Mr. Mikhaylyuk sent an email to Mr. Ruperti, copied to Mr. Morillo, in essentially the same terms as those referred to above, save that the mail was captioned:

"Moscow Kremlin PMI/PDVSA"

rather than

""Moscow Kremlin/PDVSA"

and the Account was "PMI Trading Inc" rather than "PDVSA." No copy of this email has been found among Novoship's records.

32. Mr. Mikhaylyuk's report for March 2003 (sent to Messrs. Sakovich and Oskirko on 23 April 2003) showed the *MOSCOW KREMLIN* chartered to PDVSA for 6 months at the rate of US$28,300 pdpr.

33. In an email dated 1 September 2003 Mr. Mikhaylyuk notified Novoship's Operations Department that the charter of the *MOSCOW KREMLIN* had been extended for another 2 years from 7 September 2003 at the rate of US$18,500 pdpr, otherwise as the existing charter party. Mr. Mikhaylyuk confirmed this to Mr. Oskirko in an email dated 19 December 2003 in which he

referred to the "extension on MOSCOW KREMLIN to PDVSA for 2 years at 18,500 pdpr with 1.00% address commission". The Plaintiffs are not aware, at present, of the hire in fact paid by PDVSA.

34. In an email to Mr. Mikhaylyuk dated 23 May 2005 Mr. Ruperti referred to an extension of the charter of the *MOSCOW KREMLIN* for 3 years at a rate of US$28,400 pdpr.

35. Vital has been receiving hire at the rate of US$28,400 pdpr.

36. PDVSA in fact paid hire to Sea Pioneer at the rate of US$34,000 pdpr for the *MOSCOW KREMLIN* under a one year charter party between PDVSA and Sea Pioneer Shipping which came to an end in April 2007. The difference in the rates came to about $US2,044,000 over a 1 year term. The Plaintiffs are not aware of what other rates were paid by PDVSA in respect of the *MOSCOW KREMLIN* at what other times.

### The *MOSCOW STARS*.

37. On 6 May 2003 Mr. Mikhaylyuk sent Mr. Ruperti, at Trafigura (with a copy to Mr. Morillo), a recap of a time charter for the *MOSCOW STARS* between its owner, Dainford and PDVSA Marketing International (PMI). Mr. Mikhaylyuk's email was headed:

"MOSCOW STARS/PDVSA-c/p 25.04.2003"

and the body of the email had the following:

> "BEING ALL SUBJECTS LIFTED, WE ARE PLEASED TO RECAP HEREWITH TERMS AND CONDITIONS OF FIXTURE BETWEEN MESSRS PDVSA MARKETING INTERNATIONAL (PMI) AS CHARTERERS AND MESSRS NOVOSHIP AS AGENTS TO OWNERS "DAINFORD NAVIGATION INC"..."

The recap provided for a period of 24 months and a hire rate of US$20,000 pdpr.

38. A second email from Mr. Mikhaylyuk to Mr. Ruperti of 6 May 2003 was headed:

"Moscow Stars/PMI trading Inc-c/p 25.04.2003-Recap"

and had the following:

"BEING ALL SUBJECTS LIFTED, WE ARE PLEASED TO RECAP HEREWITH TERMS AND CONDITIONS OF FIXTURE BETWEEN MESSRS PMI TRADING INC (PMI) AS CHARTERERS AND MESSRS NOVOSHIP AS AGENTS TO OWNERS 'DAINFORD NAVIGATION INC'...

With these exceptions, this second email was in materially identical terms to the email referred to in Paragraph 37 above. The email referred to in this paragraph has not been located among Novoship's documents.

39. The Plaintiffs are not, at present, aware of the rate or rates of hire actually paid by PDVSA.

40. Mr. Ruperti's 23 May 2005 email to Mikhaylyuk (see Paragraph 34 above) provided for the extension of the charter of the *MOSCOW STARS* for 3 years at the hire rate of US$28,400 per day.

41. Dainford Navigation has been receiving hire at the rate of US$28,400 pdpr.

42. PDVSA has been paying hire at the rate of US$32,850 to Sea Pioneer Shipping under a 1 year charter party which expires in July 2007. The difference between the rates is approximately US$1,624,250 over the 1 year term. Novoship is not aware of earlier rates which PDVSA has paid hire in respect of the *MOSCOW STARS*.

## The Payments from Sea Pioneer Shipping to Pulley Shipping.

43. Sea Pioneer made payments to Pulley Shipping's bank account at the Bank of Nevis as follows:

    (a)    US$491,000 on 4 May 2005;

(b) US$500,000 on 12 August 2005;

(c) US$500,000 on 4 November 2005;

for a total of US$1,491,000. On information and belief, such payments to the bank account of Pulley Shipping were for the benefit of Mr. Mikhaylyuk and were made on the instructions of Mr. Ruperti.

44. In fact, contrary to the documents retained on Novoship's files, there were no charters between Cally and PDVSA, between Vital and PDVSA or between Dainford and PDVSA. PDVSA chartered the *MARSHAL CHUYKOV* from Sea Pioneer at a rate, from 1 May 2004, of US$28,750 per day pro rata; PDVSA chartered the *MOSCOW KREMLIN* from Sea Pioneer at a rate, from April 2006, of US$34,000 per day pro rata; and the PDVSA chartered the *MOSCOW STARS* from Sea Pioneer at a rate, from July 2006, of US$32,850 per day.

