**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOVOSHIP (UK) LIMITED, CALLY         :
SHIPHOLDINGS, INC., VITAL SHIPPING   :
CORPORATIONS, and DAINFORD        :
NAVIGATION INC.,                   :
                                    :
              Plaintiffs,     :   Case No. 07 Civ. 9876 (DLC)
                                    :
            v.               :
                                    :
WILMER RUPERTI, SEA PIONEER SHIPPING :
CORPORATION, and PMI TRADING, INC.,  :
JOHN DOE (fictitious) and JOHN DOE INC.  :
(fictitious),                      :
                                    :
             Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**WILMER RUPERTI, SEA PIONEER SHIPPING CORPORATION,**
**AND PMI TRADING INC.'S MOTION TO VACATE *EX PARTE* ORDER FOR**
**PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT,**
**TO PRECLUDE FURTHER MARITIME ATTACHMENTS AND**
**TO DISMISS THIS ACTION WITH PREJUDICE FOR LACK OF JURISDICTION**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ………………………………………………………ii

I. INTRODUCTION.........................................................................................................2

II. STATEMENT OF FACTS ...........................................................................................3

III. ARGUMENT...............................................................................................................5

   A.  Standard of Review.................................................................................................5

   B.  Plaintiffs Bear the Burden of Proof Under Supplemental Admiralty Rules B and E ..........6

   C.  Plaintiffs Do Not State Valid Prima Facie Maritime Claim in the Complaint ...................7

      i. The location test is not met, as the alleged tortious conduct occurred on land ...............8

      ii. The connection test is not met, as the alleged business torts bear no significant
      relationship to traditional maritime activity. ................................................13

   D.  Because Admiralty Jurisdiction Does Not Exist, Personal Jurisdiction Cannot be
      Exercised over Defendants, and Thus This Court Must Dismiss  this Case
      With Prejudice. ....................................................................................................15

   E.   In the Alternative, the Attachment Amount is Excessive and Frivolous and Must Be
      Reduced. ..............................................................................................................16

IV. CONCLUSION ...........................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Adventures Unlimited, Inc. v. Chrisman,*
208 F. Supp. 2d 871 (E.D. Tenn. 2002)................................................................14

*AquaStoli Shipping Ltd. v. Gardner Smith Pty, Ltd.,*
460 F.3d 434 (2d. Cir. 2006) ...............................................................................6, 7

*Bottiglieri Di Na Vigazione Spa v Tradeline LLC,*
No. 06 Civ. 3705 (LAK), 2007 WL 404657 (S.D.N.Y. Feb. 6, 2007)..............................7

*Carbotrade, S.P.A. v. Bureau Veritas,*
99 F.3d 86 (2d Cir. 1996) ....................................................................................17

*Centauri Shipping Ltd. v. Western Bulk Carriers KS,*
No. 07-CV-4761 (RJS) (HBP), 2007 WL 3378254 (S.D.N.Y. Nov. 5, 2007)..................7

*E. Asiatic Co. v. Indomar, Ltd.,*
422 F. Supp. 1335 (S.D.N.Y. 1976) ......................................................................15

*Executive Jet Aviation, Inc. v. City of Cleveland,*
409 U.S. 249 (1972) .....................................................................................13, 14

*Hellenic Lines Ltd. v. Rhoditis,*
398 U.S. 306 (1970) ...........................................................................................17

*J.K. International, Party, Ltd. v. Agriko S.A.S.,*
No. 06-CV-13259 (KMK), 2007 WL 485435 (S.D.N.Y. Feb. 13, 2007) ........................6

*Jerome B. Grubart, Inc. v. Great Lakes Dredge and Dock Co.,*
513 U.S. 527 (1995) ......................................................................................passim

*Kuehne & Nagle (AG & CO) v. Geosource, Inc.,*
874 F.2d 283 (5th Cir. 1989)...........................................................................passim

*Lauritzen v. Larsen,*
345 U.S. 571 (1953) ...........................................................................................17

*In re Madison Coal & Supply Co., Inc.,*
321 F. Supp. 2d 809 (S.D. W.Va. 2003)........................................................8, 12, 14

*Maritima Petroleo E Engenharia Ltda. v. Ocean Rig 1 AS,*
78 F. Supp. 2d 162 (S.D.N.Y. 1999) ..............................................................7, 11, 12

*McGuire v. City of New York,*
192 F. Supp. 866 (S.D.N.Y. 1961) .......................................................................6, 9

NY 71129146v4
12/07/07 02:47PM

*Miles v. Apex Marine Corp.*,
    498 U.S. 19 (1991)............................................................................15

*OGI Oceangate Transportation Co. Ltd. v. RP Logistics Pvt. Ltd.*,
    No. 06 Civ. 9441 (RWS), 2007 WL 2900225 (S.D.N.Y. Oct. 4, 2007).....................6, 7

*Ramirez v. Butler*,
    319 F. Supp. 2d 1034 (N.D. Cal. 2004)..................................................5, 14, 15

