UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
NOVOSHIP (UK) LIMITED, CALLY SHIPHOLDINGS
INC., VITAL SHIPPING CORPORATION, and
DAINFORD NAVIGATION INC.,        07-CV- 9876 (DLC)

                         Plaintiffs,

        - against -                         **DECLARATION OF**
                                             **MICHELLE JACQUELINE**
                                             **LINDERMAN**

WILMER RUPERTI, SEA PIONEER SHIPPING
CORPORATION, and PMI TRADING INC., JOHN DOE
(fictitious) and JOHN DOE INC. (fictitious),

                        Defendants.
-----------------------------------------------------------x

     I, Michelle Jacqueline Linderman, declare as follows:

     1.    I am a partner in the London office of the law firm of Ince & Co of International House, 1 St Katharine's Way, London E1W 1AY. I am presently representing Novoship (UK) Limited, Cally Shipholdings Inc., Vital Shipping Corporation and Dainford Navigation Inc., Plaintiffs herein and others, in London litigation against Defendants herein Wilmer Ruperti, Sea Pioneer Shipping Corporation and PMI Trading Inc and others ("the London Litigation"). I submit this declaration based upon my personal knowledge, obtained during the course of my representation of Plaintiffs.

     2.    Together with leading and junior counsel (Messrs Dominic Dowley QC and Charles Dougherty) retained on behalf of Plaintiffs and another partner and a solicitor of Ince & Co, I have reviewed the documents that are currently available to Plaintiffs and that relate to the claims in the London Litigation and, in my view (and as has been set out more fully in the

NYDOCS1/295467.1

Amended Particulars of Claim filed at the London High Court in the London Litigation) the evidence currently to hand gives rise to a number of causes of action against Defendants herein including the torts of conspiracy to injure and defraud Plaintiffs by unlawful means and dishonestly assisting in the first defendant to the London Litigation's breaches of his fiduciary and/or contractual duties. These causes of action give rise to the following claims;

    a. Against Defendants Wilmer Ruperti and Sea Pioneer Shipping Corporation;

        i. An account of all sums paid to the first defendant; and/or

        ii. Payment of the sum of US$1,491,000 paid to the first defendant as bribes and of all further sums received by the first defendant or found due on the taking of such account; and/or

        iii. Damages and/or equitable compensation for dishonestly assisting in the first defendant's breaches of fiduciary duty and/or for conspiracy to injure;

        iv. An account of all profits made on the charters of the *Marshal Chuykov*, the *Moscow Kremlin* and the *Moscow Stars*.

        v. Interest and legal costs

    b. Against Defendant PMI Trading Inc;

        i. Damages and/or equitable compensation for dishonest assistance in the first defendant's breaches of fiduciary duty and/or damages for conspiracy to injure,

      ii. An account of all profits made in connection with the charters of the *Marshal Chuykov*, the *Moscow Kremlin* and the *Moscow Stars* and payment of all sums found due on the taking of such account.

      iii. Interest and legal costs

3. The aforementioned Amended Particulars of Claim that have been filed in the London Litigation bear the names of both leading and junior counsel. It is a fact of English rules of professional conduct that counsel will only put their names to pleadings containing allegations if they are satisfied that those allegations have an evidential basis.

4. With regards to the quantum of the claim, the documents on which Plaintiffs rely for their calculations in this regard are detailed in their Verified Complaint. It should be noted that, with regard to the quantum of the claim in relation to the chartering of the MARSHAL CHUYKOV, MOSCOW KREMLIN and MOSCOW STARS, Plaintiffs are only at this stage able to calculate the quantum of those claims for the single years for which the profits made by Defendants are known as the profits for the other years in relation to these claims are not as yet known. In the event that the level of fraudulent profits made on the fraudulent charter arrangements of each of those vessels was similar to the year about which the fraudulent profits are known, the quantum of Plaintiffs claim would be further increased in the amount of at least US$16,644,000. This is based on the fact that the fraudulent charter arrangements were in existence for at least another two years for each of the three vessels.

5. I understand that Defendants have contested the exercise of admiralty jurisdiction over the claims of Plaintiffs in the United States District Court for the Southern District of New

York in the captioned action and that a hearing is scheduled on Friday, December 15 2007 in order to address these issues. I further understand that, in support of their application, Defendants argue that the fact that Plaintiffs do not allege that the action instituted in London's High Court was brought as a maritime claim under that Court's Admiralty Jurisdiction supports their position that the claims are not in fact maritime based.

