UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
NOVOSHIP (UK) LIMITED, CALLY SHIPHOLDINGS
INC., VITAL SHIPPING CORPORATION, and
DAINFORD NAVIGATION INC.,

                                  Plaintiffs,         07-CV- 9876 (DLC)

        - against -                      DECLARATION OF
                                                                      VLADIMIR PETROVICH
WILMER RUPERTI, SEA PIONEER SHIPPING         OSKIRKO
CORPORATION, and PMI TRADING INC., JOHN DOE
(fictitious) and JOHN DOE INC. (fictitious),

                                Defendants.
-----------------------------------------------------------------x

       **Vladimir Petrovich Oskirko** deposes and states as follows:

       1.     I am a director of NOVOSHIP (UK) LIMITED ("NOUK") one of the Plaintiffs in this litigation, a position I have held since 10 January 2006, and a Vice-President of Novorossiysk Shipping Company ("NSC") a position I have held since December 2005. NOUK is wholly owned by Intrigue Shipping Ince, a Liberian registered company which is itself a wholly owned subsidiary of NSC.

       2.     I was previously the Vice-President of finance and planning of NSC and held that position until December 2003 when I accepted an invitation from Russian investors to start up a new shipping company and left the employment of NSC.

       3.     As Vice-President of finance and planning my responsibilities included new projects, ship finance and other off-shore activities and companies. I did not have responsibilities for chartering matters in that role although, as a senior executive, I was fully aware of many aspects of the management of NSC and NOUK including the chartering practices





EXHIBIT 3

2

and policies of the companies and, as such, consider that I have the requisite knowledge to make this declaration.

4. I am familiar with the facts and circumstances surrounding this case and I was one of the individuals at Novoship who was involved in the discovery of and the investigation of the circumstances surrounding the fake and secret contracts of charter party relating to the three vessels identified in this case.

5. I have been asked by FREEHILL HOGAN & MAHAR, New York counsel for the Plaintiffs, to provide a declaration to the Court addressing the issue of whether NOUK and the three plaintiff vessel owners would have entered into contracts with any of the Defendants had it been disclosed that they were the actual charterers.

6. I can unequivocally confirm to this Court that had NOUK, as the manager and agent for the vessel owners, been aware that there was no direct contractual relationship with PDVSA and instead the vessels were being chartered by the Defendants identified in this case, those ocean going tankers would never have been chartered to those corporations or to Mr. Ruperti personally.

7. As outlined in the pleadings which I believe are already before the Court, the contracts involved in this situation involved long term time charter agreements under which the charterer undertakes sufficient obligations to the owner in respect to many aspects of the vessel's operation and trade.

8. By way of illustration, under the time charter contracts which are involved in this case, it is the charterer's obligation to arrange and supply bunkers to the vessel and pay for those bunkers. A breach by a charterer in failing to arrange suitable bunkers and to pay for those



3

bunkers could have an impact on the vessel in the way of an explosion or engine damage or expose the vessel to a debt if the charterer fails to pay for the bunkers provided.

9. Equally important are the charterer's obligations to trade the vessel to safe ports and safe berths. In the context of the time charters such as these, the charterer has discretion to send the vessel essentially anywhere in the world (subject to any trading range specified within the respective charter) and thus the owner does not have option of vetting the particular ports to which the vessel is going to trade in advance of the contract. Under these circumstances, the charterer makes certain representations to the owner and has exposure in the event the place to which it trades are unsafe or cause some incident or damage to the vessel.

10. The charterer is equally responsible for arranging tugs, pilots, etc., all of which can expose the vessels to liens if those debts are not satisfied.

11. Finally, in the circumstances of the bulk liquid trade, significant exposure can be incurred by a charterer in a situation where a bunkering spill occurs or a pollution incident occurs which can be tied to unsafe berth conditions or some negligent conduct in bunkering.

12. To the extent NOUK had no idea that it was chartering directly with the Defendants and not a substantial viable entity like PDVSA, it was incurring significant risks such that should any of the events outlined above occur, the vessel Owners and NOUK would be placed in the position of having to absorb that exposure because recourse could not be had against the Defendant corporate entities, which to the best of my knowledge were formed by Ruperti as Panamanian corporations with limited or no assets with which to satisfy the claims arising from their operation of the vessel.

13. The vessels alone are worth a total of US$ 125,150,000 (this is based on the average valuation of the vessels as at 31 December 2006) and would not have been chartered on



4

long time charter to the Defendant Ruperti or either of his Panamanian corporate entities had NOUK or the Owners of those vessels been aware of the true nature of the contractual relationship which was undertaken in this situation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Novorossiysk, Russia on
13 December 2007

_____
Vladimir Petrovich Oskirko