**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOVOSHIP (UK) LIMITED, CALLY
SHIPHOLDINGS, INC., VITAL SHIPPING
CORPORATIONS, and DAINFORD
NAVIGATION INC.,

                      Plaintiffs,

                v.

WILMER RUPERTI, SEA PIONEER SHIPPING
CORPORATION, and PMI TRADING, INC.,
JOHN DOE (fictitious) and JOHN DOE INC.
(fictitious),

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 07 Civ. 9876 (DLC)

## OPPOSITION TO PLAINTIFFS' MOTION
## FOR RENEWAL OF ORDER OF ATTACHMENT
## <u>PURSUANT TO SUPPLEMENTAL ADMIRALTY RULE B</u>

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................1

II. ARGUMENT ....................................................................................................6

    A. Standard of Review: Plaintiffs Bear the Burden of Proof that Admiralty Jurisdiction Exists ..................................................................................6

    B. Plaintiffs Propose a New Location Test that is Not Supported in the Caselaw and Advance New Allegations that Fail to Alter the Non-Maritime Nature of Case. ..............8

    C. The Location Test is Not Met, as the Alleged Tortious Conduct and Injuries Occurred on Land. ..............................................................................11

    D. Plaintiffs' New Allegations Do Not Alter Nature of Claims Against Defendants. ...........18

    E. The Connection Test is Not Met, as the Alleged Business Torts Bear No Significant Relationship to Traditional Maritime Activity. ................................................20

    F. Plaintiffs' Newly Asserted Breach of Implied Covenant of Good Faith and Fair Dealing Cannot Stand Absent a Concomitant Breach of Contract Claim. ........................23

III. CONCLUSION ................................................................................................24

# TABLE OF AUTHORITIES

## CASES

*Adventures Unlimited, Inc. v. Chrisman,*
　　208 F. Supp. 2d 871 (E.D. Tenn. 2002)..................................................................23

*AquaStoli Shipping Ltd. v. Gardner Smith Pty, Ltd.,*
　　460 F.3d 434 (2d. Cir. 2006) ..............................................................6, 7, 15, 18

*Bottiglieri Di Na Vigazione Spa v Tradeline LLC,*
　　No. 06 Civ. 3705(LAK), 2007 WL 404657 (S.D.N.Y. Feb. 6, 2007).................8

*Broughton v. Florida International Underwriters, Inc.,*
　　139 F.3d 861 (11th Cir. 1998) ..........................................................................15

*Cargill v. ESAL (Commodities) Ltd.,*
　　No. 84 Civ. 0841 (WK), 1984 WL 1424 (S.D.N.Y. April 6, 1984) ..................17

*Carroll v. Protection Maritime Insurance Co., Ltd.,*
　　512 F.2d 4 (1st Cir. 1975)..................................................................................18

*Centauri Shipping Ltd. v. W. Bulk Carriers KS,*
　　No. 07-CV-4761 (RJS)(HBP), 2007 WL 3378254 (S.D.N.Y. Nov. 5, 2007)....................8

*Doe v. Celebrity Cruises, Inc.,*
　　394 F.3d 891 (11th Cir. 2004) ..........................................................................22

*Elmwood Dry Dock and Repair v. H & A Trading Co.,*
　　No. Civ. A. 93-2156, Civ. A. 94-1844. Civ. A. 94-3783, Civ. A. 97-191,
　　1997 WL 781298 (E.D. La. Dec. 16, 1997) ..............................................17, 22

*Erogov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,*
　　183 F.3d 453 (5th Cir. 1999) ............................................................................15

*Executive Jet Aviation v. City of Cleveland,*
　　409 U.S. 249 (1972) ...........................................................................10, 21, 22, 23

*Exeter Shipping Ltd. v. Kilakos,*
　　310 F. Supp. 2d 1301  (N.D. Ga. 2004)..............................................16, 17, 22

*F.W.F., Inc. v. Detroit Diesel Corp.,*
　　494 F. Supp. 2d 1342 (S.D. Fla. 2007)..............................................................24

*Foremost Insurance Co. v. Richardson,*
　　457 U.S. 668 (1982) ..........................................................................................10

*Guidry v. Durkin,*
　　834 F.2d 1465 (9th Cir. 1987) ..........................................................................16

*International Terminal Operating Co., Inc. v. SS Valmas,*
  375 F.2d 586 (4th Cir. 1967) ............................................................... 19

*J.K. International, Pty., Ltd. v. Agriko S.A.S.,*
  No. 06-CV-13259 (KMK), 2007 WL 485435 (S.D.N.Y. Feb. 13, 2007) .......................... 7

*J. Lauritzen A/S v. Dashwood Shipping, Ltd.,*
  65 F.3d 139 (9th Cir. 1995) ....................................................... 12, 13, 18

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,*
  513 U.S. 527 (1995) ................................................................. *passim*

*Kuehne & Nagle (AG & CO) v. Geosource, Inc.,*
  874 F.2d 283 (5th Cir. 1989) ................................................. 11, 12, 13, 14

*LaMontagne v. Craig,*
  817 F.2d 556 (9th Cir. 1987) ........................................................... 16

*LaMontagne v. Craig,*
  632 F. Supp. 706 (N.D. Cal. 1986) ..................................................... 16

*In re Madison Coal & Supply Co., Inc.,*
  321 F. Supp. 2d 809 (S.D.W. Va. 2003) ......................................... 9, 16, 23

*Maersk, Inc. v. Neewra, Inc.,*
  443 F. Supp. 2d 519 (S.D.N.Y. 2006) ................................................... 8

*Maritima Petroleo E Engenharia Ltda. v. Ocean Rig 1 AS,*
  78 F. Supp. 2d 162 (S.D.N.Y. 1999) ............................................. 7, 14, 15

*McGuire v. City of New York,*
  192 F. Supp. 866 (S.D.N.Y. 1961) ................................................. 7, 8, 11

*Norfolk Southern Railway v. James N. Kirby, Pty. Ltd.,*
  543 U.S. 14 (2004) ................................................................. 9, 10

*OGI Oceangate Transportation Co. Ltd. v. RP Logistics Pvt. Ltd.,*
  No. 06 Civ 9441 (RWS), 2007 WL 2900225 (S.D.N.Y. Oct. 4, 2007) ..................... 6, 7, 8

*Ramirez v. Butler,*
  319 F. Supp. 2d 1034 (N.D. Cal. 2004) ............................................. 6, 23

*Rollin v. Kimberly Clark Tissue Co.,*
  211 F.R.D. 670 (S.D. Ala. 2001) ....................................................... 23

*Sisson v. Ruby,*
  497 U.S. 358 (1990) ............................................................ 9, 11, 20

*Smith v. Mitlof,*
    198 F. Supp. 2d 492 (S.D.N.Y. 2002) ........................................................... 6, 15

*Solano v. Beilby,*
    761 F.2d 1369 (9th Cir. 1985) ................................................................... 12, 16

*T & O Shipping, Ltd. v. Source Link Co., Ltd.,*
    No. 06-CV-7724 (KMK), 2006 WL 3513638 (S.D.N.Y. Dec. 5, 2006) ........................... 7

