```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
NOVOSHIP (UK) LIMITED, CALLY            :
SHIPHOLDINGS INC., VITAL SHIPPING       :
CORPORATION, and DAINFORD NAVIGATION    :
INC.,                                   :
                                        :
                      Plaintiffs,       :   07 Civ. 9876 (DLC)
                                        :
              -v-                       :   MEMORANDUM OPINION
                                        :        AND ORDER
WILMER RUPERTI, SEA PIONEER SHIPPING    :
CORPORATION, and PMI TRADING INC., JOHN :
DOE (fictitious), AND JOHN DOE INC.     :
(fictitious),                           :
                                        :
                      Defendants.       :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiffs:
Peter J. Gutowski
Gina Venezia
Pamela L. Schultz
Freehill Hogan & Mahar LLP
80 Pine Street
New York, NY 10005

For Defendants:
James L. Bernard
Elizabeth H. Cronise
Stroock & Stroock & Lavan, LLP
180 Maiden Lane
New York, NY 10038

Henry E. Mendia
Stroock & Stroock & Lavan, LLP
200 South Biscayne Boulevard
Miami, FL 33131

DENISE COTE, District Judge:

On November 7, 2007, the Honorable Robert W. Sweet, acting as Part I judge, signed an <u>ex parte</u> order of maritime attachment and garnishment authorizing the restraint of $17,149,420 of defendants' funds.  Pursuant to the attachment order, plaintiffs were able to restrain $3,054,265.47.  Defendants entered a special appearance and moved to vacate.  Following a conference with the parties on December 14, an Order of December 17 was issued barring the restraint of additional funds pursuant to the November 7 Order pending briefing on a motion for a renewed order of attachment based upon an amended complaint.  The motion was fully submitted on January 11, 2008.  For the following reasons, the motion is granted and the November 7, 2007, order of maritime attachment and garnishment is reinstated in full.

BACKGROUND

The following facts are taken from the complaint. Plaintiff Novoship (UK) Limited ("Novoship") is an English company that acted as agent and manager of the tanker vessels <u>Marshal Chuykhov</u>, <u>Moscow Kremlin</u>, and <u>Moscow Stars</u> (the "Tankers"), on behalf of the ships' owners, plaintiffs Cally Shipholdings, Inc., Vital Shipping Corporation, and Dainford Navigation Inc., respectively (the "Owners"), all Liberian companies headquartered at the same address in Monrovia.

Defendant Wilmer Ruperti ("Ruperti") is a Venezuelan businessman who owns and controls defendants Sea Pioneer Shipping Corporation ("Sea Pioneer") and PMI Trading Inc. ("PMI"), both Panamanian corporations.

Plaintiffs allege that Ruperti, working with a "dishonest employee" of Novoship, Vladimir Mikhaylyuk ("Mikhaylyuk"), created falsified charter party contracts to fraudulently induce the Owners (via their agent, Novoship) to charter the Tankers to Sea Pioneer and PMI, which plaintiffs allege are merely Ruperti's "shell entities."  This alleged scheme enabled Ruperti to gain control of the Tankers by leading Novoship to believe that the Tankers had been chartered directly to the official oil agency of the Venezuelan government, Petroleos de Venezuela S.A. ("PDVSA"), a major charterer of oil carrying vessels.  In reality, plaintiffs allege, the Tankers were chartered to Sea Pioneer and PMI, who then sub-chartered the Tankers to PDVSA and "skimmed off" the difference between what PDVSA paid to Ruperti's companies and what Novoship ultimately received.  This difference, plaintiffs contend, amounted to more than $17 million.  Plaintiffs further contend that this undisclosed arrangement placed plaintiffs at "substantial risk for a multitude of liabilities flowing from the fact that the time charterer's obligations and duties owed to Plaintiffs were the responsibility of Ruperti and his shell entities, and not the

substantial oil giant PDVSA." Plaintiffs aver that they would not have entered into the charter contracts had the truth been disclosed.

