'To enable us to proceed further you will need to take professional tax advice and provided details of the purpose of the structure. If you did not have a legal adviser then I suggest that you contact Mr Charles Pike of Withers law firm situated at 16 Old Bailey, London EC4M 7EG—Tel: 020 7597 6000—Fax: 020 7597 6543.

'In order to comply with the regulations we are required to hold the following documents before we proceed with the establishment of the structure(s), which I now enclose for your reference:

- Trust questionnaire
- Company questionnaire
- Management Services Agreement, this incorporates our terms and conditions

(If you establish a trust you will not need to complete the company questionnaire)

'In addition to this we will also require the following:

- Certified true copy of your passport
- Two original utility bills confirming your residential address
- A letter of introduction from a professional firm who has known you for more than three years. A lawyer, bank or chartered accountant may provide this.

'I enclose a copy of our corporate profile, however for your ease of reference I detail below our fees in relation to the establishment of a Jersey Trust and a Nevis Company . . . .'

As regards this e-mail:

22(9).1.1    ~~NOUK~~ the Claimants does not have a copy of this email but ~~has retrieved~~ the above text has been retrieved as a data fragment from one of the laptop computers owned by NOUK and used by Mr Mikhaylyuk during his employment.

22(9).1.2    ~~NOUK~~ the Claimants does not have a copy of Mr Mikhaylyuk's e-mail of 30 January 2003 referred to in Mrs Tausney's e-mail;

22(9).1.3    ~~NOUK is not aware of the identity of 'Dmitri';~~ for the reasons set out below (see, in particular, paragraphs 22(12) and 22(14), it is to be inferred that 'Dmitri' was Mr Dmitri Dyrtchenko of Navitank.

22(10) The incorporator of Pulley Shipping was Mr Morton. On the day of its incorporation (16 April 2004), Pulley Shipping designated Hamilton Trust as its Registered Agent and Hamilton Trust (acting by Mr Morton) accepted such designation. In a letter dated 16 April 2004, Mr Mikhaylyuk wrote to Hamilton Trust:

**'RE: PULLEY SHIPPING LIMITED (INCORPORATED IN NEVIS)**
'I confirm that upon my instructions you formed the above company.

'I also confirm the following:

- All assets provided to the Company are derived from a legitimate source.
- Independent taxation advice has been taken by me in respect of the establishing and management of the Company. I also acknowledge that neither Hamilton Trust Company (Nevis) Limited nor its Directors provide tax advice.
- I acknowledge receipt of Hamilton Trust Company (Nevis) Limited's Terms and Conditions.
- I have not been declared bankrupt or been a Director or been involved in the management of a Company which has been the subject of an insolvent liquidation or been the subject of a judicial enquiry.
- I confirm that I have not been convicted of any offence involving fraud or other dishonesty, or any offence under legislation relating to the companies/trusts (including insider dealing), building societies, industrial or provident societies, credit unions, friendly societies, insurance, banking or other financial services, insolvency, consumer credit or consumer protection.'

22(11) Minutes of a Meeting of the Board of Directors of Pulley Shipping dated 20 April 2004 and signed by Mr Morton, as Chairman of the Meeting, recorded a resolution that banking facilities be arranged with the Bank of Nevis with the Authorised Signatories of Hamilton Trust as the authorised signatories on the account. A set of minutes of a further Meeting of the Board of Directors, also dated 20 April 2004 and, again, signed by Mr Morton as Chairman of the Meeting recorded the following resolutions:

'**THAT** Mr Vladimir Mikhaylyuk be appointed as an Investment Advisor to the company to provide advice on other potential business ventures and to enable the company to cover his out of pocket expenses the company applied for a US$ dollar Business Card; and **THAT** the Directors of the company apply to the Bank of Nevis International Ltd of Charlestown, Nevis for this facility.'

A set of minutes of a further Meeting of the Board of Directors of Pulley Shipping also dated 20 April 2004, again signed by Mr Morton as Chairman of the Meeting, recorded a resolution that an Internet Banking application presented to the meeting be approved.

22(12)  On 20 April 2004 Pulley Shipping applied to the Bank of Nevis to open an account. A 'Business Customer Information Questionnaire' stated that the 'principal owner' of Pulley Shipping was Mr Mikhaylyuk and the expected annual account turnover on the proposed account was US$400,000. The signatories to the account were to be Mr Morton and Mr Pinniger. In connection with this application, the following documents were submitted to the Bank of Nevis:

22(12).1    A reference dated 27 April 2004 from Barclays Bank Plc, 9 Portman Square, London, addressed to Mr Dmitri Dyrtchenko of Navitank. The reference was for Mr Mikhaylyuk. This reference appears to have been sent by fax from Fiduciary Management to Hamilton Trust and/or Mr Morton and the following was written on it when it was forwarded to the Bank of Nevis:

'If necessary, kindly verify authenticity by calling Barclays, London. Client's initial concerns were confidentiality and anonymity hence letter addressed to business associate in Sweden. Account approved July 2004.'

22(12).2    A notarised copy of Mr Mikhaylyuk's passport.

22(12).3    A notarised copy of Mr Mikhaylyuk's driving licence.

22(12).4    A notarised copy of Mr Mikhaylyuk's telephone bill for his private residence, dated 23 March 2004.

22(12).5    Copies of Mr Mikhaylyuk's Water Services Bill (for the year April 2004 to March 2005) and Council Tax Bill (dated 4 March 2004) each for his private residence.

22(13) A Bank of Nevis form entitled 'Pre-Audit of Off-Shore Bank Account, Re: Due Diligence Basic Requirements' in connection with an audit of the Pulley Shipping file on 17 May 2004 stated that the Beneficial Owner of Pulley Shipping was Mr Mikhaylyuk. Subsequent forms in connection with audits on 9 and 12 July 2004 gave the same information.

22(14) In an undated letter on Navitank's writing paper, Mr Androsov wrote to the Bank of Nevis as follows:

'I, Maxim Androsov, and we at Navitank AB know Mr Vladimir Mikhaylyuk since 1993 on a personal basis and through joint business together and confirm he is an honest and respectful businessman and an upright citizen.'

Mr Morton sent this reference to the Bank of Nevis under cover of a letter dated 17 May 2004 in which he wrote:

'**PULLEY SHIPPING LTD**
'We attach copy of professional reference from Navitank AB on Mr Vladimir Mikhaylyuk, beneficial owner of above referenced company. Please note Mr Mikhaylyuk was referred to us by Mr Dyrtchenko, Director of Navitank, a reputable shipbroking house in Stockholm and our mutual customer since 2002.'

Mr Morton also enclosed, among other things, Mr Mikhaylyuk's business card and information on NOUK. Mr Morton also wrote:

'We would appreciate if you can provide us with an account number to facilitate funding of the account with the undertaking, should you still require, reference from Mr Mikhaylyuk's lawyer.'

Two days later, on 19 July 2004, US$80,000 was transferred from the account of Mirador Shipping to the account of Pulley Shipping. This was the opening credit on Pulley Shipping's account, which the Bank of Nevis opened on 19 July 2004 with the number 8292809.

22(15)  Mr Dyrtchenko also provided a reference, on Navitank's writing paper, for Mr Mikhaylyuk dated 17 May 2004. Mr Dyrtchenko wrote:

> 'This is to confirm that the undersigned knows Mr Mikhaylyuk since 1998 as a client and partner in various joint business projects in shipping.'

22(16)  In about September 2004 the Bank of Nevis gave Mr Mikhaylyuk a credit card with a credit limit of US$25,000. Thereafter Mr Mikhaylyuk used the card for purchases and cash advances. The sums due as a result of Mr Mikhaylyuk's use of the credit card were paid from Pulley Shipping's bank account with the Bank of Nevis. 22.2 An e-mail to Mr Mikhaylyuk dated 24 February 2006 from Shelda Huggins of Hamilton Trust, bears the subject heading 'Pulley Shipping Ltd' and states as follows:

> 'Dear Vladimir,
> A review of your credit card statements show that you frequently make cash advance transactions, with most of them having a USD equivalent of less than USD500.00 (ie, about GBP300.00). May we bring to your attention that the cash advance commission is charged at a minimum of USD10.00 (for USD500 or less) per transaction or 2.00% of the amount. In an effort to reduce these commission charges, may we suggest that you make larger and less frequent cash advance transactions.'

