486-07/PJG/EEL

FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiffs
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Gina Venezia (GV 1551)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOVOSHIP (UK) LIMITED, CALLY SHIPHOLDINGS
INC., VITAL SHIPPING CORPORATION, and
DAINFORD NAVIGATION INC.,

**07-CV- 9876 (DLC)**

Plaintiffs,

- against -

WILMER RUPERTI, SEA PIONEER SHIPPING
CORPORATION, and PMI TRADING INC., JOHN DOE
(fictitious) and JOHN DOE INC. (fictitious),

Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR
<u>RECONSIDERATION AND IN SUPPORT OF CROSS-MOTION</u>**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................1

SUMMARY OF OPPOSITION TO APPLICATION FOR RECONSIDERATION ....................1

POINT I

DEFENDANTS' MOTION FOR RECONSIDERATION SHOULD BE
DENIED. THEY RAISE NEW ARGUMENTS WHICH ARE IMPROPER ON
A MOTION FOR RECONSIDERATION, AND THE ARGUMENTS LACK
MERIT IN ANY EVENT.....................................................................................................6

      A.    Defendants' Application Runs Afoul of the Standards for
Reconsideration ........................................................................................6

      B.    Each of Defendants Arguments is New and Lacks Merit in
Any Event .....................................................................................................7

          1. Defendants' argument regarding choice-of-law ...............................7

          2. Defendants' argument about the allegations of damages .................11

          3. The claims against Mr. Ruperti and Sea Pioneer.............................11

POINT II

DEFENDANTS' REQUEST FOR A REDUCTION IN THE AMOUNT OF
SECURITY TO "ZERO" SHOULD BE DENIED ....................................................................12

POINT III

PLAINTIFFS SHOULD BE GIVEN LEAVE TO AMEND THE COMPLAINT
TO IDENTIFY ADDITIONAL RUPERTI ENTITIES AND AUTHORIZED TO
TAKE DISCOVERY. .........................................................................................................13

CONCLUSION ................................................................................................................15

CERTIFICATE OF SERVICE ..........................................................................................17

## TABLE OF AUTHORITIES

**PAGE**

<u>**CASES**</u>

*Ashley Meadows Farm, Inc. v. American Horse Shows Ass'n, Inc.,*
  624 F. Supp. 856 (S.D.N.Y. 1985) ..................................................................................6

*Caribbean Trading & Fidelity Corp. v. Nigerian Nat'l Petroleum Corp.,*
  948 F.2d 111 (2d Cir. 1991) ...........................................................................................6

*Carolco Pictures, Inc. v. Sirota,*
  700 F. Supp. 169 (S.D.N.Y. 1988) .................................................................................7

*Dominion Bulk Int'l S.A. v. Naviera Panoceanica, S.A.C.,*
  2007 A.M.C. 186 (S.D.N.Y. 2006)..................................................................................9

*Gartner v. Snyder,*
  607 F.2d 582 (2d Cir. 1979) .........................................................................................12

*Giovanniello v. N.Y. Law Publ'g Co.,* 07-cv-1990 (HB),
  2007 U.S. Dist. LEXIS 91142 (S.D.N.Y. Dec. 11, 2007) .............................................8

*Gjoni v. Home Depot, Inc,* 99 Civ. 1849,
  2002 WL 91623 (S.D.N.Y. Jan. 23, 2002) .....................................................................6

*Hayles v. Advanced Travel Mgt. Corp.,* No. 01 Civ. 10017 (BSJ),
  2004 WL 117597 (S.D.N.Y. Jan. 26, 2004) ...................................................................6

*In re Andrew J. Barberi*, No. 03-cv-6049 (ERK/VVP) (E.D.N.Y. April 10, 2008).......................6

*Interocean Ship. Co. v. National Ship. and Trading Co.,*
  523 F.2d 527 (2d Cir. 1975) .........................................................................................12

*Keles v. Yale Univ.,*
  880 F.Supp. 729 (S.D.N.Y. 1995) ................................................................................10

*Kirno Hill Corp. v. Holt,*
  618 F.2d 982 (2d Cir. 1980) .........................................................................................12

*Maryland Tuna Corp. v. MS Benares,*
  429 F.2d 307 (2d Cir. 1970) .........................................................................................15

*Norfolk Southern Railway Co. v. James N. Kirby Pty Ltd.,*
    543 U.S. 14 (2004) ............................................................................................................9

