```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                     :
NOVOSHIP (UK) LIMITED, CALLY SHIPHOLDINGS:
INC., VITAL SHIPPING CORPORATION, and :
DAINFORD NAVIGATION INC.,            :
                                     :
                  Plaintiffs,        :
                                     :    07 Civ. 9876 (DLC)
          -v-                        :
                                     :    OPINION AND ORDER
WILMER RUPERTI, SEA PIONEER SHIPPING :
CORPORATION, and PMI TRADING INC., JOHN :
DOE (fictitious), AND JOHN DOE INC.  :
(fictitious),                        :
                                     :
                  Defendants.        :
                                     :
-------------------------------------X
```

Appearances:

For Plaintiffs:
Peter J. Gutowski
Gina Venezia
Pamela L. Schultz
Freehill Hogan & Mahar LLP
80 Pine Street
New York, NY 10005

For Defendants:
James L. Bernard
Elizabeth H. Cronise
Stroock & Stroock & Lavan, LLP
180 Maiden Lane
New York, NY 10038

Henry E. Mendia
Stroock & Stroock & Lavan, LLP
200 South Biscayne Boulevard
Miami, FL 33131

DENISE COTE, District Judge:

On March 19, 2008, a Memorandum Opinion and Order was issued in this action granting the plaintiffs' motion for renewal of an order of attachment pursuant to Supplemental Admiralty Rule B. <u>Novoship (UK) Ltd. v. Ruperti</u>, No. 07 Civ. 9876, 2008 WL 754288 (Mar. 19, 2008) (the "March 19 Opinion").[1]  Defendants have filed a motion for reconsideration of the March 19 Opinion; in connection with the opposition to that motion, plaintiffs filed a cross-motion seeking discovery to identify corporate entities that, plaintiffs allege, the defendants are using to move funds through this District, and leave to amend both their complaint and the order of attachment to reflect the information obtained during such discovery.  For the following reasons, defendants' motion for reconsideration is denied, and plaintiff's cross-motion is granted in part.

The necessary factual background is reviewed in the March 19 Opinion, familiarity with which is assumed.  <u>See</u> March 19 Opinion at *1.  That Opinion concluded, in sum, that "the plaintiffs' [breach of] contract claim provides an independent basis for the assertion of admiralty jurisdiction and the issuance of the requested maritime attachment."  <u>Id.</u> at *3.  Defendants contend that this holding should be reconsidered because the plaintiffs

---

[1] The attachment originally issued on November 7, 2007, but was stayed by an Order of December 17.  <u>Novoship</u>, 2008 WL 754288, at *1.

2

(1) did not carry their burden of establishing a valid prima facie admiralty claim because they did not provide the Court with a choice-of-law analysis, and the Court erroneously placed that burden upon the defendants; and (2) did not adequately plead contract damages in their complaint (or assert a breach of contract claim in the London litigation underlying this attachment action), and thus the order of attachment cannot be premised upon a breach of contract claim, or, if it is so premised, should be reduced in amount to zero.

The standard for a motion for reconsideration is strict, and "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Trans., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided," nor may the moving party "advance new facts, issues or arguments not previously presented to the Court." Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999). The decision to grant or deny the motion is within the sound discretion of the district court. See Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999).

Defendants' argument regarding the plaintiffs' failure to plead contract damages has not been previously raised, and thus must be rejected.[2]  Defendants' argument regarding choice-of-law is also without an adequate basis in the record developed on the prior motion.  In short, the March 19 Opinion did not overlook the choice-of-law issue or impose any improper burden upon the defendants.  Defendants emphasize that their "very first" submission to the Court in this action raised the choice-of-law issue, and that this argument was incorporated by reference through a footnote in their opposition papers.  That footnote incorporates all arguments previously advanced, without specifically identifying the choice-of-law issue.[3]  Such a generalized incorporation by reference is insufficient to identify

---

[2] The defendants' related request that the amount encompassed by the attachment be reduced to zero is thus also rejected.  It should also be noted that the defendants' assertions regarding the allegations contained in the pleadings filed in the London litigation -- to which defendants claim they did not have access at the time their opposition to the renewal motion was filed -- do not alter this analysis.  Defendants do not appear to argue that the failure to include a breach of contract claim in the London litigation itself requires reconsideration of the March 19 Opinion.  Rather, the claims regarding the London pleadings are raised to emphasize the defendants' principal argument: that the complaint filed in this action does not plead contract damages.  This argument, however, was fully available to the defendants at the time their opposition was filed, but was not raised at that time.

