UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

NOVOSHIP (UK) LIMITED, CALLY
SHIPHOLDINGS, INC., VITAL SHIPPING
CORPORATIONS, and DAINFORD
NAVIGATION INC.,

      Plaintiffs,

  v.

WILMER RUPERTI, SEA PIONEER SHIPPING
CORPORATION, and PMI TRADING, INC.,
JOHN DOE (fictitious) and JOHN DOE INC.
(fictitious),

      Defendants.

------------------------------------x

Case No. 07 Civ. 9876 (DLC)

## OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED VERIFIED COMPLAINT

Defendants Wilmer Ruperti ("Ruperti"), Sea Pioneer Shipping Corporation ("Sea Pioneer") and PMI Trading, Inc. ("PMI") (collectively, "Defendants") make a restricted appearance pursuant to Fed. R. Civ. P. Supp. Admiralty R. E(8), and respectfully submit this Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint Identifying Additional Defendants, and For Order Directing Issuance of Supplemental Order of Attachment and Authorization for Continuation of Discovery (hereinafter, the "Motion"). For the reasons stated herein, Defendants respectfully request that Plaintiffs' Motion be denied.

## DISCUSSION

According to Plaintiffs, the instant Motion was filed out of fear that Defendants would seek to walk away from their agreement to provide security once this Court ruled on October 24, 2008 that the discovery period in this case had closed. (Plaintiffs' Memorandum of Law in Support of Motion for Leave to File Second Amended Complaint, at 4, hereinafter "Plaintiffs' Memorandum at __"). In their Motion, Plaintiffs speculate that Defendants were motivated to enter into the parties' agreement by a desire to avoid discovery and speculate further that once discovery closed Defendants would refuse to honor the parties' agreement. *Id.* Defendants, however, have no intention of "walking away" from their agreement to provide security, continue to work daily toward that end and continue to report to Plaintiffs with regard to their progress.

As indicated in Plaintiffs' letter to the Court of September 26, 2008, the parties have agreed that security for the full amount under this Court's attachment order (US $17,149,420) will be posted and thereby the need for discovery or further attachments will be obviated. Both Plaintiffs and Defendants stand to benefit from this agreement. Plaintiffs will obtain security for the entire sum ordered by this Court, Defendants will be able to arrange for the security in terms that are commercially reasonable, and all parties will be spared the considerable expense, disruption and further litigation that would result from further attachments. The parties' attention and resources can now be directed to the London proceedings, where the merits of their dispute will be decided.

As is evident from Plaintiffs' subsequent correspondence to this Court, at the time they entered into their agreement the parties understood that the timing of the security to be posted by Defendants was (and continues to be) affected by the historic and ongoing crisis in the financial markets. The parties also understood that the delay in the posting of security would not

prejudice Plaintiffs who, by their own estimation, do not expect to reach a trial on their claims in London for another thirty-six months[1] and, importantly, have yet to assert in that forum the one claim secured by this Court's attachment, specifically the alleged contract claim for breach of the implied covenant of good faith and fair dealing under the alleged charter parties between the Plaintiffs and Defendants.

Plaintiffs nonetheless filed the instant motion, claiming that Defendants' motive for entering into the agreement was the avoidance of discovery, and that once this Court confirmed that discovery closed, Defendants would no longer have any reason to honor the agreement. However, the agreement provides Defendants a mechanism by which they can furnish the security under commercial terms that are sustainable and avoid the considerable expense, litigation and disruption that would result from further attachments. Defendants intend to honor the agreement and have never indicated otherwise. Moreover, Defendants have requested Plaintiffs' cooperation in the establishment of an escrow account in this District where cash can be deposited in regular intervals that will total the full amount under this Court's attachment order by the time the London lawsuit reaches trial, thus ensuring that full security is posted whether a correction occurs in the financial markets between now and then or not. As a result, the instant motion, premised on Plaintiffs' fear that Defendants intend to "walk away" from the parties' agreement, should be denied since Defendants have no intention of doing so.

Defendants thus believe that the instant motion should never have been filed, and should be rejected on the basis outlined above. Out of an abundance of caution, however, Defendants

---

[1] Plaintiffs estimate that the proceedings in the High Court of Justice in London, where the merits of their claims will be decided, will last four years from the date the instant lawsuit was instituted one year ago, not including appeals. (First Amended Verified Complaint at 62, 65). Accordingly, Plaintiffs estimate a trial on their claims in London in November, 2011, thirty-six months from now, and have included in their attachment application to this Court the sum of US $3,336,420.00 to cover interest on their alleged damages during the pendency of the London lawsuit.

will briefly address the balance of their motion, in which Plaintiffs argue that this Court should grant them leave to file an amended complaint to add Lap Shipping, Inc., Maroil Trading, Global Shipmanagement CA, Perla Marina Investment S.A., Suramericana de Transporte, Interpetrol Trafigura de Venezuela S.A., and El Puma Television LLC. Plaintiffs make this argument on the claimed basis that each of these entitites are alter egos of Defendants.[2] They are not. Other than Lap Shipping, Inc., and Maroil Trading, it is not clear from Plaintiffs' Motion what grounds allegedly exist for the inclusion of any of these entities in this attachment proceeding. Each are mentioned in passing in Plaintiffs' Memorandum as being owners of vessels or television stations or brokers, but Plaintiffs never claim, not to mention support, that any of the entities are undercapitalized, fail to follow corporate formalities, pay the debts of others, or share employees or directors with others.[3]