45. Mr. Mikhaylyuk and Mr. Ruperti arranged for the aforesaid vessels to be secretly chartered from Plaintiffs to Mr. Ruperti's company, PMI, at rates of hire which were substantially below market rates or, at least, substantially below the rates which Mr. Mikhaylyuk and Mr. Ruperti knew that PDVSA would pay. Sea Pioneer, and PMI participated in such arrangements.

46. Mr. Ruperti's companies PMI and Sea Pioneer sub-chartered the vessels to PDVSA at the higher rates thus making a substantial profit.

47. In order to conceal those arrangements from others at Novoship and from Cally, Vital and Dainford, Mr. Mikhaylyuk and Mr. Ruperti created and produced false documentation referring to charters directly between Cally and PDVSA, Vital and PDVSA and Dainford and PDVSA (as referred to above) at the lower charter hire rates.

48. The payments made by Defendants to Mr. Mikhaylyuk set forth above were made as bribes and/or secret commissions or payments to Mr. Mikhaylyuk and Mr. Mikhaylyuk dishonestly and in breach of his contract of employment solicited and received or diverted such payments for the benefit of himself and/or others whom the Plaintiffs are at present unable to identify and concealed such payments from the Plaintiffs.

49. On information and belief, Mr. Ruperti and, through him, Sea Pioneer, and PMI were, at all material times, aware that Mr. Mikhaylyuk was acting in breach of his fiduciary duties and dishonestly assisted in such breaches.

50. From about October 2002, Mr. Ruperti, PMI and Sea Pioneer unlawfully conspired with Mr. Mikhaylyuk and Pulley Shipping to injure and defraud Novoship, Cally, Vital and Dainford by unlawful means, as set forth above.

51. Plaintiffs have commenced an action in the High Court of Justice, Queen's Bench Division, Commercial Court in London, England against Defendants (among others), Claim No. 2006 Folio 1267, issued on November 6, 2007 for damages and other relief based upon the allegations set forth above, and Plaintiffs specifically reserve the right to pursue the merits of their claims in this London lawsuit.

52. This action is brought to obtain security in favor of Plaintiffs for their claims against the Defendants in aid of the London lawsuit and to obtain jurisdiction over the Defendants for enforcement purposes.

53. This action is further brought to obtain security for any additional sums to cover Plaintiffs' anticipated attorney fees and costs in the London lawsuit and interest, all of which are recoverable as part of Plaintiffs' claim under English Law.

54. Under English Law, costs, including attorney fees, court charges, disbursements, expenses and interest are recoverable as an element of Plaintiffs' claim.

55. Plaintiffs' anticipated recoverable attorney fees and costs in the London lawsuit are estimated to be $4,000,000. The London attorneys advise that the legal costs will be particularly high in this case due to the complexity of the frauds and that the final damages expected to be proven will be well in excess of those known to date and set forth herein.

56. Plaintiffs' interest recovery in the London lawsuit is estimated at $3,336,420 based upon a rate of 8 ½% per annum for a period of four years.

57. Other individuals (JOHN DOE Defendants) and other business entities (JOHN DOE INC. Defendants) may have been involved in the aforesaid frauds.

58. Additional damages relating to the *MARSHAL CHUYKOV, MOSCOW KREMLIN* and *MOSCOW STARS* frauds are likely to be established as a result of pretrial discovery.

59. Upon information and belief, and after investigation, Defendants Ruperti, Sea Pioneer and PMI cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, but Plaintiffs are informed that Defendants have, or will shortly have, assets within this District comprised of, *inter alia*, cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendants (hereinafter, "ASSETS"), moving through banking institutions and/or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein, with the total amount to be attached being $17,149,420 based upon the following:

| | |
|---|---|
| *MARSHAL CHUYKOV* Fraud | $ 4,653,750 |
| *MOSCOW KREMLIN* Fraud | $ 2,044,000 |

| | |
|---|---|
| *MOSCOW STARS* Fraud | $ 1,624,250 |
| Bribe Payments Pulley | $ 1,491,000 |
| London Lawsuit Attorney Fees & Expenses | $ 4,000,000 |
| Interest | $ 3,336,420 |
| Total | $17,149,420 |

WHEREFORE, Plaintiffs Novoship, Cally, Vital and Dainford pray:

a. That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged;

b. That since Defendants cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendants, up to and including the sum of $17,149,420 be restrained and attached, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, debts, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendants Ruperti and/or Sea Pioneer and/or PMI moving through or within the banking institutions and/or any other institutions or any garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c. That this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary, including enforcement of the English judgment and entry of judgment thereon; and,

d.     For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
       November 7, 2007

                                  FREEHILL HOGAN & MAHAR LLP
                                  Attorneys for Plaintiffs

                                  By: _____
                                     Peter J. Gutowski (PG 2200)
                                     Eric E. Lenck (EL 4547)
                                     Pamela L. Schultz (PS 8675)
                                     80 Pine Street
                                     New York, NY 10005
                                     (212) 425-1900
                                     (212) 425-1901 fax

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

ERIC E. LENCK, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiffs in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our clients through their English solicitors.

3. The reason this verification is made by an attorney and not by the Plaintiffs is because the Plaintiffs are foreign entities, none of whose officers are presently within this Judicial District.

_____
Eric E. Lenck

Sworn to before me this
7th day of November, 2007.

_____
Notary Public
HAZEL S. ROSENTHAL
Notary Public, State of New York
No. 01RO4641178
Qualified in Queens County
Certified in New York County
Commission Expires Dec. 31, 2010

NYDOCS1/293320.1