*Rollin v. Kimberly Clark Tissue Co.*,
    211 F.R.D. 670 ..........................................................................14, 15

*Romero v. International Terminal Operating Co.*,
    358 U.S. 354 (1959) ......................................................................15

*Ronda Ship Mgmt. Inc. v. Doha Asian Games Organizing Comm.*,
    511 F. Supp. 2d 399 (S.D.N.Y. 2007) .............................................4, 16, 17

*Shipping Financial Service Corp. v. Drakos*,
    140 F.3d 129 (2d. Cir. 1998) ..............................................................5

*Sisson v. Ruby*,
    497 U.S. 358 (1990) ....................................................................8, 13

*Smith v. Mitlof*,
    198 F. Supp. 2d 492 (S.D.N.Y. 2002) ..................................................5, 12

*T & O Shipping Ltd. v. Source Link Co.*,
    No. 06-CV-7724 (KMK), 2006 WL 3513638 (S.D.N.Y. Dec. 5, 2006).........................6

*Winter Storm Shipping, Ltd. v. TPI*,
    310 F.3d 263 (2d Cir. 2002) ...............................................................15

## STATUTES

28 U.S.C. § 1331 .......................................................................2, 15

28 U.S.C. § 1332(a)........................................................................15

28 U.S.C. § 1333 .....................................................................2, 15, 16

## RULES

Fed. R. Civ. P. 12(b)(1) ....................................................................2

Fed. R. Civ. P. 12(b)(2) ....................................................................2

Fed. R. Civ. P. 12(b)(6) ....................................................................2

NY 71129146v4
12/07/07 02:47PM

Fed. R. Civ. P., Supp. Admiralty R. B.................................................................2

Fed. R. Civ. P., Supp. Admiralty R. E(6).........................................................16

Fed. R. Civ. P., Supp. Admiralty R. E(2)(a).......................................................4

Fed. R. Civ. P., Supp. Admiralty R. E(4)(f)........................................................6

Fed. R. Civ. P., Supp. Admiralty R. E(8).....................................................2, 15

iv

Defendants Wilmer Ruperti ("Ruperti"), Sea Pioneer Shipping Corporation ("Sea Pioneer") and PMI Trading, Inc. ("PMI") (collectively, "Defendants") make a restricted appearance pursuant to Fed. R. Civ. P., Supp. Admiralty R. E. (8), and respectfully submit this Memorandum of Law in support of their Motion to: (a) vacate the Court's November 7, 2007 *Ex Parte* Order directing clerk to issue process of maritime attachment and garnishment (the "November 7 Order") obtained and served by plaintiffs Novoship (UK) Limited ("Novoship"), Cally Shipholdings, Inc. ("Cally"), Vital Shipping Corporation ("Vital") and Dainford Navigation, Inc. ("Dainford") (collectively, "Plaintiffs"); (b) vacate the process of maritime attachment and garnishment (the "PMAG") issued pursuant to the November 7 Order; (c) preclude any further process under the November 7 Order; (d) dismiss this action in its entirety with prejudice for lack of jurisdiction; and (e) grant such other and further relief as this Honorable Court may deem just and proper ("Motion"). Defendants make the instant Motion pursuant to Supplemental Admiralty Rules B and E, and Fed. R. Civ. P. 12(b)(1), (2) and (6). For the reasons stated herein, Defendants respectfully request that their Motion be granted.

## I. INTRODUCTION

This Motion concerns the November 7 Order and PMAG issued by the Clerk of this Court in the amount of $17,149,420 based on the allegations contained in the verified complaint ("Complaint"). In that Complaint, Plaintiffs assert that "[t]his is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for fraud arising out of maritime charter party contracts relating to vessels used in maritime commerce." (Complaint ¶ 1). Plaintiffs further claim that there is subject matter jurisdiction for this action pursuant to 28 U.S.C. § 1333 – admiralty jurisdiction – and 28 U.S.C. § 1331 – federal question jurisdiction. (*Id.*).

As more fully set forth below, Plaintiffs' allegations, even if taken as true, fail to state a *prima facie* admiralty claim against any of the Defendants. Under numerous Circuit and District court cases, this Court lacks subject matter jurisdiction over the claims in this case, and the November 7 Order, and all process thereunder, must be vacated and this action dismissed. Moreover, because the sole basis for personal jurisdiction over the Defendants is the wrongful attachment of their property, specifically, electronic fund transfers ("EFTs") passing through this district, this Court lacks personal jurisdiction over any of the Defendants. Thus, Defendants respectfully submit that the November 7 Order and all process resulting therefrom should be vacated, and this matter should be dismissed with prejudice.[1]