6. I understand that the question of whether or not the claim for the interim relief sought from this honorable Court is a maritime claim should be determined on the basis of US Maritime Law and not English law and that the facts of how the claim is classified or has been dealt with by Plaintiffs here is purely academic. Nevertheless, I hasten to mention that when the London Litigation was first started, it consisted of a claim against just the first defendant to the London Litigation in relation to (among other things) that party's breaches of his fiduciary and contractual duties as Director and employee and, as such, there was no necessity and no desirability to bring the claim before the Admiralty branch of the High Court. That claim was more properly a claim to be heard by the Commercial branch of the High Court.

7. Further, English procedural rules do not normally restrict a plaintiff from bringing a claim that could be classified under English law as a maritime claim in the Admiralty Court alone. Claims in relation to collisions, groundings and salvage are the types of claims most often brought before the Admiralty Court, however, a wide cross-section of claims that fall within the Admiralty Court's jurisdiction and which could be classified as maritime claims are frequently brought in other courts.

8.    In any event, under English Court rules, a "claim arising out of any agreement relating to the carriage of goods in a ship or to the use or hire of a ship" (Supreme Court Act 1981 section 20(2)(h)) is considered to be one class of claim which falls within the Admiralty jurisdiction of the High Court but as referred to above it can be heard by the Commercial Court and there is no requirement to commence an Admiralty action.

9.    It is worth noting that under English procedural rules, even if a claim was to be commenced in the wrong court, this would generally not be a bar to the claim but, instead, the court in which the claim had been commenced (either of its own volition or at the request of either of the parties) would transfer the claim to a more appropriate court.

10.    As a matter of English procedural law, unless a party pleads and proves a foreign law, an English Court will simply apply English law to a dispute notwithstanding any international element in the case. If a party does plead and prove a foreign law, the English court will apply its conflict of law rules and evaluate the evidence of foreign law. In this case Defendants have not as yet been served with the English court documents and it is therefore unknown whether Defendants will contend that any foreign law applies and/or whether they will adduce any evidence that foreign law applies, and that English law is not the proper law of the claims in the London Litigation. In any event, based on the evidence to hand at the present time, and after seeking leading and junior counsel's comments, I consider that there are good grounds that the claims in the London Litigation should be subject to English law, and it is on that basis that we have considered and stated the claims under that law.

11.     In order to obtain security in favor of Plaintiffs with respect to their claims against Defendants and in aid of the London Litigation, as well as to obtain security for additional sums to cover anticipated attorney fees and costs in the London Litigation, all of which are recoverable under English law, on November 7, 2007, Plaintiffs sought the attachment in the amount of $17,149,420 before the United States District Court for the Southern District of New York.

12.     As alleged in Plaintiffs' Complaint, Plaintiffs estimated that they would incur legal expenses and costs of prosecuting the London Litigation in the amount of $4,000,000 due to the complexity of the issues; the number of parties involved; the number of likely witnesses; and, the estimated length of the hearing. In reaching this estimation, I discussed the claims with a fellow partner of this firm who previously conducted lengthy research into the costs of a matter based on the anticipated length of trial. As a result of this discussion I provided Plaintiffs' US attorneys with the above estimate which at the time I considered to be a conservative figure.

13.     In preparing this declaration, I have consulted with Mr. Jeffery Alan Longman, a Law Costs Draftsman employed by my firm. Mr Longman has been a Law Costs Draftsman for about 40 years and is a Fellow of the Association of Law Costs Draftsmen and has a wealth of experience in preparing costs estimates based on his extensive knowledge of the English Court rules relating to taxation of costs. Mr Longman also regularly attends court taxation hearings to present arguments as to recoverable costs. With considerable assistance from Mr Longman, I have prepared the attached schedule from which you will see we calculate the estimated legal expenses and costs in this matter as being GB£2,176,450.00 which, at an exchange rate of $ per GB£ of 2.05 equals $4,461,722.50.