*Watson v. Massman Construction Co.,*
    850 F.2d 219 (5th Cir. 1988) ..................................................................... 12

*Whitcombe v. Stevedoring Services of America,*
    2 F.3d 312 (9th Cir. 1993) ......................................................................... 16

*Wiedemann & Franzen, A.P.L.C. v. Hollywood Marine, Inc.,*
    811 F.2d 864 (5th Cir. 1987) ..................................................................... 16

*In re Worldcom, Inc. Sec. Litigation,*
    456 F. Supp. 2d 508 (S.D.N.Y. 2006) ........................................................... 24

## STATUTES

28 U.S.C.A. Civ. P. Admiralty Supp. R. E(8) ................................................... 1

28 U.S.C.A. Civ. P. Admiralty Supp. R. E(4)(f) ................................................. 7

## MISCELLANEOUS

2 Thomas J. Schoenbrum & Jessica L. McClellan, *Admiralty & Maritime Law* § 11-1
    (4th Ed. 2008) ...................................................................................... 19

Defendants Wilmer Ruperti ("Ruperti"), Sea Pioneer Shipping Corporation ("Sea Pioneer") and PMI Trading, Inc. ("PMI") (collectively, "Defendants") make a restricted appearance pursuant to 28 U.S.C.A. Civ. P. Admiralty Supp. R. E(8), and respectfully submit this Memorandum of Law in Opposition to the Motion for Renewal of Order of Attachment Pursuant to Supplemental Admiralty Rule B submitted by plaintiffs Novoship (UK) Limited ("Novoship"), Cally Shipholdings, Inc. ("Cally"), Vital Shipping Corporation ("Vital") and Dainford Navigation, Inc. ("Dainford") (collectively, "Plaintiffs"). For the reasons stated herein, Defendants respectfully request that this Court deny Plaintiffs' Motion for Renewal of Order of Attachment Pursuant to Supplemental Admiralty Rule B ("Motion").[1]

## I.  INTRODUCTION

On November 7, 2007, Plaintiffs filed a Verified Complaint asserting that this case falls within the purview of maritime jurisdiction.  On the basis of that Verified Complaint, Plaintiffs requested and were granted an *ex parte* order permitting the maritime attachment and garnishment of Defendants' assets located in this jurisdiction.  On December 7, 2007, Defendants filed a motion to vacate that attachment due to the absence of facts supporting the existence of maritime jurisdiction.

During the December 14, 2007 hearing on Defendants' motion to vacate, this Court observed that the instant action is not typical of the numerous maritime cases presented in this district and, further, that Plaintiffs' initial *ex parte* application for a maritime attachment was

---

[1] Defendants incorporate by reference each and every argument advanced in their Memorandum of Law in Support of their Motion to Vacate *Ex Parte* Order for Process of Maritime Attachment and Garnshiment, to Preclude Further Maritime Attachments and to Dismiss this Action with Prejudice for Lack of Jurisdiction. For the reasons set forth herein, and in their earlier memorandum, Defendants respectfully request that this Court: (a) vacate the Court's November 7, 2007 *Ex Parte* Order directing clerk to issue process of maritime attachment and garnishment (the "November 7 Order"); (b) vacate the process of maritime attachment and garnishment (the "PMAG") issued pursuant to the November 7 Order; (c) preclude any further process under the November 7 Order; (d) dismiss this action in its entirety with prejudice; and (e) grant such other and further relief as this Honorable Court may deem just and proper.

insufficient to warrant the maintenance of the November 7 Order and resulting PMAG. In its Order dated December 17, 2007, this Court directed that no additional funds could be attached under the November 7 Order, and granted Plaintiffs leave to make a renewed application for an order of attachment based on the Amended Verified Complaint ("Amended Complaint") Plaintiffs informed the Court they had filed shortly before the hearing.

The Amended Complaint, however, is an identical, word for word, replica of the initial Complaint, except for a handful of paragraphs that have nothing to do with the alleged injury Plaintiffs claim to have suffered. Plaintiffs' claims remain classic, garden variety, commercial torts that occurred, according to Plaintiffs' own allegations, on land. As with the prior Complaint, Plaintiffs' claims are predicated on a remarkable and improbable interpretation of certain e-mails allegedly sent between the owners of three vessels and the charterers of those vessels, some of which Plaintiffs claim are missing from Novoship's computers. As before, Plaintiffs again imply, but do not explicitly allege, that Vladimir Mikhaylyuk, Novoship's General Manager and Director, deleted or destroyed certain emails to conceal the identity of the charterer in the charter party agreements for the vessels from his employer. (Amended Complaint ¶¶ 9, 23, 38).

Plaintiffs further allege, as in their initial Complaint, that Mr. Mikhaylyuk misrepresented the identity of the charterer in reports he issued to others at Novoship (Amended Complaint ¶¶ 21, 22); that Defendant Sea Pioneer made three payments to an account at the Bank of Nevis owned by Pulley Shipping, which Plaintiffs characterize as bribes and or secret commissions paid to Mr. Mikhaylyuk (Amended Complaint ¶¶ 32, 33, 43); and that the purpose of this alleged conduct was to allow Defendants to profit from sub-charter agreements without Plaintiffs' knowledge (Amended Complaint ¶ 15). On the basis of these factual allegations, Plaintiffs assert

that Mr. Mikhaylyuk breached fiduciary duties owed to Novoship, and that Defendants assisted in such breaches as a part of a conspiracy with Mr. Mikhaylyuk, again as alleged in the original Complaint. (Amended Complaint ¶ 45).[2]

These allegations in the Amended Complaint, all identical to the allegations in the original Complaint, encompass the totality of the alleged misconduct by Defendants and the alleged injury suffered by Plaintiffs. As argued below, and argued previously in Defendants' Motion to Vacate, these allegations do not set forth a maritime tort and do not activate this Court's admiralty jurisdiction. The wrongful conduct attributed to Defendants had as its alleged intended effect a series of transactions, all occurring on land. Plaintiffs complain that, through secret agreements, ships were chartered to one entity rather than another, that secret profits were realized by one entity rather than another, and that payment of bribes or kickbacks were made to a bank account in the island of Nevis. However, the alleged secret charter parties were entered into on land, the alleged secret profits were realized on land, and the alleged unlawful payments were made on land. As with their original Complaint, Plaintiffs have alleged commercial, not maritime, torts in their Amended Complaint that do not support the exercise of admiralty jurisdiction by this Court.