Based on these allegations, plaintiffs bring claims against the defendants sounding both in tort (fraudulent misrepresentation) and contract (breach of the implied covenant of good faith and fair dealing in the charters entered into between plaintiffs and defendants). The merits of these claims are the subject of litigation before the High Court in London (the "London litigation"); plaintiffs seek the instant attachment in order to obtain security for the enforcement of a potential judgment in the that litigation.

DISCUSSION

>   Supplemental Admiralty Rule B provides that
>
>   [i]f a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property -- up to the amount sued for -- in the hands of garnishees named in the process.

Fed. R. Civ. P. Supp. R. B(1)(a). Supplemental Rule E requires that the "complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to

frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a). Pursuant to these rules, the Court of Appeals has held that

> [i]n addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006).

Following the issuance of a maritime attachment under these procedures, "any person claiming an interest in" the attached property "shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. Supp. R. E(4). If an attachment is challenged under Supplemental Rule E(4), "the burden [is] on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E." Aqua Stoli, 460 F.3d at 445 n.5. A defendant may also obtain vacatur of the attachment at this stage on certain "limited grounds," id. at 447, such as by establishing "that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3)

5

the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." Id. at 445.

The parties agree that "the defendant cannot be found within the district," that "the defendant's property may be found within the district," and that "there is no statutory or maritime law bar to the attachment." Id. Moreover, the defendant does not argue that any of the "limited circumstances" justifying vacatur of a maritime attachment are present here. Id. Rather, the parties' dispute focuses exclusively on whether the plaintiffs have demonstrated that they have "a valid prima facie admiralty claim against the defendant[s]," id. -- i.e., whether the plaintiffs' tort or contract claims fall within this Court's admiralty jurisdiction, or whether they are, as defendants claim, simply common "commercial disputes."

The parties' hotly dispute whether plaintiffs' tort claims may properly be considered admiralty claims, but this question -- while an interesting one[1] -- need not be resolved here, as the

---

[1] "[A] party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions both of location and of connection with maritime activity." Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). Plaintiffs argue, in sum, that the Supreme Court's recent jurisprudence, e.g., Norfolk S. Ry. v. James N. Kirby, Pty., Ltd., 543 U.S. 14, 25 (2004), and certain Court of Appeals decisions, e.g., Doe v. Celebrity Cruises Inc., 394 F.3d 891, 900 (11th Cir. 2004), "indicate[] that while locality is still considered, the real focus of the inquiry is trained on the question of whether the tort has a substantial relationship to some traditional maritime activity." While the merits of this

6

plaintiffs' contract claim provides an independent basis for the assertion of admiralty jurisdiction and the issuance of the requested maritime attachment. "While the precise categorization of the contracts that warrant invocation of the federal courts' admiralty jurisdiction has proven particularly elusive," courts "should look to the contract's 'nature and character' to see 'whether it has reference to maritime service or maritime transactions.'" Folksamerica Reinsurance Co. v. Clean Water of New York, Inc., 413 F.3d 307, 312 (2d Cir. 2005) (quoting, inter alia, Norfolk S. Ry., 543 U.S. at 24)). Thus, in determining whether admiralty jurisdiction is present, "the contract's subject matter must be our focal point," id., and where the "principal objective of a contract is maritime

---

position need not be resolved here, it may be noted that the "connection" test appears not to have supplanted, in whole or in part, the "location" test, but rather is simply a "policy-based filter that allows the courts flexibility in screening out unusual fact situations that are not maritime in nature, but happen to occur in navigable waters." 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 3-5 (4th ed. 2008); see also Jerome B. Grubart, Inc., 513 U.S. at 542; cf. David J. Bederman & John E. Wierwille, The Contemporary Contours of Admiralty Jurisdiction, 31 Tul. Mar. L.J. 291, 313 (2007) (noting that "Doe v. Celebrity Cruises, Inc. extends the uniformity rationale for the extension of admiralty jurisdiction over all maritime relationships . . . to the breaking-point, and perhaps beyond."). In addition, it is far from clear that plaintiffs could prevail on their argument that because the alleged misrepresentations had an "effect" on navigable waters, the "location" test is satisfied here. See, e.g., Smith v. Mitlof, 198 F. Supp. 2d 492,500 (S.D.N.Y. 2002) (rejecting this approach).