(NOUK The Claimants does not have a copy of this email but has retrieved the above text has been retrieved as a data fragment from one of the laptop computers owned by NOUK and used by Mr Mikhaylyuk during his employment.)

22(17) 22.3 Data fragments retrieved from one of the laptop computers owned by NOUK and used by Mr Mikhaylyuk during his employment contain references to Hamilton Trust,

the Bank of Nevis, The Veer Trust, and Pulley Shipping and to Mr Ian Pinninger (the founder of Hamilton Trust and owner, controller or manager of Fiduciary Management). In particular:

22(17).1 ~~22.3.1~~ fragments which appear to date from 18 and 24 March and 12 and 21 April 2005 refer to Hamilton Trust, Mr Pinninger, Pulley Shipping and The Veer Trust;

22(17).2 ~~22.3.2~~ fragments which appear to date from 4 May 2005 appear to refer to new wiring details for Bank of Nevis;

22(17).3 ~~22.3.3~~ fragments which appear to date from 7 and 23 June 2005 refer to Mr Chris Morton, of Hamilton Trust, and to a credit card limit;

22(17).4 ~~22.3.4~~ fragments which appear to date from 24 June 2005 refer to the Bank of Nevis.

~~22.4 Fiduciary Management maintains a client account for each of Mirador Shipping and Pulley Shipping at HSBC Bank International, HSBC House, Esplanade, St Helier, Jersey, JE1 1HS, Channel Islands.~~

22(19) On 21 August 2006, Mr Morton wrote, on behalf of Pulley Shipping, to the Bank of Nevis:

'Please note that Mr Mikhaylyuk will be travelling to Switzerland, Italy and France during approximately next 7 days, leaving this Wednesday, August 23rd until 31st August 2006. Kindly ensure that the card parameters are open to facilitate transactions while on this trip.'

22(20) On 6 September 2006, Pulley Shipping, acting by Mr Morton, sent the Bank of Nevis a Source of Funds Declaration, a Certificate of Incumbency, a Banker's Reference, scanned certified copies of Mr Mikhaylyuk's passport and driving licence (the originals

were sent later under cover of a letter dated 13 September 2006) and a copy of a renewal receipt confirming that Pulley Shipping was in good standing. The Source of Funds Declaration stated that the beneficial holder of Pulley Shipping was The Veer Trust of which the settlor was Mr Mikhaylyuk and the beneficiaries were Mr Mikhaylyuk's wife, Svetlana Mikhaylyuk, Mr Mikhaylyuk's daughter, Ekaterina Mikhaylyuk, and Mr Mikhaylyuk's son, Peter Mikhaylyuk.

22(21)  Minutes of a Meeting of the Board of Pulley Shipping on 1 July 2004 record that the board resolved that banking facilities for Pulley Shipping be arranged with Investec Bank. On about 12 October 2005, Pulley Shipping opened two United States dollar accounts with Investec Bank. These accounts were numbered 01570701 and 01570702. Pulley Shipping opened a sterling account with Investec Bank on or about 24 May 2006 (account no 1570703). Account 1570701 was opened with a credit balance transferred from Pulley Shipping's Bank of Nevis account of US$1,500,000. Investec Bank's records show that the authorised signatories on Pulley Shipping's accounts are Hamilton Trust, Mr Pinniger and Mr Morton and that the 'Principal Owner' is Mr Mikhalyuk. Further, Investec Bank's records in connection with Pulley Shipping's accounts contain:

22(21).1    a certified copy of Mr Mikhaylyuk's passport;

22(21).2    a certified copy of Mr Mikhalyuk's Council Tax Bill in relation to his private residence;

22(21).3    a copy of the Barclays Bank Plc reference of 27 April 2004 referred to in paragraph 22(12).1 above, certified by Fiduciary Management Limited;

22(21).4    a certified copy of the 17 May 2004 reference from Mr Dyrtchenko referred to in paragraph 22(14) above;

22(21).5    a letter dated 1 July 2004 from Mr Morton for Hamilton Trust describing Mr Mikhaylyuk as the 'beneficial owner' of Pulley Shipping.

The copies of the documents referred to in paragraphs 22(21).1 to 22(21).4 above were sent to Investec Bank under cover of a further letter from Mr Morton for Hamilton Trust dated 1 July 2004 in which Mr Mikhaylyuk was described as 'the underlying client'.

22(22)    On 5 July 2006, Investec Bank sent an e-mail to Mr Morton at Hamilton Trust asking the reason for the payment of GB£200,000 from Pulley Shipping's account to Vigor Transport Limited (a further Nevis company incorporated on Mr Mikhaylyuk's instructions on 24 May 2006). Mr Morton replied by e-mail dated 5 July 2006:

'This payment represents an inter-company loan. Both companies are owned by the Veer Trust; settlor—Mr Vladimir Mikhaylyuk.'

22(23)    On a date or dates which the Claimants are at present unable to particularise, Pulley Shipping opened a United States dollar account and a sterling account with Standard Bank Jersey Limited, of Standard Bank House, 47-49 La Motte Street, St Helier, Jersey JE4 8XR ('Standard Bank Jersey'). Standard Bank Jersey's records show that:

22(23).1    the authorised signatories on these accounts are Mr Pinniger, Mr Morton, Miss Andrea Hobson, Miss Shelda Huggins and Miss Xyhamara Hendrickson, all of Hamilton Trust;

22(23).2    that Mr Mikhaylyuk is the 'settlor' of Pulley Shipping and/or The Veer Trust.

22(24)    The Claimants will also refer to the provision of the details of the bank accounts of Mirador Shipping and Pulley Shipping by Mr Mikhaylyuk and the payments made to and from those accounts which are referred to above (paragraphs 10.2 and 19).

22(25) By reason of the facts and matters set out above:

    22(25).1 it is to be inferred that Pulley Shipping was at all material times owned and controlled by Mr Mikhaylyuk;

    22(25).2 it is to be inferred that Mirador Shipping was owned and controlled by Mr Mikhaylyuk or was used by him to receive monies dishonestly diverted from NOUK by Mr Mikhaylyuk and to pass such monies to Pulley Shipping or elsewhere for Mr Mikhaylyuk's benefit.

23    By reason of the matters aforesaid, Mr Mikhaylyuk has acted in breach of his fiduciary and contractual duties as set out in paragraphs 3 and 4 above.

24    In the premises:

    24.1 Mr Mikhaylyuk is liable to give an account to NOUK of all sums received by him or Pulley Shipping or others whom NOUK is unable to identify pursuant to the agreement or arrangements referred to above;

    24.2 Mr Mikhaylyuk is liable to pay to NOUK the sums due on the taking of such account; and/or

    24.3 Mr Mikhaylyuk is a constructive trustee for NOUK of the bribes and/or secret payments and/or secret profit for NOUK and NOUK is entitled to a declaration to this effect and payment of these sums; and/or

    24.4 NOUK is entitled to recover the bribes and/or secret payments and/or secret profit on the grounds of unjust enrichment or as monies had and received.

25    Further or alternatively, NOUK is entitled to damages and/or equitable compensation for breach of contract and/or breach of fiduciary duty. NOUK is not aware of the full

extent of the payments, which is a matter within the knowledge of Mr Mikhaylyuk, and particulars of loss will be provided after disclosure.

**The *Marshal Chuykov*, the *Moscow Kremlin*, the *Moscow Stars* and the Sea Pioneer Shipping payments**

25(1)   The Second Defendant, Mr Wilmer Ruperti ('Mr Ruperti'), is a Venezuelan businessman. Among the companies owned and/or controlled by Mr Ruperti are:

25(1).1  the Third Defendant, Sea Pioneer Shipping Corporation of Panama ('Sea Pioneer');

25(1).2  Interpetrol & Trafigura de Venezuela ('Trafigura'), which has offices at Av Fco de Miranda, Parque Cristal, Torre Geste, Ofi 3-1, Los Palos Grandes, Caracas, 1060, Venezuela;

25(1).3  Nautica Ship Brokers ('Nautica');

25(1).4  the Fourth Defendant PMI Trading Inc, of Panama.