*People's Ferry Co. v. Beers,*
    61 U.S. 393 (1858) ...........................................................................................................9

*Rolls Royce Ind. Power (India) v. M.V. FRATZIS M,*
    1996 A.M.C. 390 (S.D.N.Y. 1995).................................................................................15

*Schonberger v. Serchuk,*
    742 F. Supp. 108 (S.D.N.Y. 1990) ..................................................................................6

*Shrader v. CSX Transp. Inc.,*
    70 F.3d 255 (2d Cir. 1995) ...............................................................................................6

*Sonito Ship. v. Sun United Maritime,*
    478 F.Supp.2d 532 (S.D.N.Y. 2007) ...............................................................................9

*The Clarkson Co. Ltd. v. Shaheen,*
    660 F.2d 506 (2d Cir. 1981) ...........................................................................................10

*USA Certified Merchants, LLC v. Koebel,*
    273 F.Supp. 2d 501 (S.D.N.Y. 2003) ...............................................................................7

*Williamson v. Recovery Limited Partnership,*
    2007 U.S. Dist. LEXIS 4438 (S.D.N.Y. Jan. 16, 2007) ..................................................9

*Zoll v. Jordache Enterprises, Inc.,* No. 01 Civ. 1339,
    2003 WL 1964054 (S.D.N.Y. April 24, 2003) .................................................................7

## **STATUTES**

Local Civil Rule 6.3................................................................................................................6

## PRELIMINARY STATEMENT

Plaintiffs submit this memorandum in opposition to Defendants' motion for reconsideration of the Court's Order of March 19, 2008, or in the alternative, for a reduction in the amount of security to zero. For the reasons set forth below in Points I and II, the motion should be denied in its entirety.[1]

This memorandum is also submitted in support of Plaintiffs' cross-motion for leave to file an amended complaint to name the entities through which Defendant Ruperti has been transferring funds through the District in contravention of the Court's order of attachment. (*See* Point III below).

## SUMMARY OF OPPOSITION TO APPLICATION FOR RECONSIDERATION

The law is clear that a motion for reconsideration cannot raise new facts, issues or arguments not previously presented to the Court. This rule is designed to avoid a situation where the losing party seeks another bite at the apple, albeit with another argument, which they failed to raise initially with the Court. Motion practice is not a shooting gallery where, if you miss the duck the first time around, you get another try to knock it over. This is exactly what Defendants are trying to accomplish with their current motion.

Defendants raise two main arguments and what might best be characterized as a side-argument in support of their request for reconsideration. First, they argue that Plaintiffs should have presented the Court with a choice-of-law analysis and the failure to do so should somehow now affect the Court's decision. Secondly, they argue that Plaintiffs' complaint does not plead

---

[1] Defendants' motion should also be denied because admiralty tort jurisdiction exists over the claims against Defendants. In its March 19 Order, the Court determined that the issue of whether admiralty tort jurisdiction existed need not be decided because of the presence of admiralty contract jurisdiction. To the extent the Court may reconsider its ruling on the existence of contract jurisdiction, Plaintiffs submit that admiralty tort jurisdiction nevertheless exists and that the order of attachment should remain in effect. On this point, Plaintiffs hereby incorporate by reference the arguments and authority cited in support of their motion for renewal of the Rule B attachment. (ECF Doc. Nos. 15, 16 & 20).

contract damages, and thus maritime contract jurisdiction is lacking. Finally, in two sentences in the argument section of their brief, Defendants suggest that there is no breach of contract/fair dealing/good faith claim against Mr. Ruperti and Sea Pioneer, and thus, the attachment against these two is improper.

All three of these arguments were available to Defendants when they filed their original opposition to Plaintiffs' motion, but their papers contain no discussion of or even hint at any reliance on any of these arguments. The arguments are thus not a supportable basis upon which to seek reconsideration and are groundless in any event. Each is discussed below in Point I.[2]

Before addressing the three arguments outlined above, however, a brief response is warranted on Defendants' discussion of the London pleadings. Although carefully not designated as one of the specific grounds for reconsideration, Defendants' submission is replete with the suggestion that Plaintiffs purposely withheld the London pleadings and that Defendants' alleged recent review of them now reveals a defect which should have similarly impacted the attachment. This entire discussion is designed to leave the Court with the impression that the London pleadings amount to some new evidence and should thus influence the outcome of this motion. This argument by innuendo is flawed because the London pleadings are not new evidence and the underlying argument has no merit either. However, to the extent this discussion pervades Defendants' entire brief, a response is warranted before Plaintiffs address the three main arguments.