[3] Footnote six on page seventeen of their initial motion to vacate, filed on December 7, 2007, notes that "should this case proceed, choice of law is of paramount importance in determining how damages might be assessed here," and further states that the plaintiffs have "fail[ed] to assert choice of law" in their complaint.

the choice-of-law argument.  Thus, the choice-of-law argument pressed by the defendants here was not presented in the defendants' opposition to the motion to renew the attachment and cannot serve as a ground for reconsideration.

In any event, the March 19 Opinion did not overlook the choice-of-law issue, but rather concluded that, "[w]hile it is not clear whether United States law would apply to the interpretation" of the contacts at issue here, both parties' citation to the same case -- FWF Inc. v. Detroit Diesel Corp, 494 F. Supp. 2d 1342 (S.D. Fl. 2007) -- on the issue of whether a maritime contract imposes an obligation of good faith and fair dealing was "sufficient at this stage for purposes of determining whether plaintiffs have demonstrated that they have a valid prima facie admiralty claim" premised upon a breach of such an obligation. March 19 Opinion at *3 n.2.  Cf. 3Com Corp. v. Banco do Brasil, S.A., 171 F.3d 739, 743 (2d Cir. 1999).[4]

In addition, the March 19 Opinion did not place a burden on the defendants to establish which forum's law should be applied to the plaintiffs' claims.  Although the March 19 Opinion did state

---

[4] See also Ronda Ship Mgmt. Inc. v. Doha Asian Games Organising Comm., 511 F. Supp. 2d 399, 404 (S.D.N.Y. 2007) ("Given that the Court's inquiry focuses on whether plaintiff has alleged a claim cognizable in admiralty, and not the merits of plaintiff's claim, it is unnecessary for the Court to determine which law applies to the ultimate merits of plaintiff's claim.").

that defendants' citation to In re WorldCom, 456 F. Supp. 2d 508, 519 (S.D.N.Y. 2006), was inapposite because defendants had not argued that the law applied in the cited passage of In re WorldCom (i.e., New York State law) also applied here, it concluded that "in any event" plaintiffs had made a sufficient "prima facie showing that a breach of the implied covenant here would be a 'breach of the underlying contract.'" March 19 Opinion at *3 (citing Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002)). Thus, any argument that the March 19 Opinion placed a burden on the defendants to make a showing regarding choice-of-law is erroneous. See also id. at *2 (noting that "'the burden [is] on the plaintiff to show that [the] attachment was properly ordered and complied with the requirements of [Supplemental] Rules B and E'" (citing Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 n.5 (2d Cir. 2006))).[5] Defendants' motion for reconsideration is therefore denied.[6]

---

[5] Thus, while it is true that "[t]he existence vel non of a valid maritime claim for purposes of a Rule B writ of attachment turns upon the applicable substantive law," Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd., 478 F. Supp. 2d 532, 536-37 (S.D.N.Y. 2007) (Haight, J.), this Court concluded in the March 19 Opinion that the parties' apparent agreement that the contracts at issue here created implied duties of good faith and fair dealing, along with the plaintiffs' prima facie demonstration that breach of such implied duties could form the basis for a breach of contract claim, were sufficient at this stage.

[6] This conclusion is not altered by consideration of the defendants' letter of June 5, 2008, which refers the Court to a recent filing in the London litigation. By letter dated June 17, 2008, plaintiffs' counsel provides a declaration from the attorney who prepared the document identified by the defendants that

Plaintiffs' cross-motion alleges that defendants have sought to circumvent the Order of Attachment issued in this action "by moving funds through New York but in a manner to mask the identity of the parties with an interest in those funds."  As evidence, plaintiffs cite (1) a verified complaint filed in this Distric by other plaintiffs on December 5, 2007, which alleged that Sea Pioneer Shipping Corporation (a defendant herein) caused payments due to it to be remitted to other affiliated entities -- all of which are allegedly controlled by defendant Wilmer Ruperti ("Ruperti") -- "[i]n order to avoid attachments of its assets," and (2) a recent seizure by Bank of America pursuant to the Order of Attachment in this action of a wire transfer between two third-parties that was allegedly made for Ruperti's benefit.[7]  Based on this information, plaintiffs seek "leave to take immediate discovery from Defendants with respect to this effort to avoid the attachment so as to properly identify and enable the garnishees to restrain funds in which Defendants have an interest," and leave to