With regard to Maroil Trading, Inc., Plaintiffs claim that the entity is in one business but has engaged in transactions outside that purview. According to Plaintiffs, Maroil Trading, Inc. is a ship owner and particularly claim that the M/T GENERAL ZAMORA is one of its ships. Plaintiffs Memorandum at 11, 16. Plaintiffs request that this Court find that the entity is in reality a shell that fails to comply with corporate formalities because bank records reflect that it has engaged in transactions unrelated to the business of owning ships or incompatible with the ownership of ships. *Id.* However, Plaintiffs' own records show that Maroil Trading, Inc. is not a ship owner and does not own the M/T GENERAL ZAMORA, a vessel that according to

---

[2] Notably, Plaintiffs do not seek to include Russneft Trading as an additional defendant despite Plaintiffs' repeated claims that Russneft has agreed to pay debts belonging to Defendants to avoid the attachment. Plaintiffs' Memorandum at 1.

[3] None of these factors, which Plaintiffs cite to as the "well-recognized factors which tend to show that an alter ego relationship may be present," Plaintiffs' Memorandum at 7-8 (citing cases), have been demonstrated to be present here.

Plaintiffs documents has different ownership. See Exh. 7 to Gutowski Declaration.[4] Plaintiffs' alter ego claims against Maroil Trading, Inc., all premised on Plaintiffs' contention that the enitity is a ship owner, should be rejected.

The contradictions between the claims made by Plaintiffs against the existing and proposed new defendants and the documents they have filed in support of their application is pervasive. For example, Plaintiffs' claim that as a result of this Court's attachment Defendants caused bank accounts to be opened in their names and names of affiliated entities in Florida so as to elude the New York attachment and argue that all the entities with Florida bank accounts must therefore be alter ego shell entities. Plaintiffs' Memorandum at 12-13. However, a careful review of the bank records attached to Plaintiffs' Motion show that all the Florida accounts at issue were opened years before this litigation commenced, and could not have been established to avoid this Court's attachment. See Exh. 13 to Gutowski Declaration.

Likewise, Plaintiffs' reliance on the complaint in another case filed in this District, *Sargeant Marine, Inc., v. Maroil, Inc., et. al.*, is contradicted by the document upon which they rely. According to Plaintiffs, the *Sargeant Marine* complaint alleges that Defendants instructed the plaintiff in that action, Sargeant Marine, to make payments to other entities instead of Defendants in order to avoid the attachment. Plaintiffs' Memorandum at 1 (citing to Gutowski Declaration, ECF No. 30, ¶¶ 7-10, and Exh. 1). However, as Plaintiffs know, there is no allegation by the plaintiff in *Sargeant Marine* that it was instructed by Defendants or anyone else

---

[4] Plaintiffs ask that this Court make the same determination with regard to Lap Shipping, Inc., again because bank records allegedly show transactions that are incompatible with Plaintiffs' claim as to the type of business in which Lap Shipping is engaged. The claimed type of business is not altogether clear, and Plaintiffs provide absolutely no support for their assertions in any event.

to conceal payments due Defendants by paying others.[5] These factual allegations are insufficient to satisfy the alter ego test, and amendment should be denied.

## CONCLUSION

The instant Motion should be denied. Neither Plaintiffs' claim that Defendants intend to walk away from the parties' agreement on security, nor their claim that the defendants in the proposed second amended complaint are shell entities and alter-egos of Defendant Ruperti, are well-taken. Plaintiffs rely entirely on unsupported accusations that directly conflict with the facts and purported proofs offered in support of their Motion. Defendants respectfully request that this Court deny the Plaintiffs' Motion.

---

[5] Rather, Sargeant Marine claimed that it believed that unidentified others were instructed to make payments to Defendants in such a manner as to avoid attachment, although Sargeant Marine does not identify who received those instructions nor does it explain how it came to hold this belief. *See* Gutowski Declaration, ECF No. 30, ¶¶ 7-10, and Exh. 1.

Respectfully submitted,

STROOCK & STROOCK & LAVAN, LLP


By: /s/ Elizabeth H. Cronise

    James L. Bernard (JLB-4273)
    Elizabeth H. Cronise (EC-7024)
    180 Maiden Lane
    New York, NY 10038-4982
    212-806-5400 (Telephone)
    212-806-6006 (Facsimile)

    Henry E. Mendia, *admitted pro hac vice*
    200 South Biscayne Boulevard
    Miami, FL 33131-5323
    305-358-9900 (Telephone)
    305-789-9302 (Facsimile)

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on November 14, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

## SERVICE VIA CM/ECF NOTICE OF ELECTRONIC FILING

**ERIC EINAR LENCK, ESQ.**
**PAMELA LYNN SCHULTZ, ESQ.**
**PETER JUDGE GUTOWSKI, ESQ.**
Freehill, Hogan & Mahar, LLP
80 Pine Street
New York, NY 10005
*Attorneys for Novoship UK Limited;*
  *Cally Shipholdings Inc.;*
  *Vital Shipping Corporation; and*
  *Dainford Navigation Inc.*

                                                          /s/ Elizabeth H. Cronise
                                                          Elizabeth H. Cronise