## II. STATEMENT OF FACTS

Plaintiffs' claims in this matter are predicated on a remarkable and improbable interpretation of certain e-mails allegedly sent between the owners of three vessels and the charterers of those vessels, some of which Plaintiffs claim are missing from Novoship's computers. More particularly, Plaintiffs imply, but do not explicitly allege, that Vladimir Mikhaylyuk, Novoship's General Manager and Director, deleted or destroyed certain emails to conceal the identity of the charterer in the charter party agreements for the vessels from his employer. (Complaint ¶¶ 9, 23, 31). Plaintiffs further allege that Mr. Mikhaylyuk misrepresented the identity of the charterer in reports he issued to others at Novoship, and that Defendant Sea Pioneer made three payments to an account at the Bank of Nevis owned by Pulley Shipping, which Plaintiffs characterize as bribes and or secret commissions paid to Mr. Mikhaylyuk. (Complaint ¶¶ 21, 22, 32, 33, 43, 48). Plaintiffs claim that the purpose of this

---

[1] In the alternative, and as discussed more fully below, should the Court decide otherwise, Defendants respectfully submit that the amount of the attachment should be reduced.

conduct was to allow Defendants to profit from sub-chartering agreements without Plaintiffs' knowledge. (Complaint ¶ 15).

On the basis of these factual allegations, Plaintiffs assert that Mr. Mikhaylyuk breached fiduciary duties owed to Novoship, and that Defendants assisted in such breaches as a part of a conspiracy with Mr. Mikhaylyuk. (Complaint ¶¶ 49, 50). Plaintiffs further state that they have instituted an action in the High Court of Justice, Queen's Bench Division, Commercial Court in London, England based on these allegations, although Plaintiffs do not furnish a copy of the alleged action commenced by them against Defendants in London, nor do they identify in the Complaint the precise causes of action they claim to be pursuing in the London court or assert the substantive law they claim to invoke. (Complaint ¶ 51). Plaintiffs claim to bring the instant action in the Southern District of New York "to obtain jurisdiction over Defendants for enforcement purposes."[2] (Complaint ¶¶ 51, 52).

The questionable merits of Plaintiffs' factual allegations are not before the Court in the instant Motion. Rather, the issue before the Court is whether Plaintiffs can demonstrate that, based on those allegations, they possess a valid *prima facie* admiralty claim against Defendants, whose assets they have already begun to attach, such that this Court may exercise jurisdiction over both the claims and the parties hereto.[3]

---

[2] Plaintiffs do not allege that the action instituted in London's High Court was brought as a maritime claim under that court's admiralty jurisdiction.

[3] The merits inquiry at this juncture is limited to the determination of whether the claim as presented and supported by Plaintiffs is *prima facie* valid. In the admiralty context, the *prima facie* standard requires a court to look only to the complaint to determine whether the plaintiff has a valid admiralty claim against the defendant. *Ronda Ship Mgmt. Inc. v. Doha Asian Games Organizing Comm.*, 511 F. Supp. 2d 399, 403-404 (S.D.N.Y. 2007). As such, the *prima facie* standard in the maritime attachment context is "a pleading requirement, not an evidentiary standard, and differs from the use of that phrase in other contexts." *Id.* at 404. It is, however, a more stringent standard than that applied under the Federal Rules of Civil Procedure, in that Supplemental Rule E(2)(a) requires that a complaint "state the circumstances from which the claim arises with such particularity that the defendant . . . will be able, without moving for a more definite statement, to commence an investigation and frame a responsive pleading." Fed. R. Civ. P., Supp. R. E. (2)(a); *Ronda*, 511 F. Supp. 2d at 404. Plaintiffs have not met the *prima facie* standard here.

Plaintiffs cannot satisfy that burden. Plaintiffs' claims, as discussed further *infra*, do not constitute maritime torts and, consequently, do not support the exercise of admiralty jurisdiction by this Court even if all of the allegations in the Complaint are accepted as true. Moreover, the justification for the sizable amount that Plaintiffs have sought to attach, $17,149,420, is wholly unclear and thus, at minimum, the attachment amount requires adjustment. Defendants respectfully submit that vacatur should be granted and this case dismissed.

## III. ARGUMENT

### A.     Standard of Review

On a motion to dismiss, the Court must ordinarily accept as true all of the well-pleaded facts in a complaint, and consider those facts in the light most favorable to plaintiffs. *See, e.g., Smith v. Mitlof,* 198 F. Supp. 2d 492, 497-498 (S.D.N.Y. 2002) (citations omitted). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* at 498 (internal quotation and citations omitted). Allegations that are so conclusory that they fail to give notice of even the basic events and circumstances of which the plaintiff complains are insufficient as a matter of law. *Id.*

Moreover, when the question to be considered is one involving the jurisdiction of a federal court, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citing *Shipping Fin. Serv. Corp. v. Drakos,* 140 F.3d 129, 131 (2d. Cir. 1998)). Thus, in evaluating whether admiralty jurisdiction applies, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Ramirez v. Butler,* 319 F. Supp. 2d 1034, 1037 (N.D. Cal. 2004) (internal quotation and citation omitted).