14. I note that these costs are not unusual for litigation in London and confirm that successful Plaintiffs are entitled to recover lawyers' fees and expenses either as agreed between the parties or as assessed by the Court. As a general rule of thumb, successful Plaintiffs usually recover around 70% of their lawyers fees and expenses.

15. As regards the estimate for recoverable interest in the London litigation this was calculated at the rate of 8.5% per annum for a period of 4 years. In our calculation we applied US prime rate plus 1%. This is however calculated on a simple interest basis which may be conservative as Plaintiffs in the London Litigation claim interest on a compound basis. The rate and basis of interest awarded is in the discretion of the English Court. The period of 4 years is based on our estimate that from the date that Plaintiffs should have received the sums claimed until the date of judgment could easily exceed 4 years given that this a multi-party dispute; it involves various parties in a number of jurisdictions; and, investigations in even more jurisdictions across the globe. In addition, it is to be noted that Plaintiffs will need to serve Defendants out of the jurisdiction. Two of the Defendants are resident in Panama and I am advised that service in that jurisdiction takes around 12 months.

I declare under the penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed at London, England

December 13, 2007

_____
Michelle Jacqueline Linderman

| | | | |
|---|---|---|---|
| Part 1 Total Costs to date 11/12/07 including up to summary | | | 250,000.00 |

Part 2 Fees and Disbursements preparation for and leading to commencement of Hearing

| 2A Fees leading to trial | Time hrs | Hourly rates £ | |
|---|---|---|---|
| **Case Handlers** | | | |
| Partner R Axe | 750 | 370 | 277,500.00 |
| Partner M Linderman | 750 | 355 | 266,250.00 |
| Assistant Solicitor P Seymour | 750 | 270 | 202,500.00 |
| Trainees (3) | 750 | 170 | 127,500.00 |
| Paralegals (3) | 750 | 145 | 108,750.00 |
| **Part 2A Total Fees** | | | 982,500.00 |

| 2B Disbursements | | |
|---|---|---|
| Leading counsel's fees | 75,000.00 | |
| Junior Counsel's fees | 75,000.00 | |
| Experts fees | 50,000.00 | |
| Foreign travel fares and expenses | 15,000.00 | |
| Witnesses familiarisation programme | 15,000.00 | |
| Copy documents hearing bundles etc | 20,000.00 | |
| Overseas correspondents | 30,000.00 | |
| Translations | 20,000.00 | |
| **Part 2B Total Disbursements** | 300,000.00 | 300,000.00 |
| **Total Part 2 to summary** | | 1,282,500.00 |

Part 3 Estimated costs of 12 day hearing

Part 3A Fees = Attending hearing for 12 days including travel and waiting and conferences and meetings before and after each days hearing – 10 hrs per day*
Trainees and paralegals back office support and partial attendance

| | Time hrs | Rate £ | |
|---|---|---|---|
| Partner REA * | 120 | 370 | 44,400.00 |
| Partner MJL * | 120 | 355 | 42,600.00 |
| Assistant Solicitor PS * | 120 | 270 | 32,400.00 |
| Trainees (3) | 120 | 170 | 20,400.00 |

3

| | | | |
|---|---|---|---|
| Paralegals (3) | 120 | 145 | 17,400.00 |
| **Total Part 3A fees** | | | 157,200.00 |

**Part 3B Disbursements**

| | | |
|---|---|---|
| Leading Counsel's brief fee Dominic Dowley QC (call 1983 silk 2002) | 175,000.00 | |
| Leading Counsel's refreshers (11) | 77,000.00 | |
| Junior Counsel's brief fee Charles Dougherty (call 1997) | 90,000.00 | |
| Junior Counsel's refreshers (11) | 24,750.00 | |
| Experts | 30,000.00 | |
| Witnesses of fact fares hotel and subsistence | 30,000.00 | |
| Copy documents, Courier fees | 10,000.00 | |
| Transcripts/interpreters | 25,000.00 | |
| Overseas correspondents | 25,000.00 | |
| **Total Part 3B Disbursements** | 486,750.00 | 486,750.00 |
| **Total Part 3 to Summary** | | 643,950.00 |

**Summary**

| | |
|---|---|
| Total Part 1 | 250,000.00 |
| Total Part 2 | 1,282,500.00 |
| Total Part 3 | 643,950.00 |
| **Overall final total** | 2,176,450.00 |