To distinguish this case from the garden variety commercial tort cases that fall outside the purview of admiralty jurisdiction, Plaintiffs advance two "new" theories in the Amended Complaint. First, Plaintiffs claim that Defendants exercised control over the vessels while at sea

_____

[2] Plaintiffs further state that they have instituted an action in the High Court of Justice, Queen's Bench Division, Commercial Court in London, England based on these allegations, although Plaintiffs still have not furnished a copy of the alleged action commenced by them against Defendants in London or assert the substantive law they claim to invoke. (Amended Complaint ¶ 57). Plaintiffs claim to bring the instant action in the Southern District of New York "to obtain jurisdiction over Defendants for enforcement purposes." (Amended Complaint ¶¶ 58, 59). It is worth noting that Plaintiffs concede that the action instituted in London's High Court was not brought as a maritime claims under that court's admiralty jurisdiction. *See* Declaration of Michelle Jaqueline Linderman at ¶¶ 6-9, Exhibit 2 to Affidavit of Peter J. Gutowski.

by virtue of the provisions in the standard Shelltime 4 Charter Party which "granted rights and obligations to PMI which directly affected the operation of the vessels on navigable waters." (Amended Complaint ¶ 51)  Here, Plaintiffs' allegations disregard and contradict the essential nature of a time charter party, which is a form of agreement under which the owner (Plaintiffs in this case) retains control of the chartered vessel and supplies the Master and crew to conduct the vessel's operations at sea.  These allegations also disregard and contradict Plaintiffs' essential claim that the vessels were sub-chartered by Defendants to PDVSA.  Under a subcharter, the subcharterer stands in the shoes of the charterer under the original charter party.  It follows that whatever control Plaintiffs claim was bestowed on the charterer pursuant to the standard Shelltime 4 Charter Party (which is far less than what Plaintiffs allege since the Master and crew of the vessels were at all times supplied by them[3]) that control was exercised by PDVSA as the subcharterer, precisely the entity Plaintiffs claim should have had such control but for the alleged fraud.

Moreover, the provisions of the Shelltime 4 standard form cited by Plaintiffs concern sailing instructions and directions, fuel, towage, pilotage, port agency, loading, unloading, safe ports, berths, wharves, docks, anchorage, submarine lines, cash advances for use at port, representatives and inspectors.  (Amended Complaint ¶ 51)  However, there is no allegation in this case, nor could there be, that any damage or injury was sustained by Plaintiffs (or anyone else) while the vessels were operating on navigable waters, and the alleged damages that

---

[3] Plaintiffs' failure to make this disclosure while alleging that Defendants exercised control of the vessels is a glaring omission from Plaintiffs' submission to this Court, as is the fact that the standard Shelltime 4 Charter Party contains a standard provision that permits the sub-letting of a vessel by the original charterer (Clause 18).  The fact that the Master and crew of the vessels under these long term time charters were supplied by Plaintiffs also underscores the lack of merit of Plaintiffs' claims even as standard commercial torts.  Plaintiffs' claims all derive from the premise that Mr. Mikhaylyuk manipulated and misrepresented the substance of these transactions to his employer.  However, Mr. Mikhaylyuk was not the only point of contact between Plaintiffs on the one hand and Defendants or PDVSA on the other.

Plaintiffs seek to recover here have nothing to do with sailing instructions or directions, fuel, towage, pilotage or any of the other aspect of control over the vessels Plaintiffs allege was enjoyed by Defendants. These "new" allegations in the Amended Complaint do not alter the nature of the alleged torts, which sound, as before, in classic business torts.[4]

Finally, Plaintiffs make a further attempt to invoke this Court's admiralty jurisdiction by alleging that Defendants "breached their implied covenant of good faith and fair dealing" under the original charter parties with Cally, Vital and Dainford. (Amended Complaint ¶ 56). It is, however, elementary and settled law that a claim for breach of implied covenant of good faith and fair dealing cannot survive where the underlying conduct does not actually breach the contract at issue. Plaintiffs have not and cannot assert a breach of contract claim here, and thus this alternate claim cannot stand. Indeed, only one of the three defendants is alleged to have been a party to the original time charter parties with Plaintiffs.[5]

Plaintiffs must demonstrate that they possess a valid *prima facie* admiralty claim against Defendants such that this Court may exercise jurisdiction over both the claims and the parties hereto and reinstate the attachment of Defendants' assets on that basis. Plaintiffs cannot satisfy that burden. All of Plaintiffs' alleged injuries arise from the claimed breach of fiduciary duty by their former director, and the alleged conspiracy of Defendants in aid of that breach. Plaintiffs' claims do not constitute maritime torts and, consequently, do not support the exercise of admiralty jurisdiction by this Court even if all of the allegations in the Amended Complaint are

---

[4] These "new" allegations are set forth in paragraph 50 – 55 of the Amended Complaint, although they were previously before the Court via affidavits. *See, e.g.,* Declaration of Vladimir Petrovich Oshkirko, dated December 13, 2007.

[5] Plaintiffs also assert, via third party hearsay contained in an affidavit from Plaintiffs' counsel, that Defendant Ruperti had what Plaintiffs characterize as a "celebrator [sic] dinner party" following the Court's hearing on December 14, 2007, apparently insinuating that this inadmissible, factually inaccurate and irrelevant allegation should have some bearing on the Court's decision here. Defendants respectfully submit that this portion of Plaintiffs' brief, and the portion of counsel's affidavit related thereto, should be stricken from the record as irrelevant, inflammatory and inadmissible.

accepted as true.  Defendants respectfully submit that Plaintiffs' Motion should be denied, the

November 7 Order should be vacated, and this case dismissed in its entirety. [6]

## II. ARGUMENT

**A.    Standard of Review: Plaintiffs Bear the Burden of Proof that Admiralty Jurisdiction Exists**

When, as here, the question to be considered is one involving the jurisdiction of a federal

court, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from

the pleadings inferences favorable to the party asserting it."  *Smith v. Mitlof*, 198 F. Supp. 2d

492, 498 (S.D.N.Y. 2002) (citing *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d.

Cir. 1998)).   In evaluating whether admiralty jurisdiction applies, moreover, "[n]o presumptive

truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will

not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

*Ramirez v. Butler*, 319 F. Supp. 2d 1034, 1037 (N.D. Cal. 2004) (internal quotation and citation

omitted).

Maritime attachment is designed to allow parties in admiralty cases to secure jurisdiction

over an absent party and to obtain security for a potential judgment where the absent party's

assets are transitory.  *See, e.g., AquaStoli Shipping Ltd. v. Gardner Smith Pty, Ltd.*, 460 F.3d 434,

435, 437 (2d. Cir. 2006).  Maritime attachment, however, requires a showing that the claims at

issue in the case fall within the purview of admiralty jurisdiction, and thus the Court must

evaluate the validity of Plaintiffs' claims under admiralty law in determining whether maritime

attachment is appropriate.  *See, e.g., OGI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd.*,

---

[6] Plaintiffs submitted an opinion from the Southern District of Florida finding admiralty jurisdiction in a parallel action alleging maritime jurisdiction over two of the Defendants in this action in support of their Application for Renewal.  That holding has not yet been challenged under Supplemental Rule E, and Defendants submit that, for the same reasons maritime jurisdiction does not exist here, that opinion will not withstand scrutiny under the Supreme Court's test for admiralty jurisdiction.

No. 06 Civ. 9441 (RWS), 2007 WL 2900225, at *2 (S.D.N.Y. Oct. 4, 2007); *McGuire v. City of New York*, 192 F. Supp. 866, 870 (S.D.N.Y. 1961) ("Not every tort committed on admiralty waters may be redressed in the admiralty courts."). Admiralty Rule E(4)(f), moreover, provides that "whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." 28 U.S.C.A. Civ. P. Admiralty Supp. R. E(4)(f).