commerce," Norfolk S. Ry., 543 U.S. at 25, this standard will be satisfied.

There can be no dispute that the contracts at issue here -- charter party contracts -- should be considered maritime contracts. Moreover, the defendants do not dispute that such contracts give rise to implied covenants of good faith and fair dealing.[2] Rather, they argue (1) that in order to state a valid claim for breach of the implied covenant, the plaintiffs must plead an independent claim for breach of contract, citing In re WorldCom Inc. Sec. Litig., 456 F. Supp. 2d 508, 519 (S.D.N.Y. 2006), and (2) somewhat indirectly, that the actions allegedly taken by the defendants were "in accordance with the express terms of the contract[s]," and thus did not breach those contracts, citing FWF Inc. v. Detroit Diesel Corp., 494 F. Supp. 2d 1342, 1359 (S.D. Fl. 2007) (citation omitted).

Both of these arguments may be swiftly rejected. First, this Court's decision in In re WorldCom was grounded in the

---

[2] On this point, both parties cite FWF Inc. v. Detroit Diesel Corp., 494 F. Supp. 2d 1342 (S.D. Fl. 2007), which states that "[e]very maritime contract imposes an obligation of good faith and fair dealing between the parties in its performance and enforcement." Id. at 1359 (citing, inter alia, Misano di Navigazione, SpA v. United States, 968 F.2d 273, 274-75 (2d Cir. 1992), and Restatement (Second) of Contracts § 205). While it is not clear whether United States law would apply to the interpretation of the charter party contract, see generally 1 Schoenbaum § 5-23, the parties' agreement on this point is sufficient at this stage for the purposes of determining whether plaintiffs have demonstrated that they have a valid prima facie admiralty claim against the defendants.

requirements of New York State law, which provides that an "implied covenant cannot be used to create independent obligations beyond the contract." ARI & Co., Inc. v. Regent Int'l Corp., 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003), cited in In re WorldCom, 456 F. Supp. 2d at 519.  Defendants make no argument that New York (or even federal) law applies to plaintiffs' contract claim and, in any event, defendants' citation to this principle in no way rebuts plaintiffs' prima facie showing that a breach of the implied covenant here would be "a breach of the underlying contract." Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002) (citation omitted).[3]  Second, defendants' oblique reference to an argument that the alleged wrongdoing here -- i.e., the secret chartering and sub-chartering of the Tankers -- was permitted under the terms of the charter party contracts between the parties is likewise insufficient.  Even assuming that the charter party contracts here permitted sub-chartering, as defendants claim, plaintiffs' contract claim does not arise simply out of the fact that the Tankers were sub-chartered by the defendants, but rather out of a deliberately deceitful and secretive course of

---

[3] While, under New York law, "[a] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." Harris, 310 F.3d at 80 (citation omitted), that concern is not raised here.

9

alleged conduct in both the formation and execution of the contracts. While defendants may ultimately be able to show -- in the course of the London litigation -- that the charter party contracts were never breached, the current record sufficiently demonstrates that plaintiffs have "a valid prima facie admiralty claim against the defendant[s]" based on a breach of the charters. Aqua Stoli, 460 F.3d at 445.

CONCLUSION

The November 7, 2007, order of maritime attachment and garnishment is reinstated in full; plaintiffs are authorized to seek attachment of additional assets of the defendants found within this district, up to a total amount of $17,149,420.

SO ORDERED:

Dated:   New York, New York
         March 19, 2008

                                                      DENISE COTE
                                     United States District Judge