So far as ~~NOUK is~~ the Claimants are aware, Trafigura and Nautica are used by Mr Ruperti as shipbrokers.

25(2)   Petroleos de Venezuela SA is the Venezuelan national oil company. It and its associated companies, such as PDVSA Marketing International, are referred to below as 'PDVSA'.

25(3)   As pleaded in paragraph 1(1) above:

25(3).1   Cally Shipholdings was, at the material times, the owner of the *Marshal Chuykov*;

25(3).2   Vital Shipping is and was, at the material times, the owner of the *Moscow Kremlin*;

25(3).3   Dainford Navigation is and was, at the material times, the owner of the *Moscow Stars*;

and NOUK acted, at all material times, as agent and manager for these Claimants.

25(4)  Mr Mikhaylyuk participated in arrangements with Mr Ruperti, PMI Trading Inc and Sea Pioneer Shipping pursuant to which:

25(4).1   instead of being chartered directly to PDVSA, the *Marshal Chuykov*, the *Moscow Kremlin* and the *Moscow Stars* were secretly chartered to PMI Trading Inc and then sub-chartered by or through Sea Pioneer Shipping to PDVSA at very much higher rates;

25(4).2   false documents were produced in order to conceal these arrangements from NOUK, Cally Shipping, Vital Shipping and Dainford Navigation and designed to give the impression that the charters of the *Marshal Chuykov*, the *Moscow Kremlin* and the *Moscow Stars* were directly with PDVSA;

25(4).3   substantial profits were made on the sub-charters by Mr Ruperti and/or his companies; and

25(4).3   substantial payments were made by Sea Pioneer Shipping to Pulley Shipping for the benefit of Mr Mikhaylyuk and as bribes or secret commissions in respect of such arrangements.

Mr Mikhaylyuk acted dishonestly and in breach of his duties pleaded above and conspired with Mr Ruperti, Sea Pioneer Shipping, and PMI Trading Inc to injure NOUK, Cally Shipping, Vital Shipping and Dainford Navigation in participating in such arrangements and in receiving some US$1,491,000 (by way of payments into Pulley Shipping's account at the Bank of Nevis, as pleaded above). The most complete details which the Claimants can at present give of these matters are set out below.

25(5)    **The *Marshal Chuykov***

25(5).1   By an e-mail dated 2 October 2002, Mr Francisco Morillo, of Trafigura, informed Mr Mikhaylyuk that PDVSA was interested in a time charter of a Panamax tanker. The e-mail was copied to Mr Ruperti. In an e-mail dated 7 October 2002 to Mr Ruperti, Mr Mikhaylyuk offered the *Marshal Chuykov* for 6 months at a rate of US$13,500 for the first three months and US$13,950 for the second three months. The offer named the account as 'PDVSA Petroleo y Gas SA'.

25(5).2   By e-mail dated 22 October 2002 to Mr Mikhaylyuk, headed 'Re: Marshal Chuykov/PDVSA', Mr Ruperti informed Mr Mikhaylyuk that the management's 'subjects' had been lifted.

25(5).3   On 31 October 2002 Mr Mikhaylyuk sent Mr Ruperti an e-mail with the heading:

'MT MARSHALL CHUYKOV / PMI TRADING INC // TCP DATED OCTOBER 25TH, 2002'

The body of the e-mail contained the following:

'FINAL RECAP

'BEING ALL SUBJECTS LIFTED, WE ARE PLEASED TO RECAP HEREWITH TERMS AND CONDITIONS OF FIXTURE BETWEEN MESSRS PMI TRADING INC AS CHARTERERS AND MESSRS NOVOSHIP AS AGENTS TO OWNERS "CALLY SHIPHOLDINGS INC" . . . .'

No copy of this e-mail has been located among NOUK's records.

25(5).4    Among NOUK's records is an e-mail dated 1 November 2002 from Mr Francisco Morillo of Trafigura to Mr Mikhaylyuk. In contrast to the 31 October 2002 e-mail referred to above, this 1 November 2002 e-mail is headed as follows:

'M Chuykov/PDVSA Marketing Int t/c/p 25.10.2002—Final Recap'.

and, the body of the e-mail has the following:

'BEING ALL SUBJECTS LIFTED, WE ARE PLEASED TO RECAP HEREWITH TERMS AND CONDITIONS OF FIXTURE BETWEEN MESSRS PDVSA MARKETING INTERNATIONAL (PMI) AS CHARTERERS AND MESSRS NOVOSHIP AS AGENTS TO OWNERS "CALLY SHIPHOLDINGS INC" . . . .'

As appears below, this e-mail, which (unlike the 31 October 2002 e-mail) was retained on NOUK's files, was false in that the *Marshal Chuykov* was not chartered by Cally Shipping to PDVSA, but to PMI Trading Inc.

25(5).5    The hire rate in each of the 31 October 2002 e-mail and the 1 November 2002 e-mail was US$12,152 per day pro rata. The Claimants are not at present aware of the hire rate charged on the sub-charter to PDVSA.

25(5).6    On 28 January 2003, Mr Mikhaylyuk concluded a further charterparty for three months. According to Mr Mikhaylyuk's January 2003 report (attached to his e-mail of 10 February 2003 to Mr Vladimir Sakovich and Mr Vladimir

Oskirko), the hire rate was US$12,750 per day, the charterer was 'PDVSA' and the broker was Nautica. The Claimants are not at present aware of the hire rate charged on the sub-charter to PDVSA.

25(5).7   According to Mr Mikhaylyuk's March 2003 report (attached to his e-mail of 23 April 2003 to Mr Sakovich and Mr Oskirko), a further 12 months was agreed on 1 April 2003 at a hire rate of US$17,300 pdpr. Again the charterer was 'PDVSA' and the broker was Nautica. The Claimants are not at present aware of the hire rate charged on the sub-charter to PDVSA.

25(5).8   To an e-mail dated 29 April 2004 to NOUK's Operations Department, Mr Mikhaylyuk attached an e-mail of the previous day from Mr Ruperti, at Trafigura, to Mr Mikhaylyuk. Mr Ruperti's e-mail concerned an extension of a time charter in relation to the *Sorokaletie Pobedy* (a vessel also managed by NOUK). That extension extended the charter to 'PDVSA' for three years from 1 May 2004. Mr Mikhaylyuk wrote, when forwarding Mr Ruperti's e-mail to the Operations Department:

> 'please use this as well as on MACH [that is to say the *Marshal Chuykov*] with agreed amendments as per Addendum.'

The Claimants have been unable to find further documentation relating to this extension, but Cally Shipping has been receiving US$16,000 per day in hire.

25(5).9   PDVSA in fact paid hire at the rate of US$28,750 pdpr under a 1 year charterparty between PDVSA and disponent owners Sea Pioneer Shipping. That charterparty came to an end in May 2007. The difference in the rates came to about US$4,653,750 over the 1 year term. The Claimants are not aware of what payments PDVSA made for the hire of the *Marshal Chuykov* prior to May 2006.

25(6)    **The *Moscow Kremlin***

25(6).1  An e-mail dated 6 February 2003 from Mr Mikhaylyuk to Mr Ruperti, at
Trafigura, copied to Mr Morillo and headed:

'Moscow Kremlin/PDVSA---Owner's Offer'

offered a time charter of the *Moscow Kremlin* (owned by Vital Shipping) to
PDVSA for a period of 6 months or one year (at the charterer's option) at
rates of US$34,500 pdpr for the first 6 months, US$35,500 pdpr for the
second six months or US$32,500 if for a straight 12 months.