Defendants carefully initiate their London pleadings *non-argued* argument by repeating that Plaintiffs never provided them with a copy of the pleadings, implying that they did not have

---

[2] Defendants' request for a reduction in the amount of security to zero is simply a re-casting of their same argument concerning the allegations of damages flowing from the breach of fair dealing/good faith. That aspect of their motion should be rejected for the same reasons as the motion for reconsideration. Defendants cannot accomplish through the back door (*i.e.* a motion for reduction) which they cannot through the front (*i.e.* motion for reconsideration). (*See* Point II, below).

them when they filed their opposition in January. This is the first step in their *non-argued* new evidence argument. But notably, Defendants never come out and say this, or admit when they got them. Instead, by repeating over and over again that Plaintiffs never gave them a copy, Defendants seek to create a backdrop that they are now new, and something nefarious was afoot here.

The truth of the matter is the London pleadings have been available to Defendants as a public record since they were filed on November 7, 2007.[3] There was no effort, let alone the means, by which Plaintiffs could have shielded them from Defendants' review.[4] As such, the notion that Plaintiffs could have hidden, or in fact hid, the pleadings is simply false.[5]

Next, while it is true that Plaintiffs did not provide a copy to Defendants, they never asked. As the Court may recall, during the December 14, 2007, hearing, counsel for Defendants (Mr. Mendia - participating by telephone) indicated that he had already contacted counsel in London, who retrieved the pleadings available at that time. The Court then asked Mr. Mendia if he would be authorized to accept service of the new London pleadings against his clients. In response, he stated:

> It's something I would have to discuss with my clients. I don't think my
> clients intend to evade this dispute in any way, shape or form; and I would
> think that after I consult with them, that's one possible course of action

---

[3] A named party in an English proceeding is, as of right, entitled to obtain a copy of pleadings from the court, so Defendants' London counsel could have obtained a copy at any time. As to the dates these pleadings were available, the amended pleadings (*i.e.* those amendments being the addition of the claims against Defendants) were filed on November 7 and available as of that date. While Plaintiffs filed re-amended pleadings on December 14, those pleadings incorporated amendments which only affected the claims against Vladimir Mikhaylyuk and not Defendants, but they too were otherwise available as of December 14th.

[4] As here, there is a procedure whereby London pleadings can be placed under seal, but that was not employed so it is irrelevant to this discussion.

[5] The London court records reveal that the following firms secured copies of the pleadings: Howes Percival; Cameron McKenna; Lax & Co.; Stephenson Harwood; and Holman Fenwick & Willan.

that they would be willing to take to get the London proceedings underway.

(Hearing Tr. p. 11).

Notwithstanding his proffered willingness to get the London proceedings underway, his clients have since steadfastly refused to accept service. More importantly, and for the purpose of this discussion, in the months that followed, there were numerous telephone and email exchanges between the undersigned and Mr. Mendia regarding the service issue, but never once did he ask for a copy.[6] The suggestion, therefore, that Defendants never had them, wanted a copy, and yet never asked is simply not believable.

It is against this backdrop that Defendants now suggest that the content of the pleadings is a big surprise and, although not articulated as such, should be viewed in the light of new evidence to be considered on re-argument. This argument is illusory, for the reasons outlined above (*i.e.* the pleadings have been available for months and Defendants never state they did not have them). This is why Defendants do not present it as an "argument" for reconsideration, but rather as innuendo in an effort to sway the Court to grant reconsideration where it is not otherwise warranted.

In a similar vein, the second half of Defendants' *non-argued* argument – that the nature of the claims pled in London should impact jurisdiction here – fares no better. Plaintiffs note that the point, again, does not feature as a specific ground for reconsideration, and at bottom, it has no traction. There is no dispute that the subject matter of the London action is identical to

---

[6] Mr. Mendia did, however, respond that he was not authorized to accept service of process in respect to the London proceedings on behalf of Defendants; that he was not aware of an address for Defendant Mr. Ruperti whether in Venezuela, Florida or elsewhere; and that his clients had been in touch with English solicitors but that none had been retained and that as far as he knew none would be retained or authorized to accept service. These actions were designed to forestall the London proceedings and hardly demonstrate a party anxious to get on with the case, as was stated at the conference.