---

describes the context in which it was prepared and filed.  The description provided by the plaintiffs effectively rebuts the defendants' claim that the London filing is a "judicial admission by Plaintiffs" that is "fatal" to the plaintiffs' claim of maritime contract jurisdiction.

[7] In sum, plaintiffs allege that Ruperti was directing an entity that owed him a debt to pay off that debt by transferring funds directly to one of his creditors, thereby avoiding having a transfer of funds with his name on it travel through this District.  The transfer was seized despite this arrangement because the documentation accompanying the transfer made reference to Ruperti.

7

amend the complaint and the Order to Attachment to reflect the information thereby discovered.

"Rule B(1) . . . provides that a maritime plaintiff may 'attach the defendant's tangible or intangible personal property.' It is difficult to imagine words more broadly inclusive than 'tangible or intangible.'"  Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 276 (2d Cir. 2002) (citation omitted).  Given the breadth of Rule B, it is recognized that the Rule permits a plaintiff to attach, for example, "debts owed to the defendant . . . even if they have not yet matured or have only partially matured," provided that "the defendant's entitlement to the credit or interest in the debt [is] clear."  Id. (quoting Robert M. Jarvis, An Introduction to Maritime Attachment Practice Under Rule B, 20 J. Mar. L. & Com. 521, 530 (Oct. 1989)).  Accordingly, it has been held that where a transfer of funds between two third-parties is shown to have been made for the benefit of a defendant subject to an order of attachment, the defendant's "property interest in" the transfer may be "sufficient to render it attachable under Rule B."  Essar Int'l Ltd. v. Martrade Gulf Logistics, FZCO, No. 07 Civ. 3439 (WHP), 2007 WL 2456629, at *2 (S.D.N.Y. Aug. 23, 2007).  But see Egyptian Navigation Co. v. Baker Investments Corp., No. 08 Civ. 2080 (SHS), 2008 WL 1748456, at *6 (S.D.N.Y. Apr. 14, 2008) (granting motion to vacate

8

attachment where defendant assigned all rights to payment at issue to a third-party).

It follows from these principles that appropriate discovery may enable the plaintiffs to show that funds transfers are passing through this District in the names of non-parties that should be subject to the Order of Attachment entered in this action.  Thus, plaintiffs' request for leave to take discovery is granted.  Such discovery shall be conducted on or before August 29, 2008.[8]  Based upon the information thereby obtained, plaintiffs may make a renewed motion to amend the complaint and Order of Attachment.  An Order issued concurrently with this Opinion will set a schedule for briefing such a motion.  If leave to amend is granted and funds belonging to the newly joined parties are ultimately restrained, such party "shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated."  Fed. R. Civ. P. Supp. R. E(4)(f).

---

[8] While defendants concede that "discovery procedures under the Federal Rules of Civil Procedure are part of this proceeding," they raise the concern that "it is not clear what discovery Plaintiffs contemplate," because discovery requests have not yet been served.  It is sufficient to note at this stage that, in accordance with the Local Rules of the Southern District of New York and the Individual Practices of this Court, the parties are required to (1) engage in a meet-and-confer process to attempt to resolve any discovery disputes -- including disputes regarding the proper scope of the discovery permitted by this Opinion -- and, (2) if such process fails to resolve those disputes, to raise them promptly with the Court in a letter no longer than two pages.

CONCLUSION

Defendants' motion for reconsideration, filed on April 2, 2008, is denied.  Plaintiffs' cross-motion, filed on April 17, 2008, is granted insofar as it seeks leave to take discovery, and denied without prejudice insofar as it seeks leave to amend the complaint and the Order of Attachment.

SO ORDERED:

Dated:   New York, New York
         June 20, 2008

                              _____
                              DENISE COTE
                              United States District Judge