5

**B.    Plaintiffs Bear the Burden of Proof Under**
**Supplemental Admiralty Rules B and E**

Maritime attachment is designed to allow parties in admiralty cases to secure jurisdiction over an absent party and to obtain security for a potential judgment where the absent party's assets are transitory. *See, e.g., AquaStoli Shipping Ltd. v. Gardner Smith Pty, Ltd.,* 460 F.3d 434, 435, 437 (2d. Cir. 2006). Maritime attachment, however, requires a showing that the claims at issue in the case fall within the purview of admiralty jurisdiction, and thus the Court must evaluate the validity of Plaintiffs' claims under admiralty law in determining whether maritime attachment is appropriate. *See, e.g., OGI Oceangate Transporation Co. Ltd. v. RP Logistics Pvt. Ltd.,* No. 06 Civ. 9441 (RWS), 2007 WL 2900225, at *2 (S.D.N.Y. October 4, 2007); *McGuire v. City of New York,* 192 F. Supp. 866, 870 (S.D.N.Y. 1961) ("Not every tort committed on admiralty waters may be redressed in the admiralty courts."). Admiralty Rule E(4)(f), moreover, provides that whenever "property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P., Supp. R. E(4)(f).

As explained by the Second Circuit in *AquaStoli,* the Admiralty Rules "clearly place[] the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E." 460 F.3d at 445 n.5; *see also T & O Shipping Ltd. v. Source Link Co.,* No. 06-CV-7724 (KMK), 2006 WL 3513638, at * 2 (S.D.N.Y. Dec. 5, 2006); *J.K. International, Party, Ltd. v. Agriko S.A.S.,* No. 06-CV-13259 (KMK), 2007 WL 485435 at *2 (S.D.N.Y. February 13, 2007). In order to maintain the process of maritime attachment and garnishment under Rule B, Plaintiffs must demonstrate: (a) that they have a valid *prima facie* admiralty claim against each of the Defendants whose property they seek to attach; (b) that the

6

Defendants cannot be found within this district; (c) that the Defendants' property may be found within the district; and (d) that there is no statutory or maritime law bar to the attachment. *AquaStoli*, 460 F.3d at 445. "A district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." *Id.*

Courts in this district have consistently vacated maritime attachments where the plaintiff fails to satisfy the requirements of *AquaStoli*. *See, e.g., Maritima Petroleo E Engenharia Ltda. v. Ocean Rig 1 AS,* 78 F. Supp. 2d 162, 171-172 (S.D.N.Y. 1999) (no admiralty jurisdiction where torts alleged were not committed on navigable water); *OGI Oceangate Transp. Co. Ltd.,* 2007 WL 2900225, *2 (denying motion for reconsideration of vacatur and dismissing the complaint for failure to state admiralty claim); *Centauri Shipping Ltd. v. Western Bulk Carriers KS,* No. 07-CV-4761 (RJS) (HBP), 2007 WL 3378254 at *1 (S.D.N.Y. Nov. 5, 2007) (vacatur of attachment appropriate where defendant was found to be present in the district); *Bottiglieri Di Na Vigazione Spa v Tradeline LLC,* No. 06 Civ. 3705 (LAK), 2007 WL 404657, at *1-2 (S.D.N.Y. Feb. 6, 2007) (granting vacatur because plaintiff did not establish *prima facie* admiralty claim against the defendant). Because Plaintiffs similarly cannot meet their burden here, vacatur and dismissal are appropriate.

### C.   Plaintiffs Do Not State a Valid Prima Facie Maritime Claim in the Complaint

The determination of whether allegations of tortious conduct gives rise to admiralty jurisdiction turns on whether conditions of both "location" and "connection with maritime activity" are met. *Jerome B. Grubart, Inc. v. Great Lakes Dredge and Dock Co.,* 513 U.S. 527, 534 (1995); *see also McGuire,* 192 F. Supp. at 868 ("The basis of admiralty jurisdiction must be combination of a maritime wrong and a maritime location."). In applying the "location" test, a court "must determine whether the tort occurred on navigable water or whether injury suffered

7

on land was caused by a vessel on navigable water." *Jerome B. Grubart,* 513 U.S. at 534. In applying the "connection" test, on the other hand, a court must consider whether the alleged wrong "bears a significant relationship to traditional maritime activity." *Sisson v. Ruby,* 497 U.S. 358, 361 (1990). More particularly, the connection test requires evaluation of a two part sub-test: first, the court must assess the "general features of the type of incident involved to determine whether such an incident is likely to disrupt [maritime] commercial activity, and second, the court must determine whether the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. *Id.* at 363; *see also Jerome B. Grubhart,* 513 U.S. at 534. Failure to establish either the location or connection test is fatal to an assertion of admiralty jurisdiction. *See, e.g., In re Madison Coal & Supply Co., Inc.,* 321 F. Supp. 2d 809, 812 (S.D. W.Va. 2003).