As explained by the Second Circuit in *AquaStoli*, the Admiralty Rules "clearly place[] the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E." 460 F.3d at 445 n.5. *See also T & O Shipping, Ltd. v. Source Link Co., Ltd.*, No. 06-CV-7724 (KMK), 2006 WL 3513638, at * 2 (S.D.N.Y. Dec. 5, 2006); *J.K. Int'l, Pty., Ltd. v. Agriko S.A.S.*, No. 06-CV-13259 (KMK), 2007 WL 485435, at *2 (S.D.N.Y. Feb. 13, 2007). In order to maintain the process of maritime attachment and garnishment under Rule B, Plaintiffs must demonstrate: (a) that they have a valid *prima facie* admiralty claim against each of the Defendants whose property they seek to attach; (b) that the Defendants cannot be found within this district; (c) that the Defendants' property may be found within the district; and (d) that there is no statutory or maritime law bar to the attachment. *AquaStoli*, 460 F.3d at 445. "[A] district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." *Id.*

Courts in this district have consistently denied maritime attachment in every case where the plaintiff fails to satisfy the requirements of *AquaStoli*. *See, e.g., Maritima Petroleo E Engenharia Ltda. v. Ocean Rig 1 AS*, 78 F. Supp. 2d 162, 171-72 (S.D.N.Y. 1999) (no admiralty jurisdiction where torts alleged were committed on navigable water); *OGI Oceangate Transp.*

*Co. Ltd.*, 2007 WL 2900225 (denying motion for reconsideration of vacatur and dismissing the complaint for failure to state admiralty claim); *Centauri Shipping Ltd. v. W. Bulk Carriers KS*, No. 07-CV-4761 (RJS)(HBP), 2007 WL 3378254 (S.D.N.Y. Nov. 5, 2007) (vacatur of attachment appropriate where defendant was found to be "present in the district"); *Bottiglieri Di Na Vigazione Spa v Tradeline LLC,* No. 06 Civ. 3705(LAK), 2007 WL 404657, at *1-2 (S.D.N.Y. Feb. 6, 2007) (granting vacatur because plaintiff did not establish *prima facie* admiralty claim against the defendant). Because Plaintiffs similarly cannot meet their burden here, attachment should not be reinstated.

> **B.     Plaintiffs Propose a New Location Test that is Not Supported in the Caselaw and Advance New Allegations that Fail to Alter the Non-Maritime Nature of Case.**

As courts in this jurisdiction have repeatedly recognized, the ease with which maritime attachment can be obtained "creates a real risk of abusive use of the maritime remedy," and thus it is critical that the Court apply the proper test in determining whether maritime jurisdiction exists. *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006) (internal quotation omitted). In their Memorandum, Plaintiffs put forth a test that no other court has ever endorsed or applied, and cite cases that do not stand for the propositions for which they are cited. Defendants respectfully submit that the application of the test mandated by Supreme Court authority requires the dismissal of this action for want of jurisdiction.

Under Supreme Court authority, the determination of whether allegations of tortious conduct give rise to admiralty jurisdiction turns on whether conditions of both "location" and "connection with maritime activity" are met. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); *see also McGuire*, 192 F. Supp. at 868 (S.D.N.Y. 1961) ("The basis of admiralty jurisdiction must be combination of a maritime wrong and a maritime location."). "In applying the location test, a court must determine whether the tort occurred on

navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Jerome B. Grubart*, 513 U.S. at 534. In applying the "connection" test, on the other hand, a court must consider whether the alleged wrong "bears a significant relationship to traditional maritime activity." *Sisson v. Ruby,* 497 U.S. 358, 374 (1990). More particularly, the connection test requires evaluation of a two part sub-test: first, the court must assess the "general features of the type of incident involved to determine whether such an incident is likely to disrupt" maritime activity, and second, the court must determine whether "a substantial relationship between the activity giving rise to the incident and traditional maritime activity exists." *Id.* at 363, 364; *see also Jerome B. Grubhart*, 513 U.S. at 534. Failure to establish either the location or connection test is fatal to an assertion of admiralty jurisdiction. *See, e.g., In re Madison Coal & Supply Co., Inc.*, 321 F. Supp. 2d 809, 812 (S.D.W. Va. 2003).

Plaintiffs attempt to distort this test in order to establish jurisdiction here when none exists. Particularly, Plaintiffs suggest that the location prong of the admiralty jurisdiction test has somehow been diminished or even eliminated, and that the Supreme Court has expanded admiralty jurisdiction in tort cases beyond the bounds of its two part test. *See, e.g.,* Mem. at 11, 19-21. Plaintiffs' arguments find no support in the cases cited in their Memorandum, or anywhere else.

For instance, Plaintiffs cite to *Norfolk Southern Railway v. James N. Kirby, Pty. Ltd.*, 543 U.S. 14 (2004) for the proposition that the Supreme Court has expanded maritime jurisdiction in cases such as this. What Plaintiffs fail to point out, however, is that the Supreme Court's holding in *Norfolk Southern Railway* was limited to maritime contract cases, not maritime tort cases such as the case at bar, and that a different jurisdictional standard applied there.[7] *Id.* at 23-24

---

[7] Plaintiffs' unsupportable attempt to assert a breach of implied covenant of good faith and fair dealing is addressed further *infra*.

(characterizing that case as a "contract dispute," and noting that the boundaries of jurisdictional analysis differ as between maritime breach of contract cases and maritime tort cases).

Plaintiffs also mischaracterize the Supreme Court's holding in *Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249 (1972), claiming that the Supreme Court "indicated that the emphasis should be placed on whether the alleged wrong bore a significant relationship to traditional maritime activity." Mem. at 10. The Supreme Court's holding in *Executive Jet* states no such thing. Rather, *Executive Jet* stands purely for the proposition that *both* the location test and the connection test must be satisfied in order for maritime jurisdiction to exist. *Id.* at 267-68. Similarly, Plaintiffs cite to *Foremost Ins. Co. v. Richardson*, 457 U.S. 668 (1982), claiming that it stands for the proposition that *Executive Jet* allowed for a "broader interpretation" of admiralty jurisdiction in tort cases. Mem. at 11. Rather, *Foremost*—a case where two boats collided on navigable waters—merely restated *Executive Jet*'s two part test, requiring that both the location and connection tests be satisfied for maritime jurisdiction to exist, and applied that test to non-commercial maritime cases as well as commercial ones. 457 U.S. at 671-75.

Location served as the *only* determinative jurisdictional test in maritime tort cases for over one hundred years, until the Court's decision in *Executive Jet* added the second connection prong. 409 U.S. at 253-69. Nothing in *Executive Jet* or the Supreme Court cases that have followed state or even suggest that the location test has been eroded, diminished or relegated to secondary or marginal importance. Plaintiffs' representations to the contrary are unsupported and misleading. Defendants respectfully submit that the Court should reject Plaintiffs' attempt to expand the law of jurisdiction beyond the boundaries sanctioned by the Supreme Court. As discussed further below, failure to satisfy the location prong is the most frequent basis for the

denial of admiralty jurisdiction in tort cases, as it should be in the instant case. *See, e.g., Kuehne & Nagle (AG & CO) v. Geosource, Inc.*, 874 F.2d 283 (5th Cir. 1989).