25(6).2  On 10 February 2003, Mr Mikhaylyuk sent to Mr Ruperti and Mr Morillo and
e-mail headed 'MOKR / PDVSA---t/c' in which he wrote:

'hope can congratulate you ~~will~~with all subs in order (please see
attached Voyage Orders for 'Moscow Kremlin' /PDVSA t/c).'

25(6).3  At 1317 on 24 February 2003, Mr Morillo sent Mr Mikhaylyuk an e-mail
with a recap in relation to the *Moscow Kremlin*. This e-mail was copied to Mr
Ruperti at Interpetrol. The e-mail was headed:

'Moscow Kremlin/PDVSA---Recap'

and the recap described the 'account' as 'PDVSA'. The periods of charter
offered were 6 months or 1 year (at the charterer's option), with a hire rate of
US$28,300 pdpr. Mr Mikhaylyuk replied at 1507 with a recap offering a
period of 6 months at the rate of US$28,300 pdpr.

25(6).4  At 1511 Mr Morillo returned a recap in essentially the same terms as Mr
Mikhaylyuk had sent him at 1507 (with the charterer defined as PDVSA). At

1530 Mr Mikhaylyuk sent a 'Corrected Recap', again in the same terms (so far as material) and at 1531 Mr Morillo returned a 'Corrected Recap', again in essentially the same terms.

25(6).5   At 1543 on 24 February 2003 Mr Morillo wrote an e-mail to Mr Mikhaylyuk:

'Vladimir; Following our conversation please note that the account must be under the name of PMI Trading Inc, in order to guarantee the payments in the due course.'

Mr Mikhaylyuk wrote that he would take care of it. No copy of this e-mail has been found among NOUK's records.

25(6).6   At 1559 on 24 February 2003, Mr Mikhaylyuk sent an e-mail to Mr Ruperti (copied to Mr Morillo) asking what was the date of the charterparty with PDVSA since (Mr Mikhaylyuk wrote) his records did not have one.

25(6).7   At 1742 on 24 February 2003 Mr Mikhaylyuk sent an e-mail to Mr Ruperti, copied to Mr Morillo, in essentially the same terms as those referred to above, save that the e-mail was captioned:

'"Moscow Kremlin" PMI/PDVSA'

rather than

'"Moscow Kremlin"/PDVSA'

and the Account was 'PMI Trading Inc' rather than 'PDVSA'. No copy of this e-mail has been found among NOUK's records.

25(6).8  Mr Mikhaylyuk's report for March 2003 (sent to Messrs Sakovich and Oskirko on 23 April 2003) showed the *Moscow Kremlin* chartered to PDVSA for 6 months at the rate of US$28,300 pdpr.

25(6).9  In an e-mail dated 1 September 2003 Mr Mikhaylyuk notified NOUK's Operations Department that the charter of the *Moscow Kremlin* had been extended for another 2 years from 7 September 2003 at a rate of US$18,500 pdpr, otherwise as the existing charterparty. Mr Mikhaylyuk confirmed this to Mr Oskirko in an e-mail dated 19 December 2003 in which he referred to the 'extension on "Moscow Kremlin" to PDVSA for 2 years at 18,500 pdpr with 1.00% address commission'. The Claimants are not aware, at present, of the hire in fact paid by PDVSA.

25(6).10  In an e-mail to Mr Mikhaylyuk dated 23 May 2005 Mr Ruperti referred to an extension of the charter of the *Moscow Kremlin* for 3 years at a rate of US$28,400 pdpr.

25(6).11  Vital Shipping has been receiving hire at the rate of US$28,400 pdpr.

25(6).12  PDVSA in fact paid hire to Sea Pioneer at the rate of US$34,000 pdpr for the *Moscow Kremlin* under a one year charterparty between PDVSA and Sea Pioneer Shipping which came to an end in April 2007. The difference in the rates came to about US$2,044,000 over the 1 year term. The Claimants are not aware of what other rates were paid by PDVSA in respect of the *Moscow Kremlin* at what other times.

25(7)    **The *Moscow Stars***

25(7).1  On 6 May 2003 Mr Mikhaylyuk sent Mr Ruperti, at Trafigura (with a copy to Mr Morillo), a recap of a time charter for the *Moscow Stars* between its

owner, Dainford Navigation, and 'PDVSA Marketing International (PMI)',
Mr Mikhaylyuk's e-mail was headed:

'Moscow Stars/PDVSA—c/p 25.04.2003'

and the body of the e-mail had the following:

'BEING ALL SUBJECTS LIFTED, WE ARE PLEASED TO
RECAP HEREWITH TERMS AND CONDITIONS OF FIXTURE
BETWEEN MESSRS PDVSA MARKETING INTERNATIONAL
(PMI) AS CHARTERERS AND MESSRS NOVOSHIP AS
AGENTS TO OWNERS "DAINFORD NAVIGATION INC" . . . .'

the recap provided for a period of 24 months and a hire rate of US$20,000
pdpr.

25(7).2  A second e-mail from Mr Mikhaylyuk to Mr Ruperti of 6 May 2003 was
headed:

'Moscow Stars / PMI Trading Inc—c/p 25.04.2003—Recap'

and had the following:

'BEING ALL SUBJECTS LIFTED, WE ARE PLEASED TO
RECAP HEREWITH TERMS AND CONDITIONS OF FIXTURE
BETWEEN MESSRS PMI TRADING INC (PMI) AS
CHARTERERS AND MESSRS NOVOSHIP AS AGENTS TO
OWNERS "DAINFORD NAVIGATION INC" . . . .'

With these exceptions, this second e-mail was in materially identical terms to
the referred to in paragraph 25(7).1 above. The e-mail referred to in this sub-
paragraph 25(7).2 has not been located among NOUK's documents.

25(7).3   The Claimants are not, at present, aware of the rate or rates of hire actually paid by PDVSA.

25(7).4   Mr Ruperti's 23 May 2005 e-mail to Mr Mikhaylyuk (see paragraph 25(6).10 above) provided for the extension of the charter of the *Moscow Stars* for 3 years at a hire rate of US$28,400 per day.

25(7).5   Dainford Navigation has been receiving hire at the rate of US$28,400 pdpr.

25(7).6   PDVSA has been paying hire at the rate of US$32,850 to Sea Pioneer Shipping under a 1 year charterparty which expires in July 2007. The difference between the rates is approximately US$1,624,250 over the 1 year term. NOUK is not aware of earlier rates which PDVSA has paid hire in respect of the *Moscow Stars*.

**25(8) *The payments from Sea Pioneer Shipping to Pulley Shipping***

Sea Pioneer Shipping made payments to Pulley Shipping's bank account at the Bank of Nevis (as identified in paragraph 19 above) as follows:

25(8).1   US$491,000 on 4 May 20045;

25(8).2   US$500,000 on 12 August 20045;

25(8).3   US$500,000 on 4 November 20045;

a total of US$1,491,000. For the reasons which have been pleaded above, it is to be inferred that such payments to the bank account of Pulley Shipping were for the benefit of Mr Mikhaylyuk and were made on the instructions of Mr Ruperti.

25(9) In fact, contrary to the documents retained on NOUK's files, there were no charters between Cally Shipholdings and PDVSA, between Vital Shipping and PDVSA or between Dainford Navigation and PDVSA. PDVSA chartered the *Marshal* ~~Chuyko~~*Chuykov* from Sea Pioneer Shipping at a rate, from 1 May 2004, of US$28,750 per day pro rata. PDVSA chartered the *Moscow Kremlin* from Sea Pioneer Shipping at a rate, from April 2006, of US$34,000 per day pro rata, and PDVSA chartered the *Moscow Stars* from Sea Pioneer Shipping at a rate, from July 2006, of US$32,850 per day. At present, the Claimants are unable to give details of other charters in respect of these vessels between PDVSA and Sea Pioneer Shipping or other companies owned or controlled by Mr Ruperti.