the facts pled here - the claims arise from the identical deliberate and secretive course of conduct by Defendants under which they obtained control of the vessels and then operated them in commerce.[7] The mere fact that the London proceedings as originally drafted focus more on the tort aspects of Defendants' conduct does not in anyway advance Defendants' position or affect the presence or absence of admiralty jurisdiction here. The inquiry here is whether the underlying facts give rise to a claim which supports admiralty jurisdiction, and they clearly do.[8]

More importantly, Defendants have known all along that the argument about the nature of the London proceedings would never produce a meaningful result for them because it was always open to Plaintiffs to seek an amendment to the pleadings (to incorporate a reference to a breach of warranty of authority/breach of warranty of identity or a misrepresentation claim in relation to the identity of the charterer under the contracts).[9] This is why the argument was not raised before in the opposition papers, and why it is now presented as a *non-argued* ground for re-argument. Indeed, the election to insert the argument in the brief, but not rely upon it as a ground for reconsideration, only serves to underscore the transparency of the effort. It was of no moment to the question of jurisdiction on the original application, it is of no moment on the current application, and it is improperly laced throughout the brief to bolster what are otherwise the three unsupportable grounds for re-argument.

---

[7] As a matter of English law, it is open for Plaintiffs to seek to amend the pleadings to plead a similar breach of warranty of authority/breach of warranty of identity or a misrepresentation claim in relation to the identity of the charterer under the contracts.

[8] When the London pleadings were filed, they were not drafted with an eye toward responding to a subsequent challenge to a later filed US security proceeding, and thus are irrelevant to whether the facts and circumstances of the conduct give rise to US maritime jurisdiction.

[9] Any amendment to the English pleadings would ultimately require the consent of all the parties or the permission of the English Court.

**POINT I**

**DEFENDANTS' MOTION FOR RECONSIDERATION SHOULD BE DENIED.  THEY RAISE NEW ARGUMENTS WHICH ARE IMPROPER ON A MOTION FOR RECONSIDERATION, AND THE ARGUMENTS LACK MERIT IN ANY EVENT.**

A.     **Defendants' Application Runs Afoul of the Standards for Reconsideration.**

In their memorandum, Defendants correctly point out that Local Civil Rule 6.3 permits reconsideration if the movant offers controlling decisions or facts that the Court had originally overlooked and that might reasonably be expected to alter the court's original decision.  *See* Local Civil Rule 6.3; *Shrader v. CSX Transp. Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) (citing *Schonberger v. Serchuk,* F. Supp. 108, 119 (S.D.N.Y. 1990)).   What Defendants ignore, however, is that the Second Circuit has interpreted this rule as "precluding arguments raised for the first time on a motion for reconsideration." *Caribbean Trading & Fidelity Corp. v. Nigerian Nat'l Petroleum Corp.,* 948 F.2d 111, 115 (2d Cir. 1991); *see also Schonberger v. Serchuk,* 742 F. Supp. 108, 119 (S.D.N.Y. 1990); *Ashley Meadows Farm, Inc. v. American Horse Shows Ass'n, Inc.,* 624 F. Supp. 856, 857 (S.D.N.Y. 1985).  A movant, therefore, may not "advance new facts, issues or arguments not previously presented to the court," or "reargue those issues already considered." *Hayles v. Advanced Travel Mgt. Corp.,* No. 01 Civ. 10017 (BSJ), 2004 WL 117597 at *1 (S.D.N.Y. Jan. 26, 2004) (quoting *Gjoni v. Home Depot, Inc,* 99 Civ. 1849, 2002 WL 91623, *1 (S.D.N.Y. Jan. 23, 2002)).

This strict standard is designed to prevent litigants from making repetitive arguments on issues that already have been considered by the court or from offering new arguments on a motion the court has already decided.  *Id.*  The "limitations serve to ensure finality and to prevent losing parties from using motions for reconsideration as a vehicle by which they may then plug the gaps of a lost motion with additional matters." *In re Andrew J. Barberi,* No. 03-cv-6049

(ERK/VVP) (E.D.N.Y. April 10, 2008) (citing *Zoll v. Jordache Enterprises, Inc.*, No. 01 Civ. 1339, 2003 WL 1964054 at *2 (S.D.N.Y. April 24, 2003) (quoting *Carolco Pictures, Inc. v. Sirota,* 700 F. Supp. 169, 170 (S.D.N.Y. 1988))). Reconsideration of a court's previous order is thus an "extraordinary remedy to be employed sparingly in the interests of finality and the conservation of scarce judicial resources." *USA Certified Merchants, LLC v. Koebel*, 273 F.Supp. 2d 501, 503 (S.D.N.Y. 2003).