Neither the location test nor the connection test is satisfied here. Plaintiffs' allegations in this matter constitute garden variety financial torts neither originating on navigable waters nor causing damage or disruption to the operation of the vessels at issue. Such conduct, for reasons discussed below, fails to satisfy the requirements of admiralty jurisdiction, and thus Plaintiffs' Complaint should be dismissed.

i.    **The location test is not met, as the alleged tortious conduct occurred on land**

As explained by the Supreme Court in *Sisson, Jerome B. Grubhart* and their progeny, the fundamental question the court must consider in evaluating the location test for purposes of admiralty jurisdiction is "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." 513 U.S. at 534. The allegations asserted in this case, constituting classic business torts, did not occur on navigable water, nor did they cause injury on land via a vessel on navigable water. Plaintiffs assert that their former officer

8

breached a fiduciary duty to the Plaintiffs, and that Defendants conspired with him to do so. Plaintiffs' Complaint does not claim that the torts at issue occurred on navigable water or via a vessel on navigable water. Thus, as is obvious on the face of their Complaint, Plaintiffs cannot satisfy the location test here. *Id.*; *see also McGuire,* 192 F. Supp. at 871 (where allegations do not "relate to any tort which grows out of navigation," but rather allege "an ordinary tort," admiralty jurisdiction will not lie).

Circuit and district court caselaw supports this conclusion. In *Kuehne & Nagle (AG & CO) v. Geosource, Inc.,* 874 F.2d 283 (5th Cir. 1989), for example, the Fifth Circuit was called upon to determine whether certain intentional torts, including alleged misrepresentations that induced plaintiffs to enter into freight forwarding agreements characterized by the court as having "strong maritime implications," constituted maritime torts for purposes of admiralty jurisdiction. *Id.* at 289. Applying the location test, the court looked to the location where the alleged misrepresentations occurred, namely at a meeting in Hamburg, Germany, and to the place where the alleged misrepresentations took effect, which the court found to be "on land" because that was where the contracts were signed. *Id.* The court noted that no damage occurred to the cargo that was the subject matter of the agreements, and that "[a]t best, the injury, if any, that occurred on navigable waters was too remote from the tortious act to meet the situs requirement for admiralty jurisdiction." *Id.* at 289.

Most significantly, the court then rejected the lower court's rationale that the nature of the contract mandated admiralty jurisdiction, holding instead that "[a] party to a contract with strong maritime implications must still satisfy . . . [the] situs requirement when seeking to predicate jurisdiction on a maritime tort." *Id.* (citations omitted). Lastly, the court concluded that "interference with a maritime contract does not vest the court with admiralty tort jurisdiction

9

absent an impact on navigable waters." *Id.* at 289-290. Accordingly, the court concluded that the torts alleged by plaintiffs did not satisfy the requirements for the exercise of admiralty jurisdiction. *Id.* at 290.

*Kuehne & Nagel*'s analysis of the location test is directly on point here. Plaintiffs allege that Defendants engaged in certain intentional torts relating to the sub-chartering of certain vessels. (Complaint ¶¶ 10-11). More particularly, Plaintiffs allege that Defendants engaged in fraudulent conduct by allegedly assisting Mr. Mikhaylyuk in breaching fiduciary duties to Novoship, allegedly conspiring with Mr. Mikhaylyuk to defraud Plaintiffs and allegedly paying bribes or secret commissions to Mr. Mikhaylyuk in the chartering of three vessels. (*Id.*) As in *Kuehne & Nagel*, Plaintiffs' claims are garden variety financial fraud claims that could have taken place in contexts bearing no relation to admiralty, as they most often do. Plaintiffs have not alleged, nor can they, that the claims they assert against Defendants took place on navigable waters, or that such conduct caused any injury whatsoever on navigable waters. Indeed, it is uncontested that the conduct asserted by Plaintiffs took place on land. (*See, e.g.,* Complaint ¶¶ 12-15, 43).

Moreover, Plaintiffs do not allege that the purportedly fraudulent conduct had any effect on navigable waters, let alone a major injury. *See Kuehne & Nagel*, 874 F. 2d at 289 (land-based acts must produce "a major injury" in navigable waters for admiralty jurisdiction to exist). Rather, Plaintiffs claim that the wrongful conduct attributed to Defendants had as its alleged effect a series of transactions, all occurring on land. Specifically, Plaintiffs describe the results of the alleged wrongful acts as the chartering of the ships to one entity rather than another, the sub-chartering of ships to one entity rather than another, the realization of profits by Sea Pioneer and the payment of monies to Mr. Mikhaylyuk. (Complaint ¶ 15). There is no allegation in the

Complaint that as a result of the wrongful conduct attributed to Defendants any of the chartered ships at issue encountered difficulties at sea, were damaged, failed to sail or did not operate as they otherwise would have absent the alleged torts. Thus, as in *Kuehne & Nagle*, the mere fact that classic business torts are alleged to have occurred in the context of the charter of certain vessels does not automatically vest this court with admiralty jurisdiction, especially and most particularly where Plaintiffs cannot demonstrate that the conduct alleged took place on navigable waters or had any effect thereon. *See, e.g., id.* at 289-290. The location test is not satisfied here.