Nonetheless, under either the location test or the connection test, Plaintiffs' Amended Complaint fails to satisfy the requirements of admiralty jurisdiction. Plaintiffs' allegations in this matter constitute garden variety financial torts neither originating on navigable waters nor bearing a significant connection to traditional maritime activity. Such conduct, for reasons discussed below, fails to satisfy the requirements of admiralty jurisdiction, and thus Plaintiffs' Complaint should be dismissed.

### C.    The Location Test is Not Met, as the Alleged Tortious Conduct and Injuries Occurred on Land.

As explained by the Supreme Court in *Sisson, Jerome B. Grubhart* and their progeny, the fundamental question the Court must consider in evaluating the location test for purposes of admiralty jurisdiction is "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Jerome B. Grubhart*, 513 U.S. at 534. It is beyond question that the allegations asserted in this case, constituting classic business torts, did not occur on navigable water, nor did they cause injury on land via a vessel on navigable water. Indeed, Plaintiffs' Amended Complaint does not even attempt to claim that the torts at issue occurred on navigable water or via a vessel on navigable water. Thus, as is obvious on the face of their Amended Complaint, Plaintiffs cannot satisfy the location test here. *Id.; see also McGuire*, 192 F. Supp. at 871 (where allegations do not "relate to any tort which grows out of navigation," but rather allege "an ordinary tort," admiralty jurisdiction will not lie).

Plaintiffs do not fundamentally dispute that all of the tortious conduct alleged in their Amended Complaint took place on land. Plaintiffs attempt, however, to distort the location test advanced by the Supreme Court and followed by circuit and district courts throughout the

-11-

country. Plaintiffs claim that "the cases indicate that the effect need only be potential in order to provide a basis for jurisdiction." Mem. at 16. According to Plaintiffs, admiralty tort jurisdiction exists when tortious conduct occurring on land causes effects on navigable waters, even if those effects are only potential and have no relationship to the injury which is the basis of the claim. Plaintiffs cite no authority whatsoever for this proposition. Defendants respectfully submit that this proposition is not the law.

Supreme Court authority indicates that the "effect" that must be felt on navigable waters for admiralty jurisdiction to exist is the actual injury from which the damages arise; a remote or potential "effect" is insufficient. *See, e.g., Jerome B. Grubhart*, 513 U.S. at 535 (injuries suffered by Plaintiff were caused by a vessel on navigable water; thus, location test was satisfed); *see also Solano v. Beilby*, 761 F.2d 1369, 1371 (9th Cir. 1985) ("courts have traditionally defined the locus of the tort as the place where the injury occurs") (citing *Executive Jet*, 409 U.S. at 266). Circuit court authority also supports the conclusion that the actual injury must occur at sea. *See Kuehne & Nagel*, 874 F. 2d at 289 (land-based acts must produce "a major injury" in navigable waters for admiralty jurisdiction to exist); *Watson v. Massman Constr. Co.*, 850 F.2d 219, 222 (5th Cir. 1988) (where work barge was involved "only indirectly and in no way . . . the cause of the injury," location test not satisfied).

In the case of *J. Lauritzen A/S v. Dashwood Shipping, Ltd.*, 65 F.3d 139 (9th Cir. 1995), moreover, a shipping company had a contract that placed a vessel in a pool agreement, providing the owners of various vessels control over the commercial shipping operations of the vessels, in order to share in trading revenues. Plaintiff filed suit when a vessel in question was sold and new sailing instructions issued for that vessel by the new owner, who was not a party to the pool agreement. *Id.* at 141. Alleging tortious interference with the pooling agreement, Plaintiff

-12-

claimed that maritime jurisdiction applied and attachment should issue because, it claimed, the tort took place at sea. The Ninth Circuit disagreed. Holding that "[t]here is no doubt . . . that whether the injury occurred on navigable waters remains part of the inquiry in determining admiralty jurisdiction," the court found that all of "the claimed damages arose solely on land" and thus no admiralty jurisdiction existed, despite the fact that shipping routes and operations were implicated in the case. *Id.* at 142-43.

The holding of *Lauritzen* is directly on point here, where all of the alleged injury took place on land. Moreover, in *Lauritzen*, shipping routes and operations were actually affected by the tortious interference, but jurisdiction still did not lie. Here, Plaintiffs have not even shown that shipping routes or operations were at all affected by the alleged tortious conduct.[8] If the facts of *Lauritzen* were insufficient to satisfy maritime jurisdiction due to the location of the injury, the facts of this far weaker case are totally inadequate. Plaintiffs' assertion that a potential effect at sea is sufficient to satisfy the location test is incorrect as a matter of law.

In *Kuehne & Nagel*, the Fifth Circuit was called upon to determine whether certain intentional torts, including alleged misrepresentations that induced plaintiffs to enter into freight forwarding agreements characterized by the court as having "strong maritime implications," constituted maritime torts for purposes of admiralty jurisdiction. 874 F.2d at 289. Applying the location test, the court looked to the location where the alleged misrepresentations occurred, namely at a meeting in Hamburg, Germany, and to the place where the alleged misrepresentations took effect, which the court found to be "on land." *Id.* Most particularly, the court noted that no injury occurred to the cargo that was the subject matter of the agreements while aboard ship, and that "[a]t best, the injury, if any, that occurred on navigable waters was

---

[8] *See* discussion *infra* regarding Plaintiffs' allegations that Defendants controlled operations of vessels.

too remote from the tortious act to meet the situs requirement for admiralty jurisdiction." *Id.* at 289.[9]

*Kuehne & Nagel's* analysis of the location test is also directly on point here. As in *Kuehne & Nagel*, Plaintiffs allege that Defendants engaged in intentional torts relating to the entry into certain agreements. As in *Kuehne & Nagel*, Plaintiffs' claims are garden variety financial fraud claims that result from alleged conduct that took place on land and produced alleged injuries in the form of lost profits and unlawful payments suffered on land. Plaintiffs have not alleged, nor can they, that the injury they claim to have suffered occurred on navigable waters. The mere fact that shipping is tangentially implicated is insufficient to satisfy the location test where the injury at issue does not take place on navigable waters.[10] *Id.*

Courts in this jurisdiction have likewise applied the location test to dismiss claims for want of maritime jurisdiction where injuries resulting from alleged torts occurred on land. In *Maritima Petroleo*, plaintiff alleged that it was fraudulently induced to enter into a memorandum of agreement with defendant involving off-shore drilling rigs. In applying the location test, the court noted that "[i]ntentional torts, such as fraud, misrepresentation and fraudulent inducement to contract must have effect on navigable waters to be within admiralty jurisdiction." 78 F. Supp.