25(10) It is to be inferred from the foregoing:

25(10).1    that Mr Mikhaylyuk and Mr Ruperti arranged for the vessels to be secretly chartered to Mr Ruperti's company, PMI Trading Inc, at rates of hire which were substantially below market rates or, at least, substantially below the rates which Mr Mikhaylyuk and Mr Ruperti knew that PDVSA would pay and that Sea Pioneer Shipping, and PMI Trading Inc participated in such arrangements;

25(10).2    that Mr Ruperti's companies sub-chartered the vessels to PDVSA at the higher rates thus making a substantial profit;

25(10).3    that in order to conceal those arrangements from others at NOUK and from Cally Shipholdings, Vital Shipping and Dainford Navigation, Mr Mikhaylyuk and Mr Ruperti produced documentation referring to charters between Cally Shipholdings and PDVSA, Vital Shipping and PDVSA and Dainford Navigation and PDVSA (as referred to above);

25(10).4    the payments to Mr Mikhaylyuk set out in paragraph 25(8) above were made as bribes and/or secret commissions or payments to Mr Mikhaylyuk

and Mr Mikhaylyuk dishonestly and in breach of his contract of employment solicited and received or diverted such payments for the benefit of himself and/or others whom the Claimants are at present unable to identify and concealed such payments from the Claimants.

25(11)   By reason of the matters aforesaid, Mr Mikhaylyuk has acted in breach of his fiduciary and contractual duties as set out in paragraphs 3 and 4 above. Mr Ruperti and, through him, Sea Pioneer, and PMI Trading were, at all material times, aware that Mr Mikhaylyuk was acting in breach of his fiduciary duties and dishonestly assisted in such breaches.

25(12)   Further, from about October 2002, Mr Mikhaylyuk unlawfully conspired with Pulley Shipping, Mr Ruperti, ~~Trafigura, Nautica,~~ PMI Trading Inc and Sea Pioneer Shipping (and others whom the Claimants are unable to identify) to injure and defraud NOUK, Cally Shipholdings, Vital Shipping and Dainford Navigation by unlawful means, namely the aforesaid breaches of fiduciary and contractual duties which Pulley Shipping, Mr Ruperti, ~~Trafigura, Nautica,~~ PMI Trading Inc and Sea Pioneer Shipping ~~knowingly~~dishonestly assisted, as set out above. In pursuance of the said conspiracy, Mr Mikhalyuk, Pulley Shipping, Mr Ruperti, ~~Trafigura, Nautica,~~ PMI Trading Inc and Sea Pioneer Shipping did the overt acts pleaded above.

25(13)   In the premises:

25(13).1   Mr Mikhaylyuk is obliged to give an account to the Claimants of all sums received by him or Pulley Shipping or others whom the Claimants are unable to identify pursuant to the arrangements referred to above;

25(13).2   Mr Mikhaylyuk is liable to pay to the Claimants the sum of US$1,491,000 and all further sums received by him or found due on the taking of such account; and/or

25(13).3    Mr Mikhaylyuk is a constructive trustee for the Claimants of the bribes and/or secret payments or commissions and the Claimants are entitled to a declaration to this effect and payment of these sums;

25(13).4    the Claimants are entitled to recover the bribes and/or secret payments or commissions on the grounds of unjust enrichment or as monies had and received.

25(14)    Further:

25(14).1    Mr Ruperti and Sea Pioneer are obliged to give an account to the Claimants of all sums paid to Mr Mikhaylyuk or to Pulley Shipping or others whom the Claimants are unable to identify pursuant to the arrangements referred to above;

25(14).2    Mr Ruperti and Sea Pioneer Shipping are liable to pay to the Claimants the sum of US$1,491,000 paid to Mr Mikhaylyuk through Pulley Shipping as bribes and all further sums received by Mr Mikhaylyuk or found due on the taking of such account; and/or

25(15)    Further or alternatively, Mr Mikhaylyuk, Mr Ruperti, Sea Pioneer Shipping, and PMI Trading Inc are liable to account to the Claimants for all profits made in connection with the charters of the *Marshal Chuykov*, the *Moscow Kremlin* and the *Moscow Stars* and to pay to the Claimants all sums found due on the taking of such accounts.

25(16)    Further or alternatively, the Claimants are entitled to damages and/or equitable compensation for breach of contract and/or breach of fiduciary duty on the part of Mr Mikhaylyuk and for ~~breach of contract and/or breach~~ dishonest assistance in Mr Mikhaylyuk's breaches of fiduciary duty on the part of Mr Ruperti, Sea Pioneer

Shipping, and PMI Trading Inc and/or are entitled to damages for conspiracy. The Claimants are not aware of the full extent of the payments made to or for the benefit of Mr Mikhaylyuk or of the full extent of the loss and damage suffered which are matters within the knowledge of Mr Mikhaylyuk. Full particulars of loss will be provided after disclosure. As appears above the loss and damage suffered is not less than US$8,322,000 (see paragraphs 25(5).9, 25(6).12 and 25(7).6).

**Galbraith's: the Amon International Commissions**

26    Galbraith's Limited ('Galbraith's') is a company registered in England with the company number 00924579. It has its registered office at Bridgegate House, 124-126 Borough High Street, London, SE1 1BL. Galbraith's carries on business as a shipbroker.

27    From 2002 to 2005, Galbraith's acted on behalf of NSC and its subsidiaries in connection with the sale of 37 vessels. NOUK also acted on behalf of NSC and its subsidiaries in connection with such sales.

28    In the case of each sale, the commission payable to Galbraith's was agreed with the sellers. Galbraith's passed the greater part of such commissions to a company called Amon International Inc ('Amon International'). Amon International is a company registered in the British Virgin Islands with company number IBC 495275 and has its registered office at Morgan & Morgan Trust Corporation Limited, Pasea Estate, P O Box 958, Road Town, Tortola, British Virgin Islands.

29    Amon International was owned and/or controlled by a Mr Yuri Nikitin.

30    Neither NSC nor NOUK knew of the payments to Amon International. So far as NOUK and NSC are aware, there was no commercial justification for the payments to Amon International. Further:

30.1 None of the agreements between the sellers and Galbraith's relating to commission payments made any mention of Amon International.

30.2 Neither Amon International nor Mr Nikitin is a shipbroker.

31    By an e-mail dated 9 December 2002, Mr Mikhaylyuk forwarded the bank account details for Amon International to his home e-mail address. In the premises, NOUK invites the inference that Mr Mikhaylyuk was familiar with and/or involved in the arrangements or agreements resulting in the payment of commissions to Amon International and/or to Mr Nikitin.

32    By reason of the aforesaid matters and as pleaded in paragraph 3.6 above, NOUK is entitled to an account from Mr Mikhaylyuk of:

32.1 all his dealings in connection with the matters referred to in paragraphs 27 to 31 above and in connection with any further dealings or transactions involving Mr Nikitin or companies owned or controlled or used by him;

32.2 all dealings and transactions undertaken by him as employee and/or director of NOUK on behalf of, or purportedly on behalf of NOUK, including an account of all monies received by him or by any other person on his behalf.

**Compromise Agreement**

33    Following Mr Mikhaylyuk's dismissal by NOUK on 24 March 2006 (referred to above), he and NOUK entered into a compromise agreement on 27 June 2006 ('the Compromise Agreement'). Under the terms of the Compromise Agreement Mr Mikhaylyuk received a severance payment of £140,000 (the 'Severance Payment'), in full and final settlement of all claims that he might have against NOUK and any associated company, and costs of £11,750 (the 'Severance Costs').

34    Clause 12.2 of the Compromise Agreement provided as follows:

> '12.2    [Mr Mikhaylyuk] warrants and represents that he is not aware of anything which he has at any time done or failed to do which amounts to a repudiatory breach of any express or implied term of the Employment which would (or would have) entitled [NOUK] to terminate the Employment without notice or payment in lieu of notice.'

NOUK will refer to the Compromise Agreement at trial for its full terms and effect.