**B.**    **Each of Defendants Arguments is New and Lacks Merit in Any Event.**

As outlined above, Defendants raise three arguments in support of their application for reconsideration which involve (1) a choice of law issue, (2) an alleged failure to plead damages, and (3) an argument regarding the parties against whom the claim for breach of contract/good faith/fair dealing was alleged. Each argument could have been raised in their original opposition papers. The arguments are new, and as such, cannot serve as the basis for reconsideration. Each is addressed below.

*1.*    *Defendants' argument regarding choice-of-law.*

Defendants first argue that the Court should reverse itself because Plaintiffs supposedly neglected to provide the Court with an initial choice-of-law analysis. (*See* Defendants Memo. pp. 8-11). This is both a strange and confusing argument because Defendants themselves were only too happy to rely on U.S. law when they thought it was to their benefit, and there is in fact no choice-of-law analysis which occurs with the threshold jurisdictional inquiry anyway. When a challenge to the Court's admiralty jurisdiction is raised, that issue is resolved by an analysis of the sufficiency of the pleadings and whether they facially describe conduct (whether it be contract or tort) that falls within the parameters of U.S. admiralty jurisdiction. Defendants incorrectly interpret the law on this point, and while a choice-of-law analysis may be appropriate

where there is some secondary issue (such as whether an admiralty claim is ripe enough to support an attachment), it has no place in determining whether a U.S. court has U.S. maritime jurisdiction.

As a starting point, this choice-of-law argument is a brand new issue and as such it does not qualify as a basis for reconsideration. There was no discussion whatsoever in Defendants' original papers which raised choice-of-law. [10]  In fact, Defendants embraced and relied upon U.S. law in their arguments.  (*See* Defendants' Opp. Memo. at pp. 23-24).  Accordingly, the application for reconsideration on the basis of a choice-of-law issue is a non-starter.  *See, e.g,* *Giovanniello v. N.Y. Law Publ'g Co.*, 07-cv-1990 (HB), 2007 U.S. Dist. LEXIS 91142, 3-5 (S.D.N.Y. Dec. 11, 2007) (holding choice-of-law argument improper in motion to reconsider ruling on subject matter jurisdiction). [11]

---

[10]  Recognizing that they did not raise this issue at all, Defendants suggest in their current memorandum that they did address this issue "in their very first submission to this Court." (*See* Defendants' Memo. p.9).  In support of this statement, Plaintiffs refer to a single sentence and accompanying footnote contained at p. 17 of their earlier memorandum which was filed in support of their original motion to vacate the attachment.  This single reference was made in the context of Defendants' suggestion that a conflicts analysis would need to be undertaken "should this case proceed".  There is no argument anywhere in that brief that the Court must first engage in a conflicts analysis prior to ruling on Plaintiffs' motion for renewal of the Rule B application.  Moreover, this motion for reconsideration relates to Plaintiffs' motion for renewal of the Rule B application.  Defendants' original motion to vacate and the papers filed therein have no bearing on this motion.

[11]  Although not raised by Defendants here, the fact that the Court's prior order pertains to the existence of subject matter jurisdiction does not excuse Defendants' failure to raise the choice-of-law issue in their original opposition.  This precise issue was addressed by Judge Baer in *Giovanniello*, 2007 U.S. Dist. LEXIS 91142.  There, the plaintiff asserted that he was entitled to raise the choice-of-law issue in the context of his reconsideration application because it concerned the court's subject matter jurisdiction which is not waivable.  Judge Baer rejected the plaintiff's argument because the gravamen of the prior motion upon which reconsideration was sought was subject matter jurisdiction.  The plaintiff thus had a full and fair opportunity to raise the choice-of-law argument in his opposition to the original motion, but chose not to do so.  Consequently, his effort to raise choice-of-law for the first time in his motion for reconsideration was improper.  In the same way, Defendants here had a full and fair opportunity to raise the choice-of-law issue in their original opposition to the motion which solely concerned subject matter jurisdiction.  They chose not to and cannot now ask the Court to consider the issue on reconsideration.