Courts in this jurisdiction have likewise applied the location test to dismiss claims for want of maritime jurisdiction where such torts originated on land. In *Maritima Petroleo e Engenharia LDTA v. Ocean Rig 1 AS,* 78 F. Supp. 2d 162 (S.D.N.Y. 1999), plaintiff alleged that it was fraudulently induced to enter into a memorandum of agreement with defendant involving off-shore drilling rigs. In applying the location test, the court noted that "[i]ntentional torts, such as fraud, misrepresentation and fraudulent inducement to contract must have effect on navigable waters to be within admiralty jurisdiction." *Id.* at 171 (internal citations omitted). Finding that "any misrepresentation which occurred most certainly occurred on land when the parties executed the [agreement]," and "the tortious act occurred when the [agreement] was signed," the court rejected the exercise of admiralty jurisdiction. *Id.* at 171-172 (citing *Kuehne & Nagel,* 874 F.2d at 289). In so holding, the court concluded that

> torts fall within maritime jurisdiction only if they occur or have effects on navigable water, and there is no evidence that any element of the alleged fraud was committed anywhere close to navigable water, or had any effect on water, [and therefore] plaintiff's tort claim is dismissed for lack of maritime jurisdiction.

*Id.* at 172.

Similarly, in this case, there is no evidence that any of the tortious activity alleged against Defendants took place on navigable water or had any effect on water. Rather, the situs of the torts alleged here—namely where the agreements were negotiated and the alleged bribes conveyed—is indisputably on land, more particularly in Caracas, Venezuela, London, England, and the island of Nevis, as Plaintiffs' Complaint makes plain. (Complaint ¶¶ 2, 12-14, 43). As a result, admiralty jurisdiction does not exist here. *Maritima,* 78 F. Supp. 2d at 171-172.

Also instructive is the court's ruling in *Smith v. Mitlof,* 198 F. Supp. 2d. 492 (S.D.N.Y. 2002). In that case, boat passengers who were injured when a ship capsized on navigable waters sued the ship's previous owner for various torts, including fraud and negligent misrepresentation in connection to the sale of the vessel, as well as negligent repair and maintenance. *Id.* at 497. In granting defendant's motion to dismiss the fraud and misrepresentation claims for want of admiralty jurisdiction, but denying the motion on the negligent repair and maintenance claims, the court distinguished between the two different types of torts, finding that the former occurred on land, while the latter occurred at sea. *Id.* at 500. Applying the Supreme Court's location test in *Jerome B. Grubhart,* the court held that the torts of fraud and misrepresentation took place on land, where the contract for sale of the vessel was consummated. *Id.* Because the passengers sustained injuries while at sea on the remaining claims, however, the court found their claims for negligent repair and maintenance to be maritime torts. *Id.* at 500-501. The same logic applies here: Plaintiffs' alleged tort claims took place on land, and thus jurisdiction does not exist here. *See also In re Madison Coal,* 321 F. Supp. 2d at 813 (when tort occurs on land, in an ordinary non-maritime activity, miles away from waterway or vessel, locality test not satisfied).

The instant action thus falls squarely within the holdings of *Kuehne & Nagle, Maritima* and *Smith* that intentional commercial torts such as those alleged by Plaintiffs cannot give rise to

12

admiralty jurisdiction, as the location test is not satisfied. Dismissal of this case with prejudice is warranted, as is vacatur of the November 7 Order and the PMAG.

### ii.   The connection test is not met, as the alleged business torts bear no significant relationship to traditional maritime activity

The second prong of the Supreme Court's test for admiralty jurisdiction requires evaluation of the "connection" between the allegedly tortious activity and traditional maritime activity. As discussed *supra*, in evaluating this connection, the court must look first to "the potential impact of a given of incident by examining its general character," and second to whether there is a "substantial relationship between the activity giving rise to the incident and traditional maritime activity." *Sisson,* 497 U.S. at 364; *see also Jerome B. Grubhart,* 513 U.S. at 534. Applying the Supreme Court's connection test here reveals that once again, Plaintiffs have failed to meet their burden of proving that admiralty jurisdiction exists.

As the Supreme Court has noted, the general character of the relevant "activity" is "defined . . . by the general conduct from which the incident arose." *Sisson,* 497 U.S. at 364. The general character of the alleged conduct here is an alleged breach of fiduciary duty by Plaintiffs' former executive and the alleged conduct of Defendants in conspiring with that former executive, resulting in claimed financial injury to Plaintiffs. In other words, the general character of Plaintiffs' allegations is that of garden variety business torts. Such conduct plainly does not ordinarily have anything to do with maritime activity, and is only fortuitously and incidentally involved with the charter of certain maritime vessels. As the Supreme Court has held, where the circumstances of a case are "only fortuitously and incidentally connected to navigable waters and which bear[] no relationship to traditional maritime activity," admiralty jurisdiction will not lie. *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 273 (1972).