---

[9] The court further rejected the lower court's rationale that the nature of the contract mandated admiralty jurisdiction, holding instead that "[a] party to a contract with strong maritime implications must still satisfy . . . [the] situs requirement when seeking to predicate jurisdiction on a maritime tort." *Id.* (citations omitted). "[I]nterference with a maritime contract does not vest the court with admiralty tort jurisdiction absent an impact on navigable waters." *Id.* at 289-90. Accordingly, the court concluded that the torts alleged by plaintiffs did not satisfy the requirements for the exercise of admiralty jurisdiction. *Id.* at 290.

[10] Plaintiffs attempt to distinguish *Kuehne & Nagel* on the basis that the injury asserted therein had a land-based component. *See* Mem. at 17-18. This is precisely the reason with *Kuehne & Nagel* is directly on point here, as *all* of the alleged injuries in this case took place on land. Plaintiffs further attempt to distinguish this case from the facts of *Kuehne & Nagel* by claiming that this case is somehow about an attempt to "deprive[] the Plaintiffs of a legitimate and credit worthy charterer," not the garden variety financial fraud alleged in the Amended Complaint. Mem. at 18. As a review of the Amended Complaint reveals, however, none of the damages asserted by Plaintiffs arise in any way from such conduct; in fact, even taking all of Plaintiffs' allegations as true, Plaintiffs were paid for the charter of the vessels—just simply not in the amount that they now wish they had earned. Plaintiffs' attempts to mischaracterize their own allegations to evade the application of authority that is directly on point should be disregarded by the Court.

2d at 171 (internal citations omitted).  Finding that "any misrepresentation which occurred most certainly occurred on land when the parties executed the [agreement]," and "the tortious act occurred when the [agreement] was signed," the court rejected the exercise of admiralty jurisdiction. *Id.* at 171-72  (citing *Kuehne & Nagel*, 874 F.2d at 289).

Notably, the situs of the torts alleged here and any injury related thereto—namely where the agreements were negotiated and the alleged bribes conveyed and secret profits realized—is indisputably on land, more particularly in Caracas, Venezuela, London, England, and the island of Nevis, as Plaintiffs' Amended Complaint makes plain.  (Amended Complaint ¶¶ 2, 12-14, 43). As such, admiralty jurisdiction does not exist here.  *Maritima*, 78 F. Supp. 2d at 171-72.  *See also Smith*, 198 F. Supp. 2d. at 500 (injuries from fraud and negligent misrepresentation did not take place on water in case where boat subsequently capsized; injury was felt where the contract for sale of the vessel was consummated on land).[11]

Dozens of circuit and district court admiralty tort cases confirm that even where some aspect of shipping might be tangentially involved such that an "effect" could arguably be said to be felt at sea, the only relevant "effect" for admiralty jurisdiction is whether the alleged injury which is the basis of the claim took place on water.  *See, e.g., Erogov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 455-56 (5th Cir. 1999) (location prong not met because injury in tortious interference case concerning wages for crewmen was not felt at sea); *Broughton v. Fla. Int'l Underwriters, Inc.*, 139 F.3d 861, 865 (11th Cir. 1998) (to satisfy location test, injury must take place on navigable water; breach of duty to plaintiffs related to insurance for ship insufficient to satisfy jurisdiction because injury took place on land even

---

[11] Plaintiffs' attempts to distinguish *Maritima* and *Smith* are unavailing.  Contrary to Plaintiffs' representations, both cases rejected maritime jurisdiction on the basis of the failure to satisfy the location test, not due to the characterization of underlying contracts. *See* Mem. at 18-19.

though "there may be some connection between the alleged tort and traditional maritime activity"); *Whitcombe v. Stevedoring Servs. of America*, 2 F.3d 312, 315 (9th Cir. 1993) (when injury occurs on land, admiralty jurisdiction is not proper; "nonmaritime location of the injury is normally dispositive"); *Wiedemann & Franzen, A.P.L.C. v. Hollywood Marine, Inc.*, 811 F.2d 864, 865 (5th Cir. 1987) ("it is requisite to proof of a maritime tort that there be an injury on navigable waters;" no admiralty jurisdiction over tortious interference with contract where injury took place on land); *LaMontagne v. Craig*, 817 F.2d 556, 557 (9th Cir. 1987) (publication of defamatory statement took place on land, not navigable waters, and thus admiralty jurisdiction did not exist even though defamatory statement was written on board a ship). *See also Solano*, 761 F.2d at 1371 ("courts have traditionally defined the locus of the tort as the place where the injury occurs"); *Guidry v. Durkin*, 834 F.2d 1465, 1469 (9th Cir. 1987) ("[w]here it is clear that tortious injury occurs solely ashore, the federal courts are generally without admiralty jurisdiction"); *LaMontagne v. Craig*, 632 F. Supp. 706, 707-08 (N.D. Cal. 1986) (jurisdiction limited to cases where torts take place on navigable waters; no jurisdiction in defamation case where communication originated on ship but was published on land); *In re Madison Coal* 321 F. Supp. 2d at 813 (when tort occurs on land, in an ordinary non-maritime activity, miles away from waterway or vessel, locality test not satisfied).

Plaintiffs' attempt to extend the location test to include all cases where a land based tort may cause effects at sea, even if only potential and unrelated to the alleged injury, does not withstand scrutiny. Rather than supporting this novel and unprecedented formulation of the location test, the cases cited by Plaintiffs follow and apply the traditional location test that looks to where the alleged injury took place. In *Exeter Shipping Ltd. v. Kilakos*, 310 F. Supp. 2d 1301 (N.D. Ga. 2004), for instance, certain vessels were arrested on the high seas as a result of one

party's misrepresentation of its financial status. The injury that formed the basis of the claim was the arrest of the vessel on the high seas. *Id.* at 1306-07. Because, unlike here, the injuries in *Exeter Shipping* took place on navigable waters, the location test was satisfied. *Id.* at 1311. Contrary to Defendants' assertions, the damages asserted in that case were not "land-based." *Compare* Mem. at 14 to *Exeter*, 310 F. Supp. at 1310 (arrest of a vessel, as asserted in that case, is an "injury at sea" and properly falls within maritime law).

Likewise, *Cargill v. ESAL (Commodities) Ltd.*, No. 84 Civ. 0841 (WK), 1984 WL 1424 (S.D.N.Y. April 6, 1984) must also be rejected for identical reasons. In that case, the plaintiff's claims, and the alleged injury, resulted from allegations that the defendant had converted for its own use cargo while that cargo was on navigable waters. The court found that admiralty jurisdiction existed based on the allegation that the defendant "wrongfully exercised dominion and control over plaintiff's cargo and effected such conversion while the cargo was on navigable waters." *Id.* at *1. *Cargill* is, therefore, easily distinguishable as there is no allegation that Defendants here engaged in any tortious conduct while on navigable waters or caused Plaintiffs to suffer an injury on navigable waters.