35    Mr Mikhaylyuk's representation set out in clause 12.2 of the Compromise Agreement was false and made fraudulently in that:

35.1    the conduct complained of in paragraphs 5 to 25(14) above amounted to a repudiatory breach or repudiatory breaches of the express and/or implied terms of his contract of employment pleaded in paragraph 4 above which would have entitled NOUK to terminate his employment without notice or payment in lieu of notice;

35.2    Mr Mikhaylyuk knew when he entered into the Compromise Agreement that the representation was false or was reckless in that regard, not caring whether the representation was true or false; Mr Mikhaylyuk was aware of the conduct set out in paragraphs 5 to 25(14) above and was aware that such conduct justified his immediate dismissal without notice or payment in lieu of notice.

36    Induced by and acting in reliance on the aforesaid representations NOUK entered into the Compromise Agreement and paid Mr Mikhaylyuk the Severance Payment and the Severance Costs.

37    In the premises, NOUK was entitled to rescind and has rescinded the Compromise Agreement. NOUK claims a declaration to that effect. NOUK is further entitled to the

1.05.4084.00.548078.v2                         45

return of all payments paid under the Compromise Agreement, including the Severance Payment and the Severance Costs.

38    Further or alternatively, by reason of the matters aforesaid, NOUK has suffered loss and damage amounting to the sum of the Severance Payment and the Severance Costs.

39    If, contrary to its primary case, NOUK is not entitled to rescind the agreement, NOUK claims damages, amounting to the sum of the Severance Payment and the Severance Costs, for breach of the warranty in clause 12.2 of the Compromise Agreement.

**Documents**

40    As pleaded in paragraph 3.7 above, Mr Mikhaylyuk owed NOUK a duty to return to NOUK, on the termination of his employment and directorship, all records, correspondence, files and other information belonging to NOUK or relating to NOUK's business.

41    Further, clause 7.1 of the Compromise Agreement provided as follows:

> '7.1   The Employee [sc, Mr Mikhaylyuk] represents, confirms and warrants that he has returned to the Company [sc, NOUK] all property, equipment, records, correspondence, documents, files and other information of any description (whether originals, copies or extracts) belonging or licensed or relating to the Company or any of its Associated Companies and that he has not retained any copies.'

42    By reason of the foregoing, NOUK is entitled to delivery up by Mr Mikhaylyuk of all documents and records held by or on behalf of Mr Mikhaylyuk concerning NOUK's business and/or Mr Mikhaylyuk's dealings therewith.

**Interest**

43    ~~NOUK~~ The Claimants further claims interest, whether or not compounded, on all sums found to be due to ~~it~~ them at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

## AND THE FIRST CLAIMANT CLAIMS:

### (A)    Against the First Defendant:

(1)    An account of all sums received by the First Defendant, whether personally or through companies he controlled or in which he was interested, including Mirador Shipping and Pulley Shipping and such other companies as the First Defendant used for such purposes, either on his own behalf or on behalf of others in breach of his contract of employment with the First Claimant and/or in breach of his fiduciary duties owed to the First Claimant.

(2)    A declaration that the First Defendant holds all sums received by him or by Mirador Shipping or by Pulley Shipping or on behalf of any of them as a result of bribes or secret commissions or as a result of the diversion of sums properly payable to the First Claimant and/or its principals upon constructive trust for the First Claimant.

(3)    An account of all dealings and transactions undertaken by the First Defendant as employee and/or director of the First Claimant on behalf of, or purportedly on behalf of the First Claimant, including, without limitation, an account of all monies received by the First Defendant or by any other person on his behalf and an account of all monies paid to Mr Yuri Nikitin or to companies controlled by him or in which he was interested.

(4)    An order for payment by the First Defendant of all sums found to be due to the First Claimant on the taking of such accounts.

(5)  An inquiry into what assets in the hands of the First Defendant or in the hands of any person controlled by the First Defendant or in which the First Defendant is interested represent the said sums received by the First Defendant or on the First Defendant's behalf.

(6)  An account of all sums received by the First Defendant representing income or proceeds of such sums and all such assets or any part thereof.

(7)  Equitable compensation and/or damages for breach of trust and/or breach of fiduciary duty and/or damages for breach of contract and/or damages for conspiracy.

(8)  A declaration that the First Claimant is entitled to rescind (and has rescinded) the Compromise Agreement dated 27 June 2006 between the First Claimant and the First Defendant and an order for repayment and/or restitution of monies paid thereunder and/or damages.

(9)  Damages for deceit and/or breach of contractual warranty.

(10) Delivery up to the First Claimant of all documents and records held by the First Defendant concerning the First Claimant's business and/or the First Defendant's dealings therewith.

(11) Interest, whether or not compounded, on all sums found to be due to the First Claimant at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

(12) All further necessary or proper accounts, inquiries and directions.

And

and

(13) Costs.

**(B)    Against the Second and Third Defendants (Mr Ruperti and Sea Pioneer)**

(1)    An account of all sums paid to Mr Mikhaylyuk or to Pulley Shipping or others whom the Claimants are unable to identify pursuant to the arrangements referred to above; and/or

(2)    Payment of the sum of US$1,491,000 paid to Mr Mikhaylyuk through Pulley Shipping as bribes and of all further sums received by Mr Mikhaylyuk or found due on the taking of such account; and/or

(3)    Damages and/or equitable compensation for dishonestly assisting in Mr Mikhaylyuk's breaches of fiduciary duty and/or for conspiracy to injure;

(4)    Interest, whether or not compounded, on all sums found to be due to the First Claimant at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

(5)    All necessary further accounts, inquries and directions;

(6)    Costs.

**(C)  Against the Fourth Defendant (PMI Trading ):**

(1)    Damages and/or equitable compensation for dishonest assistance in Mr Mikhaylyuk's breaches of fiduciary duty and/or damages for conspiracy to injure.

(2)   An account of all profits made in connection with the charters of the *Marshal Chuykov*, the *Moscow Kremlin* and the *Moscow Stars* and payment of all sums found due on the taking of such account.

(3)   Interest, whether or not compounded, on all sums found to be due to the First Claimant at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

(~~3~~4) Costs.

## AND THE SECOND, THIRD AND FOURTH CLAIMANTS CLAIM:

### (A)   Against the First Defendant (Mr Mikhaylyuk):

(1)   An account of all sums received by the First Defendant, whether personally or through companies he controlled or in which he was interested, including Pulley Shipping and such other companies as the First Defendant used for such purposes, either on his own behalf or on behalf of others in breach of his fiduciary duties owed to the Claimants.

(2)   A declaration that the First Defendant holds all sums received by him or by Pulley Shipping or on behalf of either of them as a result of bribes or secret commissions or as a result of the diversion of sums properly payable to the Claimants upon constructive trust for the Claimants.

(3)   An account of all profits made on the charters of the *Marshal Chuykov*, the *Moscow Kremlin* and the *Moscow Stars.*

(4)   An order for payment by the First Defendant of all sums found to be due to the Claimants on the taking of such accounts.

(45) An inquiry into what assets in the hands of the First Defendant or in the hands of any person controlled by the First Defendant or in which the First Defendant is interested represent the said sums received by the First Defendant or on the First Defendant's behalf.

(56) An account of all sums received by the First Defendant representing income or proceeds of such sums and all such assets or any part thereof.

(67) Equitable compensation and/or damages for breach of trust and/or breach of fiduciary duty and/or damages for conspiracy.

(78) Interest, whether or not compounded, on all sums found to be due to the Claimants at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

(89) All further necessary or proper accounts, inquiries and directions.

and

(910) Costs.

**(B)   Against the Second and Third Defendants (Mr Ruperti and Sea Pioneer)**

(1)   An account of all sums paid to Mr Mikhaylyuk or to Pulley Shipping or to others under paragraph 25(14) and payment of all sums found to be due on the taking of such account.

(2)   An account of all profits made on the charters of the *Marshal Chuykov*, the *Moscow Kremlin* and the *Moscow Stars*.

(3)  Damages and/or equitable compensation for dishonest assistance in Mr Mikhaylyuk's dishonest breaches of fiduciary duty and/or damages for conspiracy to injure.

(4)  Interest, whether or not compounded. on all sums found to be due to the Claimants at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

(5)  Costs.