To the extent the Court considers it, however, Defendants are simply wrong in their analysis. U.S. federal law determines whether a particular claim is sufficiently "salty" (*i.e.* related to traditional maritime activity) to support maritime jurisdiction. There is no authority (and Defendants point to none) for the suggestion that a U.S. court must engage in a conflicts analysis to determine whether it has maritime jurisdiction. To the contrary, the Supreme Court, in *Norfolk Southern Railway Co. v. James N. Kirby Pty Ltd.*, 543 U.S. 14, 24 (2004), made it clear that admiralty jurisdiction is determined based on the nature and character of the underlying facts rather than on any choice of law analysis. *See also Williamson v. Recovery Limited Partnership*, 2007 U.S. Dist. LEXIS 4438 at *6 (S.D.N.Y. Jan. 16, 2007). Thus, a conflicts analysis is not required, and while some other law may end up applying to the substantive aspects based on a conflicts analysis, that law may not create or divest the court of maritime jurisdiction. Any other result would be absurd.[12]

Defendants blur the distinction between the Court's examination of its admiralty jurisdiction (where no conflicts analysis occurs) and the Court's secondary assessment of the validity of a particular claim itself which may involve a conflicts analysis. *See, e.g., Sonito Ship. v. Sun United Maritime*, 478 F.Supp.2d 532 (S.D.N.Y. 2007) (Judge Haight vacated attachment, applying English law to issue of ripeness of the charter party claim); *Dominion Bulk Int'l S.A. v. Naviera Panoceanica, S.A.C.,* 2007 A.M.C. 186 (S.D.N.Y. 2006) (attachment sustained based upon application of English law on issue of when charter hire earned). Accordingly, a conflicts

---

[12] An example best illustrates the point. Supposed there was a charter party dispute subject to Chad law, but in Chad there may be no such thing as "admiralty jurisdiction." Would that deprive the court here of admiralty jurisdiction over a charter party dispute if the plaintiff sought a Rule B attachment? Certainly not. Conversely, if a conflicts analysis pointed the Court to French law, and under French law admiralty jurisdiction existed for the building of a ship, would that empower the Court to have admiralty jurisdiction here where the Supreme Court has said that such contracts do not provide the basis for admiralty jurisdiction? *People's Ferry Co. v. Beers*, 61 U.S. 393, 401 (1858) (contract to construct a ship is not within admiralty jurisdiction). Of course not.

analysis pertains not to the fundamental jurisdictional issue but may in a given case play a part if the validity of a particular maritime claim is challenged.

Here, Defendants' only challenge to the validity of the underlying maritime claim was based on an application of U.S. law. (*See* Defendants' Opp. pp. 23-24). Comfortable with the notion that they might succeed on that issue, they raised no choice-of-law issue or the application of any foreign law. Having lost, they now seek a second bite at the apple, by arguing that a conflicts analysis was necessary, but without any indication as to where that result might lead or what the result would be. This is hardly a grounds for reconsideration.

In an effort to try and establish something the Court overlooked, Defendants suggest in their memorandum that the Court seemed to have imposed the burden on Defendants to prove the applicable law. (*See* Memo. p. 10). Again, the argument has no merit. The Court imposed no burden on them -- they opted to seek relief under U.S. law. Further, it is clear that when neither party raises an issue of choice of law, the parties are deemed to have acquiesced in the application of the law of the forum to the issue at hand and the court can correctly apply the law of the forum. *The Clarkson Co. Ltd. v. Shaheen*, 660 F.2d 506, 512, n. 4 (2d Cir. 1981); *Keles v. Yale Univ.*, 880 F.Supp. 729, 733 (S.D.N.Y. 1995). In the circumstances of this case, where the choice of law issue was not raised, the Court was entitled to refer to U.S. law in its opinion. This is not a question of the Court overlooking something but rather a defendant having chosen not to raise it. This is a classic second bite at the apple maneuver; the Court did nothing wrong and certainly did not overlook any controlling law or fact on this point.[13]

---

[13] The two cases cited by Defendants now (*see* page 10) in support of their choice-of-law argument were not cited in their original opposition and are not controlling in any event. The cases are also irrelevant in the context of this motion because neither case involved a reconsideration application where new arguments cannot be raised for the first time. With respect to their last paragraph on this point (*see* page 11), Defendants simply regurgitate the arguments they made before which was rejected and cite the same two cases, but they offer no legitimate basis for reconsideration.