13

Similarly, the second prong of the Supreme Court's connection test defeats Plaintiffs' claim to admiralty jurisdiction here. In evaluating whether Plaintiffs have demonstrated a substantial relationship between the activity giving rise to the incident and traditional maritime activity, the court must evaluate whether "a tortfeasor's activity . . . is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the [case] at hand." *Jerome B. Grubart*, 513 U.S. at 539-540. Garden variety business torts, however, do not constitute activity so traditionally subject to admiralty law that admiralty jurisdiction should apply here.

Numerous cases support the conclusion that facts bearing only an incidental relationship to maritime activity are insufficient to support the exercise of admiralty jurisdiction. *See, e.g., Executive Jet*, 409 U.S. at 272-273 (plane crash into Lake Erie resulting from birds on runway bears no relationship to traditional maritime activity); *Ramirez*, 319 F. Supp. 2d at 1040 (state law conversion claim brought by recreational sailboat owner against marinas did "not present a sufficient risk of collateral damage or impact upon maritime commerce necessary to establish admiralty jurisdiction"); *In re Madison Coal*, 321 F. Supp. 2d at 814 (tort perpetrated by off duty vessel crewman operating an automobile on land while intoxicated not substantially related to maritime activity); *Rollin v. Kimberly Clark Tissue Co.*, 211 F.R.D. 670, 674 (S.D. Ala. 2001) (physician providing care to injured seaman insufficient for exercise of jurisdiction; connection test not satisfied when activity does not fall within a class of incidents posing more than a "fanciful risk to commercial shipping") (internal quotation omitted); *Adventures Unlimited, Inc. v. Chrisman*, 208 F. Supp. 2d 871, 873-874 (E.D. Tenn. 2002) (highway trucking accident resulting in dumping of raw meat into then-dry river, while potentially having slight disruptive effect on maritime commerce, found not substantially related). Plaintiffs cannot satisfy their

14

burden of proving the connection test sufficient to satisfy maritime jurisdiction here, and thus vacatur should be granted and the case dismissed.[4]

**D.      Because Admiralty Jurisdiction Does Not Exist, Personal Jurisdiction Cannot be Exercised over Defendants, and Thus This Court Must Dismiss this Case With Prejudice**

Defendants make this restrictive appearance, pursuant to Fed. R. Civ. P., Supp. Admiralty R. E. (8), for the limited purpose of seeking the vacatur of the November 7 Order, the PMAG that was issued thereafter and the dismissal of this action for lack of personal and subject matter jurisdiction.  Defendants do not maintain contacts with the State of New York or this district that would be sufficient in quantity or quality for this court to exercise personal jurisdiction over them, nor do Plaintiffs allege otherwise in the Complaint.   In fact, Plaintiffs admit that Defendants cannot be found within this district.[5]   (Complaint ¶ 59).

Thus, personal jurisdiction in this case can only be established pursuant to the attachment of Defendants' property located in this district under Supplemental Admiralty Rule B, and then only to the value of seized assets. *See E. Asiatic Co. v. Indomar, Ltd.,* 422 F. Supp. 1335, 1341 (S.D.N.Y. 1976) ("execution proceedings commenced by maritime *in personam* attachments in which defendant has not been personally served or appeared cannot exceed the value of the

---

[4]  In addition to their assertion of admiralty jurisdiction pursuant to 28 U.S.C. § 1333, Plaintiffs invoke federal question jurisdiction in their Complaint. (Complaint ¶ 1).  Plaintiffs, however, do not assert or even reference any claims under federal statutory or common law in their Complaint.  Where no federal question is affirmatively and distinctly presented on the face of a complaint, federal question jurisdiction will not be upheld, even where Plaintiffs have otherwise asserted admiralty jurisdiction. *See, e.g., Remirez,* 319 F. Supp. 2d at 1037; *Rollin,* 211 F.R.D. at 679 (when four corners of complaint demonstrate no claim under federal question, federal question jurisdiction does not exist).  Moreover, the Supreme Court has held that maritime cases that do not involve federal statutes do not arise under the laws of the United States for purposes of federal question jurisdiction. *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 358 (1959), *superseded by statute on other grounds, 498 U.S. 19 (1991)* .  Thus, Plaintiffs have failed to demonstrate that federal question jurisdiction may be exercised here under 28 U.S.C. § 1331.  Diversity jurisdiction is also not available in actions such as this one between citizens of other countries. *See* 28 U.S.C § 1332(a); *Kuehne & Nagel,* 874 F.2d at 287.  As such, Plaintiffs cannot demonstrate any basis for subject matter jurisdiction and this case should be dismissed.

[5]  As noted above, under the admiralty rules, attachment is only available if the defendant is not found within the district where attachment is sought. *See, e.g., Winter Storm Shipping, Ltd. v. TPI,* 310 F.3d 263, 268 (2d Cir. 2002). Thus, the jurisdiction conferred by attachment is *quasi in rem* jurisdiction. *Id.*

attached property") (citations omitted). For the reasons stated above, however, this case does not satisfy the requirements for subject matter jurisdiction under 28 U.S.C. § 1333, and thus the November 7 Order and the subsequent PMAG must be vacated. This Court therefore lacks personal jurisdiction over the Defendants as well. Consequently, dismissal with prejudice of this action is also warranted on the basis of lack of personal jurisdiction over the parties.