Plaintiffs' reliance on *Elmwood Dry Dock and Repair v. H & A Trading Co., Ltd.*, No. Civ. A. 93-2156, Civ. A. 94-1844, Civ. A. 94-3783, Civ. A. 97-191, 1997 WL 781298 (E.D. La. Dec. 16, 1997) is also misplaced. In that case, the alleged torts "stem from the history of dealings related to the condition, repair, use and operation of the vessel, its crew expenses, fuel requirements, profits and losses." *Id.* at *16. Noting that "[t]here is no question that every aspect of this case is tied to the physical condition, whereabouts and requirements of the vessel," the court found that "[n]one of the tortious conduct can be isolated to a land-based activity." *Id.* Moreover, injuries in that case arose in part from the seizure of the vessel at sea when one party

-17-

was delinquent in paying for repairs to the vessel at issue. *Id.* at *15-16. This is in direct contrast to the instant case, where *all* of the injuries alleged are land-based, and none concerns the condition, whereabouts and requirements of the vessels at issue, but are only incidentally related to the ships.[12]

The instant action thus falls squarely within the holdings of *Lauritzen*, *Kuehne & Nagle*, *Maritima* and *Smith* that intentional commercial torts such as those alleged by Plaintiffs cannot give rise to admiralty jurisdiction, as the location test is not satisfied where the injury does not occur at sea. Dismissal of this case with prejudice is warranted, as is denial of Plaintiffs' request to reinstate attachment.

### D.    Plaintiffs' New Allegations Do Not Alter Nature of the Caims Against Defendants.

The discussion above makes clear that Plaintiffs' new allegations in paragraphs 50 through 55 of the Amended Complaint, by which the seek to attribute to Defendants control over the vessels while on navigable water, do not alter the jurisdictional analysis for this case because these new allegations do not alter the nature of the claims against Defendants. Despite the new allegations, Plaintiffs' claims remain garden variety commercial torts that occurred on land and produced alleged injuries on land. Even if the new allegations in the Amended Complaint are accepted as true and compatible with the other allegations in the Amended Complaint, they do not point to any injury allegedly suffered by Plaintiffs at sea. There is no claim, nor could there be, that Plaintiffs or anyone else suffered injuries while the vessels were operating in navigable waters, and the alleged damages that Plaintiffs seek to recover do not arise from improper fuel, inadequate port services, unsafe ports, inadequate pilotage or any other aspect of the vessels

---

[12] *Carroll v. Protection Maritime Ins. Co., Ltd.,* 512 F.2d 4 (1st Cir. 1975) is also distinguishable, in that injuries resulting from blacklisting of plaintiff seamen and commercial fisherman in that case resulted in plaintiffs not being hired to work at sea, and affected operations of vessels at sea. *Id.* at 8. No such injury is alleged in this case. None of the cases cited by Plaintiffs in this regard are on point.

-18-

operations cited by Plaintiffs in the Amended Complaint. For admiralty jurisdiction to attach in a tort case, the injury has to occur at sea; potential effects at sea unrelated to the injury which is the basis of the claim do not convert an alleged land-based tort into a maritime claim.

Moreover, Plaintiffs' allegations that Defendants controlled the operations of the ships at sea are incompatible with the time charter party they claim was used by Defendants to gain that control. "Under a time charter, the charterer engages for a fixed period of time a vessel, which remains manned and navigated by the vessel owner, to carry goods wherever the charterer instructs." 2 Thomas J. Schoenbrum & Jessica L. McClellan, *Admiralty & Mar. Law* § 11-1 (4th Ed. 2008). In other words, "the vessel owner retains possession and control" over the vessel pursuant to a time charter. *Id.* In this case, consistent with the essential characteristics of a time charter party, Plaintiffs supplied the Master and crew that operated the vessels for the duration of the charter, and controlled the vessels operations at sea.

Moreover, Plaintiffs' allegation that the vessels were subchartered by Defendants to PDVSA are incompatible with their allegation that Defendants controlled the vessels, and that the "vessels were being directed by a company which, due to the fraud, had no such right." (Amended Complaint ¶ 52) In the case of a subcharter, the subcharterer stands in the shoes of the charterer relative to the owner and the terms of the original time charter are made part of the subcharter. *Int'l Terminal Operating Co., Inc. v. SS Valmas*, 375 F.2d 586, 590 (4th Cir. 1967) (subcharterer stands in shoes of charterer and subcharter party incorporates terms of the time charter).

Thus, based on the allegations in the Amended Complaint, any control over the vessels that was not in the hands of the Plaintiffs as owners was in the hands of PDVSA as subcharterer endowed with the rights and obligations of the charterer under the original charter parties –

precisely the entity Plaintiffs allege should have had control over the vessels but for the alleged fraud. The net result of the alleged misconduct, therefore, is not that the operations of the vessels at sea were wrongfully controlled by the Defendants as Plaintiffs now claim. Rather, pursuant to the original time charter and subcharter, the vessels were controlled by Plaintiffs and PDVSA just as Plaintiffs claim should have occurred absent the alleged fraud. The net result of the alleged misconduct is that Plaintiffs realized smaller profits from PDVSA's use of the vessels than what they claim they should have received. Again, this alleged injury is land-based and does not give rise to admiralty jurisdiction.

### E.     The Connection Test is Not Met, as the Alleged Business Torts Bear No Significant Relationship to Traditional Maritime Activity.

The connection test is also not met here, as the alleged business torts bear no significant relationship to traditional maritime activity. The second prong of the Supreme Court's test for admiralty jurisdiction requires evaluation of the "connection" between the allegedly tortious activity and traditional maritime activity. As discussed *supra*, in evaluating this connection, the court must look first to "the potential impact of a given type of incident by examining its general character," and second to whether there is a "substantial relationship between the activity giving rise to the incident and traditional maritime activity." *Sisson*, 497 U.S. at 363, 364; *see also Jerome B. Grubhart*, 513 U.S. at 534. Applying the Supreme Court's connection test here reveals that once again, Plaintiffs have failed to meet their burden of proving that admiralty jurisdiction exists.

As the Supreme Court has noted, the general character of the relevant "activity" is "defined . . . by the general conduct from which the incident arose." *Sisson*, 497 U.S. at 364. Notably, Plaintiffs do not even attempt to characterize the nature of their allegations in applying the connection test. The general character of the alleged conduct here is an alleged breach of

fiduciary duty by Plaintiffs' former executive and the alleged conduct of Defendants in conspiring with that former executive, resulting in claimed financial injury to Plaintiffs. In other words, the general character of Plaintiffs' allegations is that of garden variety business torts. Such conduct plainly does not ordinarily have anything to do with maritime activity, and is only fortuitously and incidentally involved with the charter of certain maritime vessels. As the Supreme Court has held, where the circumstances of a case are "only fortuitously and incidentally connected to navigable waters and bear[] no relationship to traditional maritime activity," admiralty jurisdiction will not lie. *Executive Jet*, 409 U.S. at 273. For the same reasons, the second prong of the Supreme Court's connection test defeats Plaintiffs' claim to admiralty jurisdiction here.