**(C)  Against the Fourth Defendant (PMI Trading):**

(1)  An account of all profits made on the charters of the *Marshal Chuykov,* the *Moscow Kremlin* and the *Moscow Stars.*

(2)  Damages and/or equitable compensation for dishonest assistance in Mr Mikhaylyuk's dishonest breaches of fiduciary duty and/or damages for conspiracy to injure.

(3)  Interest, whether or not compounded, on all sums found to be due to the Claimants at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

(4)  Costs.

**AND THE FIFTH, SIXTH,  SEVENTH AND EIGHTH CLAIMANTS CLAIM:**

**Against the First Defendant (Mr Mikhaylyuk):**

(1)  An account under paragraph 17(9).2 of all sums deducted as address commission and

payment of all sums found to be due on the taking of such account and/or damages.

(2)   Interest, whether or not compounded, on all sums found to be due at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

(3)   Costs.

**DOMINIC DOWLEY QC**

**CHARLES DOUGHERTY**

**STATEMENT OF TRUTH**

The Claimants believe that the facts stated in the Re-Amended Particulars of Claim are true. I am duly authorised by the Claimant to sign this statement.

Full name: _____ Michelle Jaqueline Linderman_____

Name of Claimant's Solicitor's: Ince & Co

Signed _____ Position _____ Partner_____

**IN THE HIGH COURT OF JUSTICE**            Claim No 2006 Folio 1267
**QUEEN'S BENCH DIVISION**

**COMMERCIAL COURT**

B E T W E E N :

NOVOSHIP (UK) LIMITED

*1st Claimant*

CALLY SHIPHOLDINGS INC

*2nd Claimant*

VITAL SHIPPING CORPORATION

*3rd Claimant*

DAINFORD NAVIGATION INC

*4th Claimant*

TIMASHEVSK SHIPPING INC

*5th Claimant*

TAMAN SHIPPING INC

*6th Claimant*

TVER SHIPPING INC

*7th Claimant*

TROITSK SHIPPING INC

*8th Claimant*

— and —

VLADIMIR MIKHAYLYUK

*1st Defendant*

WILMER RUPERTI
(also known as WILMER RUPERTI PERDOMO and/or WILMER JOSE RUPERTI
PERDOMO)

*2nd Defendant*

SEA PIONEER SHIPPING CORPORATION

*3rd Defendant*

PMI TRADING INC

*4th Defendant*

---

SCHEDULE 1 TO THE
RE-AMENDED PARTICULARS OF CLAIM

---

| Date of Payment Request | Amount of Payment Request |
|---|---|
| 05/01/2004 | $40,000.00 |
| 04/06/2004 | $25,000.00 |
| 09/09/2004 | $25,331.96 |
| 23/09/2004 | $59,019.66 |
| 29/09/2004 | $69,987.25 |
| 07/10/2004 | $83,468.84 |
| 12/11/2004 | $25,000.00 |
| 09/12/2004 | $29,000.00 |
| 06/01/2005 | $67,818.14 |
| 08/02/2005 | $78,395.57 |
| 01/03/2005 | $50,000.00 |
| 02/03/2005 | $87,817.53 |
| 09/03/2005 | $50,000.00 |
| 11/04/2005 | $46,141.35 |
| 09/05/2005 | $47,705.41 |
| 06/06/2005 | $45,453.13 |
| 07/10/2005 | $26,775.32 |
| 07/10/2005 | $67,566.51 |
| 14/11/2005 | $26,000.00 |
| 05/01/2006 | $95,306.80 |
| 19/01/2006 | $38,000.00 |
| 20/01/2006 | $127,395.60 |
| **Total:** | **$1,211,183.07** |

**IN THE HIGH COURT OF JUSTICE QUEEN'S BENCH DIVISION**
**COMMERCIAL COURT**

**B E T W E E N :**

NOVOSHIP (UK) LIMITED

*1st Claimant*

CALLY SHIPHOLDINGS INC

*2nd Claimant*

VITAL SHIPPING CORPORATION

*3rd Claimant*

DAINFORD NAVIGATION INC

*4th Claimant*

TIMASHEVSK SHIPPING INC

*5th Claimant*

TAMAN SHIPPING INC

*6th Claimant*

TVER SHIPPING INC

*7th Claimant*

TROITSK SHIPPING INC

*8th Claimant*

— and —

VLADIMIR MIKHAYLYUK

*1st Defendant*

WILMER RUPERTI
(also known as WILMER RUPERTI PERDOMO and/or WILMER
JOSE RUPERTI PERDOMO)

*2nd Defendant*

SEA PIONEER SHIPPING CORPORATION

*3rd Defendant*

PMI TRADING INC

*4th Defendant*

---

RE-AMENDED PARTICULARS OF CLAIM

---

Ince & Co
International House
1, St Katharine's Way
London
E1W ~~1UN~~1AY
Tel: 020 7481 0010
Fax: 020 7481 4968
Ref: REA/MJL/PGS/8304/8601/8653

**Solicitors for the Claimant**

**N1(CC) CLAIM FORM (CPR PART 7)**     RE-ISSUED ON AMENDMENT

Amended pursuant to the Order of the Honourable Mr Justice David Steel dated 6 November 2007

Re-Amended Claim Form pursuant to the Order of the Honourable Mr Justice Tomlinson dated 13 December 2007





NOT FOR SERVICE OUT
OF THE JURISDICTION

**Claim Form**

14 DEC 2007

**In the High Court of Justice
Queen's Bench Division
Commercial Court
Royal Courts of Justice**

**Claim No. 2006 Folio 1267
Issue Date**

| | | | | |
|---|---|---|---|---|
| Claimant(s) | (1) | NOVOSHIP (UK) LIMITED<br>Watergate House<br>13-15 York Buildings<br>London<br>WC2N 6JU | (3) | Vital Shipping Corporation<br>80 Broad Street<br>Monrovia<br>Liberia |
| | (2) | Cally Shipholdings Inc<br>80 Broad Street<br>Monrovia<br>Liberia | (4) | Dainford Navigation Inc<br>80 Broad Street<br>Monrovia<br>Liberia |
| | (5) | Timashevsk Shipping Inc<br>80 Broad Street<br>Monrovia<br>Liberia | (6) | Taman Shipping Inc<br>80 Broad Street<br>Monrovia<br>Liberia |
| | (7) | Tver Shipping Inc<br>80 Broad Street<br>Monrovia<br>Liberia | (8) | Troitsk Shipping Inc<br>80 Broad Street<br>Monrovia<br>Liberia |
| Defendant(s) | (1) | VLADIMIR MIKHAYLYUK<br>24 Oaklands Road<br>Bromley<br>Kent<br>BR1 3SL | (3) | Sea Pioneer Shipping Corporation<br>Edificio World Trade Center, Piso 5<br>Calle 53 - Marbella<br>Panama City, Panama |
| | (2) | Wilmer Ruperti<br>Edificio World Trade Center, Piso 5 | (4) | PMI Trading Inc<br>Edificio World Trade Center, Piso 5 |

1334742

Calle 53 – Marbella                          Calle 53 – Marbella
Panama City, Panama                          Panama City, Panama

Name and address of ~~Defendant~~ Defendants receiving this amended claim form

(1)     Vladimir Mikhaylyuk                 Amount claimed more than £750,000
        24 Oaklands Road                    Court fee   £2,400
        Bromley                             Solicitor's costs – to be assessed
        Kent                                Total amount – to be assessed
        BR1 3SL

(2)     Wilmer Ruperti
        Edificio World Trade Center, Piso 5
        Calle 53 - Marbella
        Panama City, Panama

(3)     Sea Pioneer Shipping
        Edificio World Trade Center, Piso 5
        Calle 53 - Marbella
        Panama City, Panama

(4)     PMI Trading Inc
        Edificio World Trade Center, Piso 5
        Calle 53 - Marbella
        Panama City, Panama

---

The court office at the Admiralty & Commercial Registry, Royal Courts of Justice, Strand, London WC2A 2LL is open between 10am and 4:30pm Monday to Friday.  When corresponding with the court, please address forms or letters to the Court Manager and quote the claim number.