### 2.    *Defendants' argument about the allegations of damages.*

Defendants' second argument lodged as a basis for reconsideration fares no better than their first.   Here, Defendants argue that reconsideration is warranted because, they claim, Plaintiffs have not asserted damages arising out of the breach of contract/fair dealing/good faith claims.  (Defendants' Memo. pp. 12-14).  Again, and at the risk of sounding like a broken record, this is a brand new argument not raised originally.  This is a patent waste of judicial and client resources and is exactly the type of conduct which the standards for reconsideration are designed to prevent.

Furthermore, the argument has no merit in any event.  Plaintiffs' complaint details fully the elements of damages which Plaintiffs seek to recover from Defendants.  These damages flow directly from the conduct of Defendants, whether that conduct is labeled as a breach of fair dealing/good faith or a tort.  Thus, the suggestion that Plaintiffs have not alleged any damages flowing from Defendants' breach of their obligation of fair dealing and good faith is simply nonsense.

### 3.    *The claims against Mr. Ruperti and Sea Pioneer.*

Finally, while not raised under a heading in their memorandum, Defendants suggest in a few sentences in their brief that reconsideration is warranted because there was no breach of contract/fair dealing/good faith claim asserted against Defendants Sea Pioneer and Mr. Ruperti. Since Defendants do not assert this as a specific ground for their motion, it is unclear why Defendants devote a few sentences in their brief to this point.  Nonetheless, the suggestion is inappropriate in the context of this motion for reconsideration.  Again, despite the fact that Plaintiffs asserted the existence of contract jurisdiction from the outset, Defendants never once

argued that such jurisdiction could only exist as to one of the defendants in any event. The argument is therefore precluded in the context of this reconsideration motion.

Moreover, the argument simply ignores the allegations of Plaintiffs' complaint. Plaintiffs have alleged that Defendant Ruperti owned and controlled both of the corporate defendants and utilized those shell entities in the events which give rise to Plaintiffs' claims. Therefore, to the extent a breach of contract/fair dealing/good faith claim lies against Defendants PMI, Mr. Ruperti and Sea Pioneer are liable on those claims as well. Corporate entities can be liable for the acts of their shareholders if they so dominated them that they primarily contracted his business. *See Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980) (noting that under maritime law, a corporate veil can be pierced if corporations are used to perpetuate a fraud or if they are so dominated by an individual that they primarily transacted his business); *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979); *Interocean Ship. Co. v. National Ship. and Trading Co.*, 523 F.2d 527, 539 (2d Cir. 1975).

## POINT II

### DEFENDANTS' REQUEST FOR A REDUCTION IN THE AMOUNT OF SECURITY TO "ZERO" SHOULD BE DENIED.

In yet a further and even more transparent effort to avoid the standards applicable on reconsideration, Defendants recast what is otherwise a new argument for vacatur, cloaking it as a request "to reduce" the attachment to zero. Seeking a reduction of an attachment to zero is nothing more than an effort to vacate it with a different label. If a reduction to zero is not vacatur, what is? As such, this is yet another new argument that was not raised before in their vacatur application and should be rejected. (*See* discussion above on standards for reconsideration).

Further, the sole basis asserted for the reduction to zero has no merit. It is grounded on the same argument raised in their reconsideration application (*i.e.* that Plaintiffs have not alleged sufficient damages). For the reasons discussed above, the argument is unsupportable. (*See* preceding discussion).[14]

**POINT III**

**PLAINTIFFS SHOULD BE GIVEN LEAVE
TO AMEND THE COMPLAINT TO IDENTIFY
ADDITIONAL RUPERTI ENTITIES AND
AUTHORIZED TO TAKE DISCOVERY.**

Subsequent to the December conference after which the attachment was suspended on an interim basis, additional information has been obtained which indicates that Defendants are making a conscious and deliberate effort to circumvent the Court's Order of Attachment by moving funds through New York but in a manner to mask the identity of the parties with an interest in those funds, thereby trying to shield them from the attachment.

By way of illustration, and as outlined more fully in the accompanying Gutowski Declaration, a suit was filed late last year by Sergeant Marine against, *inter alia*, Defendant Sea Pioneer. Those pleadings provide an insight into Defendants' manipulation of their transfer of funds. Sergeant Marine, as the operator of the vessel ASPHALT STAR, entered into a charter with Sea Pioneer which provided for Sea Pioneer to pay freight in U.S. dollars. Based upon the allegations in the Sergeant Amended Verified Complaint, Sea Pioneer instructed its customers to remit the payment of freight or other sums due to it to Maroil Trading and/or Maroil, Inc., Global

---

[14] The whole argument also ignores the fraud case. There is no argument that the fraud aspects of the claim do not contain sufficient damage allegations. Therefore, unless and until the fraud claim is considered and rejected, the application for a "reduction to zero" in the security on the basis of alleged insufficient contract damages is premature.