### E.  In the Alternative, the Attachment Amount is Excessive and Frivolous and Must Be Reduced

In the alternative, should the Court decide that the attachment should be maintained, the Court should reduce the amount seized for want of evidence that the asserted value of Plaintiffs' claim is supportable. Whenever security is taken and a motion made, the court may reduce the amount of a security pursuant to Supplemental Admiralty Rule E(6). *See, e.g., Ronda Ship,* 511. F. Supp. 2d at 405. In evaluating whether reduction is appropriate, the Court is "required to determine whether the amount attached is 'excessive' or 'reasonably necessary to secure the plaintiff's claim.'" *Id.* at 405-406 (internal citation omitted). This does not require a plaintiff to prove its damages with exactitude, but the Court must satisfy itself that the plaintiff's claims are "not frivolous." *Id.* at 406 (internal quotation omitted).

This Plaintiffs cannot demonstrate. Plaintiffs have not attached their pleadings in the London action to their Complaint here, and thus the Court has no basis on which to evaluate their claim to damages. Moreover, Plaintiffs arrive at their alleged damages amount by adding up several numbers in the Complaint without offering a shred of supporting evidence or even legal basis for the figures. For example, Plaintiffs seek to recover and attach the staggering sum of $4,000,000.00 for the attorneys fees they expect to incur in the London litigation. Plaintiffs have made no showing of entitlement to this amount or of its reasonableness, and Defendants submit that it is unquestionably excessive. Likewise, Plaintiffs seek to recover and attach

16

$4,653,750.00, $2,044,000.00 and $1,624,250.00, the difference they contend between the payments made for the chartering and subchartering of the three ships. Plaintiffs submit no evidence in support of this assertion either. Even assuming that Plaintiffs' allegations are taken as true, Plaintiffs have failed to show that they would have been able to charter the ships for the rates obtained by Defendant Sea Pioneer. Absent that showing, Plaintiffs' damages claim is wholly speculative. Likewise, Plaintiffs do not explain the basis for their alleged entitlement to the staggering amount of interest, $3,336,420.00, which they seek to recover and attach.[6]

In sum, Plaintiffs do not furnish a copy of the alleged action commenced by them against Defendants in London, do not identify in the Complaint the precise causes of action they claim to be pursuing in the London court, and do not assert the substantive law they claim to invoke. Thus, the Court lacks the evidence to conclude that the damages assertions of Plaintiffs are not frivolous or excessive. *See Ronda Ship*, 511 F. Supp. 2d at 406. Plaintiffs accordingly have not met their burden under the *prima facie* standard articulated in *AquaStoli* to support their entitlement to the sums they claim are due and subject to attachment.

## IV.    CONCLUSION

For the foregoing reasons, Defendants Wilmer Ruperti, Sea Pioneer Shipping Corporation and PMI Trading, Inc. respectfully request that this Court: (a) vacate the Court's November 7, 2007 *Ex Parte* Order directing clerk to issue process of maritime attachment and

---

[6] In this regard, Defendants note that should this case proceed, choice of law is of paramount importance in determining how damages might be assessed here. Plaintiffs completely sidestep this issue. (Complaint ¶ 59). The determination of choice of law here, should the Court deny Defendants' Motion to Dismiss, will be controlled by the Second Circuit's decision in *Carbotrade, S.P.A. v. Bureau Veritas*, 99 F.3d 86, 90 (2d Cir. 1996), which announced the following choice of law factors to be considered in admiralty cases: (1) the place of the wrongful act; (2) the law of the ship's flag; (3) the domicile of the injured party; (4) the domicile of the shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations. *See also Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 309 (1970); *Lauritzen v. Larsen*, 345 U.S. 571, 583-92 (1953). Plaintiffs' Complaint fails to assert choice of law here, and contains inadequate evidence to determine which country's laws might apply under this standard. Absent a determination of choice of law, Plaintiffs' damages assertions are all the more speculative.

17

garnishment obtained and served by Plaintiffs; (b) vacate the process of maritime attachment and garnishment issued pursuant to that Order; (c) preclude any further process under that Order; (d) dismiss this action in its entirety with prejudice for want of jurisdiction; and (e) grant such other and further relief as this Honorable Court may deem just and proper.

18

December 7, 2007

Respectfully submitted,

STROOCK & STROOCK & LAVAN, LLP


By: _____James L. Bernard /s/_____

    James L. Bernard (JLB-4273
    Elizabeth A. Cronise (EC-7024)

    180 Maiden Lane
    New York, NY 10038-4982
    212-806-5400 (Telephone)
    212-806-6006 (Facsimile)

Attorneys for Defendants, Wilmer Ruperti, Sea Pioneer
    Shipping Corporation and PMI Trading, Inc.

19