In evaluating whether Plaintiffs have demonstrated a substantial relationship between the activity giving rise to the incident and traditional maritime activity, the court must evaluate whether "a tortfeasor's activity . . . is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Jerome B. Grubart*, 513 U.S. at 539-40. Plaintiffs do not attempt to analyze this case under this prong of the connection test, instead only asserting that "there is no more fundamental maritime activity than the charter and operation of ocean-going cargo ships," Mem. at 13, with no analysis whatsoever as to whether the conduct asserted in their Amended Complaint that *actually gives rise* to their claim for damages is at all related to traditional maritime activity. It is not. Maritime activity falling within the purview of admiralty law has been characterized by the Supreme Court as including navigational rules, apportionment of liability for maritime disasters, protection of seamen aboard ship, and establishment of uniform rules for maritime liens, captures of prizes, liability for cargo damage, and claims for salvage. *Executive Jet*, 409 U.S. at 269-70.

Case 1:07-cv-09876-DLC     Document 18     Filed 01/04/2008     Page 27 of 31

The allegations asserted by Plaintiffs in this case do not fall within any of these areas. Garden variety business torts such as those alleged in the Amended Complaint do not constitute activity so traditionally subject to admiralty law that admiralty jurisdiction should apply here.

Plaintiffs cite little authority for their claim that the connection requirement is satisfied here, and that they do cite is distinguishable. In *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891 (11th Cir. 2004), a staff member on a cruise ship raped a cruise passenger in a park next to the ship during the course of a cruise stop in Bermuda, following which the passenger returned to the cruise ship to obtain medical attention and report the rape. Noting that "a crew member's sexual assault on a passenger obviously has a potentially disruptive impact on maritime commerce," and that the tort effectively began and ended aboard the cruise ship, the court found that maritime jurisdiction existed. *Id.* at 900. *Doe* is plainly distinguishable from the instant case, where the financial torts at issue bear an only incidental connection to maritime activity and had no disruptive effect on maritime activity. Similarly, *Elmwood* is distinguishable in that the connection test was satisfied therein because the allegations concerned "the repair, operation and maintenance of an ocean going vessel that sailed on navigable waters." 1997 WL 781298, at *16. This case does not. *Exeter* must also be rejected here because the connection test was met due to the arrest of a vessel at sea, facts also not present here. 310 F. Supp. 2d at 1310.

Plaintiffs point out that cases relied upon by Defendants in seeking to vacate the initial attachment as dispositive of the connection test in Defendants' favor differ factually from the instant case. That is largely due to the fact that the vast majority of intentional tort cases that are intially asserted as maritime are dismissed for failure to satisfy the location test, as should be the case here, thereby resolving the issue without the need to venture further into the connection test. *See* cases cited in Section II(C), *supra*. Nonetheless, numerous cases support the conclusion that

facts bearing only an incidental relationship to maritime activity, such as that alleged here, are insufficient to support the exercise of admiralty jurisdiction, and inform the application of the connection test here. *See, e.g., Executive Jet*, 409 U.S. at 271-72 (plane crash into Lake Erie resulting from birds on runway bears no relationship to traditional maritime activity); *Ramirez v. Butler*, 319 F. Supp. 2d 1034, 1040 (N.D. Cal. 2004) (state law conversion claim brought by recreational sailboat owner against marinas did "not present a sufficient risk of collateral damage or impact upon maritime commerce necessary to establish admiralty jurisdiction"); *In re Madison Coal*, 321 F. Supp. 2d at 814 (tort perpetrated by off duty vessel crewman operating an automobile on land while intoxicated not substantially related to maritime activity); *Rollin v. Kimberly Clark Tissue Co.*, 211 F.R.D. 670, 674 (S.D. Ala. 2001) (physician providing care to injured seaman insufficient for exercise of jurisdiction; connection test not satisfied when activity does not fall within a class of incidents posing more than a "fanciful risk to commercial shipping") (internal quotation omitted); *Adventures Unlimited, Inc. v. Chrisman*, 208 F. Supp. 2d 871, 873-74 (E.D. Tenn. 2002) (highway trucking accident resulting in dumping of raw meat into then-dry river, while potentially having slight disruptive effect on maritime commerce, found not substantially related).

Plaintiffs cannot satisfy their burden of proving the connection test sufficient to satisfy maritime jurisdiction here, and thus Plaintiffs' request to reinstate attachment should be denied.

### F.    Plaintiffs' Newly Asserted Breach of Implied Covenant of Good Faith and Fair Dealing Cannot Stand Absent a Concomitant Breach of Contract Claim.

Plaintiffs lastly make a new assertion that this case concerns the breach of an implied covenant of good faith and fair dealing such that maritime jurisdiction should apply here, although Plaintiffs spend little time on this argument.  It fails as a matter of course.  As this Court has itself held, it is black letter contract law that where a party seeks to assert a breach of

the duty of good faith and fair dealing, "he is required to plead as well a viable claim for breach of contract." *In re Worldcom, Inc. Sec. Litig.*, 456 F. Supp. 2d 508, 519 (S.D.N.Y. 2006) (Cote, J.) (applying New York law). As authority cited by Plaintiffs confirms, a stand-alone breach of contract claim is required because "there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, . . . in accordance with the express terms of the contract." *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1359 (S.D. Fla. 2007). Plaintiffs have not asserted breach of contract here, and thus cannot assert a breach of the implied covenant of good faith and fair dealing.[13] As such, maritime jurisdiction does not exist here on either a tort or contract basis, and Plaintiffs' request for reinstatement of attachment should be denied.

## III. CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants Wilmer Ruperti, Sea Pioneer Shipping Corporation and PMI Trading, Inc. respectfully request that this Court deny Plaintiffs' Motion and dismiss this matter with prejudice.

---

[13]  Although the merits of the case are not ripe for resolution at this time, Defendants submit that even if all of the allegations of Plaintiffs' Amended Complaint were taken as true, none of the conduct asserted violates the charter party agreements executed between the parties to this case. As such, Plaintiffs have no viable stand-alone breach of contract claim.

Respectfully submitted,

STROOCK & STROOCK & LAVAN, LLP


By: /s/ Elizabeth H. Cronise_____

    James L. Bernard (JLB-4273)
    Elizabeth H. Cronise (EC-7024)

    180 Maiden Lane
    New York, NY 10038-4982
    212-806-5400 (Telephone)
    212-806-6006 (Facsimile)

    Henry E. Mendia, *admitted pro hac vice*

    200 South Biscayne Boulevard
    Miami, FL 33131-5323
    305-358-9900 (Telephone)
    305-789-9302 (Facsimile)

Attorneys for Defendants, Wilmer Ruperti, Sea Pioneer
    Shipping Corporation and PMI Trading, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 4, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

## SERVICE VIA CM/ECF NOTICE OF ELECTRONIC FILING

**ERIC EINAR LENCK, ESQ.**
**PAMELA LYNN SCHULTZ, ESQ.**
**PETER JUDGE GUTOWSKI, ESQ.**
Freehill, Hogan & Mahar, LLP
80 Pine Street
New York, NY 10005
*Attorneys for Novoship UK Limited;*
  *Cally Shipholdings Inc.;*
  *Vital Shipping Corporation; and*
  *Dainford Navigation Inc.*

/s/ Elizabeth H. Cronise
Elizabeth H. Cronise