**Claim No. 2006 Folio 1267**

**Brief details of claim**

The First Claimant claims against the First Defendant:

1    An account of all sums received by the First Defendant, whether personally or through companies he controlled or in which he was interested, including Mirador Shipping Inc and Pulley Shipping Limited and such other companies as the First Defendant used for such purposes, either on his own behalf or on behalf of others in breach of his contract of employment with the First Claimant and/or in breach of his fiduciary duties owed to the First Claimant.

2    A declaration that the First Defendant holds all sums received by him or by Mirador Shipping Inc or by Pulley Shipping Limited or on behalf of any of them as a result of bribes or secret commissions or as a result of the diversion of sums properly payable to the First Claimant upon constructive trust for the First Claimant.

3    An account of all dealings and transactions undertaken by the First Defendant as employee and/or director of the First Claimant on behalf of, or purportedly on behalf of the First Claimant, including, without limitation, an account of all monies received by the First Defendant or by any other person on his behalf and an account of all monies paid to Yuri Nikitin or to companies controlled by him or in which he was interested.

4    An order for payment by the First Defendant of all sums found to be due to the First Claimant on the taking of such accounts.

5    An inquiry into what assets in the hands of the First Defendant or in the hands of any person controlled by the First Defendant or in which the First Defendant is interested represent the said sums received by the First Defendant or on the First Defendant's behalf.

6    An account of all sums received by the First Defendant representing income or proceeds of such sums and all such assets or any part thereof.

7    Equitable compensation and/or damages for breach of trust and/or breach of fiduciary duty and/or damages for breach of contract and/or damages for conspiracy.

8    A declaration that the First Claimant is entitled to rescind (and has rescinded) the compromise agreement dated 27 June 2006 between the First Claimant and the First Defendant and an order for repayment and/or restitution of monies paid thereunder.

9    Damages for deceit and/or breach of contractual warranty.

10    Delivery up to the First Claimant of all documents and records held by the First Defendant concerning the First Claimant's business and/or the First Defendant's dealings therewith.

11    Interest, whether or not compounded, on all sums found to be due to the First Claimant at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

1334742

12     All further necessary or proper accounts, inquiries and directions.

<u>The First Claimant claims against the Second and Third Defendants:</u>

1     An account of all sums paid to the First Defendant or to Pulley Shipping or others whom the Claimants are unable to identify pursuant to arrangements in connection with the charters of the *Marshal Chuykov*, the *Moscow Kremlin* and the *Moscow Stars.*

2     Payment of the sum of US$1,491,000 paid to the First Defendant through Pulley Shipping as bribes and of all further sums received by the First Defendant or found due on the taking of such account.

3     Damages and/or equitable compensation for dishonestly assisting in the First Defendant's breaches of fiduciary duty and/or for conspiracy to injure.

4     Interest, whether or not compounded, on all sums found to be due to the First Claimant at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

5     All necessary or proper further accounts, inquiries and directions.

<u>The First Claimant claims against the Fourth Defendant:</u>

1     Damages and/or equitable compensation for dishonest assistance in the First Defendant's breaches of fiduciary duty and/or damages for conspiracy to injure.

2     An account of all profits made in connection with the charters of the *Marshal Chuykov*, the *Moscow Kremlin* and the *Moscow Stars* and payment of all sums found due on the taking of such account.

3     Interest, whether or not compounded, on all sums found to be due to the First Claimant at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

4     All necessary or proper further accounts, inquiries and directions.

<u>The Second to Fourth Claimants claim against the First Defendant:</u>

1.     An account of all sums received by the ~~Defendant~~First Defendant in connection with the charters of the *Marshal Chuykov*, the *Moscow Kremlin* and the *Moscow Stars*, whether personally or through companies he controlled or in which he was interested, including Pulley Shipping Limited and such other companies as the Defendant used for such purposes, either on his own behalf or on behalf of others in breach of his fiduciary duties owed to the Second to Fourth Claimants.

2.     A declaration that the First Defendant holds all sums received by him or by Pulley Shipping Limited or on behalf of either of them as a result of bribes or secret commissions or as a result of the diversion of sums properly payable to the Second to Fourth Claimants upon constructive trust for the Second to Fourth Claimants.

3.    An order for payment by the First Defendant of all sums found to be due to the Second to Fourth Claimants on the taking of such accounts.

4.    An inquiry into what assets in the hands of the First Defendant or in the hands of any person controlled by the First Defendant or in which the First Defendant is interested represent the said sums received by the First Defendant or on the First Defendant's behalf.

5.    An account of all sums received by the First Defendant representing income or proceeds of such sums and all such assets or any part thereof.

6.    Equitable compensation and/or damages for breach of trust and/or breach of fiduciary duty and/or damages for conspiracy.

7.    Interest, whether or not compounded, on all sums found to be due to the Second to Fourth Claimants at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

8.    All further necessary or proper accounts, inquiries and directions.

The Second to Fourth Claimants claim against the Second and Third Defendants:

1    An account of all sums paid to the First Defendant or to Pulley Shipping or others whom the Claimants are unable to identify pursuant to arrangements in connection with the charters of the *Marshal Chuykov*, the *Moscow Kremlin* and the *Moscow Stars* and payment of all sums found to be due on the taking of such account.

2    An account of all profits made on the charters of the *Marshal Chuykov*, the *Moscow Kremlin* and the *Moscow Stars*.

3    Payment of the sum of US$1,491,000 paid to the First Defendant through Pulley Shipping as bribes and of all further sums received by the First Defendant or found due on the taking of such account.

4    Damages and/or equitable compensation for dishonestly assisting in the First Defendant's dishonest breaches of fiduciary duty and/or for conspiracy to injure.

5    Interest, whether or not compounded, on all sums found to be due to the First Claimant at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

6    All necessary or proper further accounts, inquiries and directions.

The Second to Fourth Claimants claim against the Fourth Defendant:

1    Damages and/or equitable compensation for dishonest assistance in the First Defendant's breaches of fiduciary duty and/or damages for conspiracy to injure.

2    An account of all profits made in connection with the charters of the *Marshal Chuykov*, the *Moscow Kremlin* and the *Moscow Stars* and payment of all sums found due on the taking of such account.

1334742

3    Interest, whether or not compounded, on all sums found to be due to the Second to Fourth Claimants at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

4    All necessary or proper further accounts, inquiries and directions.

The Fifth, Sixth, Seventh and Eighth Claimants claim against the First Defendant:

1    An account of all sums deducted as address commissions in relation to charters of vessels owned by them and payment of all sums found to be due on the taking of such account and/or equitable compensation and/or damages for breach of contract, breach of fiduciary duty and conspiracy to injure and defraud.

2    Interest, whether or not compounded, on all sums found to be due at such rate or rates and for such period or periods as the Court deems appropriate pursuant to the Court's equitable jurisdiction and/or Section 35A of the Supreme Court Act 1981.

3    Costs.

Particulars of claim (*attached)(*will follow if an acknowledgment of service is filed that indicates an intention to defend the claim)

Statement of Truth
*(I believe)(The Claimant believes) that the facts stated in this Re-Amended Claim Form *(and the particulars of the claim attached to this claim form) are true.
*I am duly authorised by the claimant to sign this statement

Full name _____ Michael J. Linderman _____

Name of *(claimant)('s solicitor's firm)

signed _____ M. J. L. Dere _____ .        position or office held _____ Partner _____

*(Claimant) ('s solicitor)                    *(if signing on behalf of firm, company or corporation)*
*delete as appropriate*
**Ince & Co,**
**International House,**
**1 St Katharine's Way,**
**London, E1W 1UN1AY1AY**
**Tel : 020 7481 0010**
**Fax : 020 7481 4968**
**Ref : REA/PS/8304/8653**
**DX : 1070 London City**

Claimant's or claimant's solicitor's address to which documents or payments should be sent if different from overleaf including (if appropriate) details of DX, fax or e-mail.

1334742