Shipmanagement SA, and Suramericana. (*See* Gutowski Decl. Ex. 1 ¶¶ 7-10).[15] Although Plaintiffs do not have in their possession a copy of the actual document verifying Sea Pioneer's manipulation of the transfers into the other corporate names, the Sergeant Marine Amended Verified Complaint was verified by Jack Greenbaum of Blank Rome and confirms that the sources of his information are documents provided to him by Sergeant and Sea Pioneer's instructions to transfer funds are described in the Verified Complaint as being "in writing".

Defendants' efforts exhibited in *Sergeant Marine* demonstrate a clear intent to avoid the attachment of assets in New York while nevertheless moving assets through New York. To the extent there is an Order of Attachment in place which acts to seize the funds or assets in which Defendants have an interest, the manipulation of transfers by masking the identity of the true beneficiary is very much a subterfuge and an effort to circumvent the Court's Order.

Further illustration of Defendants' efforts to continue to utilize the New York banking system but otherwise circumvent the Court's Order is found in a another recent transfer that was seized at the Bank of America. Following issuance of this Court's March 19, 2008, Order, the Plaintiffs recommenced service of the Order of Attachment on various New York banks. Bank of America advised that certain funds were restrained because a reference was contained in the wire details to Defendant Wilmer Ruperti. The details indicate that Russneft Trading initiated the transfer to be sent to Gary Nader Corporation in Miami (where Mr. Ruperti maintains a residence). Russneft Trading is a Russian oil trading entity, and Gary Nader is a dealer in Latin American art in Miami. *See* www.garynader.com. Mr. Ruperti who trades and ships oil was apparently utilizing a debt owed by Russneft Trading to pay for his art.

---

[15] The Gutowski Declaration is not submitted in opposition to Defendants' motion for reconsideration but in support of Plaintiffs' cross-motion. Plaintiffs' submission of the Declaration therefore does not run afoul of the Local Rules which do not permit the submission of affidavits in the context of a reconsideration application.

To the extent Mr. Ruperti is trying to utilize the New York banking system to pay his debts but is masking his interest in the funds, he is in contempt of the Court's Order. While he may not have to bring his money into the jurisdiction, it is another thing to do so in a manner which attempts to hide his interest in the transfer. He is circumventing the Court's Order, which is tantamount to contempt.

In view of the foregoing, Plaintiffs seek leave to amend the Complaint to identify the corporate entities into which or through which Defendants are now moving their funds and/or for an order directing the Clerk to amend the process accordingly. In addition, Plaintiffs request leave to take immediate discovery from Defendants with respect to this effort to avoid the attachment so as to properly identify and enable the garnishees to restrain funds in which Defendants have an interest. Discovery in connection with an attachment is permissible under the rules, see Rule A(2) (federal rules apply to procedures under Supplemental Admiralty Rules), and has been allowed in Rule B cases. *See Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307, 322 (2d Cir. 1970) (discovery permitted regarding allegation that assets owned by one corporation should be considered an asset of a related corporation); *Rolls Royce Ind. Power (India) v. M.V. FRATZIS M*, 1996 A.M.C. 390, 392 (S.D.N.Y. 1995) (Haight, J.) (discovery allowed on motion to vacate attachment to determine whether attachment reached assets of the named defendant).

## CONCLUSION

Based upon the foregoing, Defendants' motion should be denied in its entirety, and Plaintiffs granted the relief sought in the cross motion.

DATED:     New York, New York
             April 10, 2008

Respectfully submitted,

Peter J. Gutowski (PG 2200)
Gina M. Venezia (GV 1551)
FREEHILL HOGAN & MAHAR, LLP
80 Pine Street
New York, New York 10005
(212) 425-1900
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will automatically send email notification of such filing to all attorneys of record. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notice of Electronic Filing.

**VIA CM/ECF:**

Elizabeth H. Cronise
STROOCK & STROOCK & LAVAN, LLP
180 Maiden Lane
New York, NY  10038-4982

Peter J. Gutowski