WILLIAM L. JUSKA, JR.
JAMES L. ROSS*
ERIC E. LENCK
JOHN J. WALSH*
PATRICK J. BONNER
PETER J. GUTOWSKI
MARK F. MULLER
WAYNE D. MEEHAN*
DON P. MURNANE, JR.
THOMAS M. RUSSO
THOMAS M. CANEVARI*
MICHAEL FERNANDEZ*
JOHN F. KARPOUSIS*
MICHAEL E. UNGER*
WILLIAM J. PALLAS*
GINA M. VENEZIA*
LAWRENCE J. KAHN*
BARBARA G. CARNEVALE*
MANUEL A. MOLINA
JUSTIN T. NASTRO*
PAMELA L. SCHULTZ*°¹
DANIEL J. FITZGERALD*†
CAROLYN E. BUNDY
JAN P. GISHOLT¹
SUSAN LEE*
EDWARD J. CARLSON

* ALSO ADMITTED IN NEW JERSEY
† ALSO ADMITTED IN CONNECTICUT
△ ALSO ADMITTED IN WASHINGTON, D C
° ALSO ADMITTED IN LOUISIANA

LAW OFFICES OF
# FREEHILL HOGAN & MAHAR LLP
80 PINE STREET
NEW YORK, N.Y. 10005-1759

TELEPHONE (212) 425-1900
FACSIMILE (212) 425-1901
E-MAIL: reception@freehill.com
www.freehill.com

October 22, 2009

**MEMO ENDORSED**

NEW JERSEY OFFICE
549 SUMMIT AVENUE
JERSEY CITY, N.J. 07306-2701
TELEPHONE (973) 623-5514
FACSIMILE (973) 623-3813

CONNECTICUT OFFICE
23 OLD KINGS HIGHWAY SOUTH
DARIEN, CT 06820-4538
TELEPHONE: (203) 921-1913
FACSIMILE (203) 358-8377

OF COUNSEL
GEORGE B. FREEHILL

Our Ref: 486-07/PJG/GMV

RECEIVED OCT 23 2009 CHAMBERS OF DENISE COTE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/23/09

## APPLICATION FOR STAY OR VACATUR OF COURT'S OCTOBER 19, 2009 ORDER

**BY HAND**
Honorable Denise L. Cote
United States District Judge
500 Pearl Street, Room 1040
New York, NY 10007

Re:   Novoship et al. v. Wilmer Ruperti, et. al.
      07-CV-9876 (DLC)

Dear Judge Cote,

We represent Plaintiffs in the captioned action and, for the reasons articulated below, write to seek either a stay or a vacatur of the Court's October 19, 2009, Order.[1]

As Your Honor is aware, in the October 19, 2009, Order, the Court directed that the attachment be vacated, the funds released and Plaintiffs to show cause by October 30, 2009, why the case should not be closed. Your Honor's rulings were grounded on the Second Circuit's last Friday decision in *Jaldhi*, Nos. 08-3477-cv(L), 08-3758-cv (XAP). With the utmost respect to the Court, we submit that the October 19, 2009, Order is premature, does not take into consideration the exceptions provided in *Jaldhi* and, if implemented, would deny Plaintiffs due process. We also note, as outlined more fully below, that *Jaldhi* places this firm, as well as many other maritime firms (we understand), in a conflict situation and in these circumstances, the time limits set out in the Order do not permit sufficient consideration and resolution of the conflict issues generated by *Jaldhi*. The individual points on which we seek either a stay or withdrawal of the Order include the following:

---

[1] Pursuant to Your Honor's individual rules, we confirm that this is the first request for an extension, the original dates are set forth in the October 19 Order, and Defendants' counsel does not consent to this request.

NYDOCS1/339627.1

1. **The conflict situation.**

As Your Honor is no doubt aware, many of the maritime firms in New York represent parties on both sides of the equation in a Rule B setting – that is, parties who have sought attachments and parties who have challenged them. This firm has always made an effort to avoid placing itself in a conflict situation by not advocating or taking a case which would place in jeopardy an argument or a position advanced by another client on the other side of the "v", so to speak. *Jaldhi*, however, has placed the firm in a conflict situation because it has reversed what was previously well-established Second Circuit authority in favor of the attachability of an EFT in the hands of an intermediary bank. *See, e.g.*, N.Y. Rules of Prof'l Conduct R. 1.7 & 1.9; ABA Opinion 93-377 (Sept. 1993); N.Y. Comm. on Prof'l Ethis Op. 826 (Sept. 12, 2008).

To the extent that it had previously been established law, no conflict was presented by our having taken a case for a plaintiff on the one hand, or a defendant on the other, where that issue was not in play. In view of the unexpected reversal of that issue, however, a significant change in the landscape has occurred and has prompted this firm to undertake a conflicts analysis as to whether we can continue with representation of certain clients, if advancing an argument potentially now available under *Jaldhi* would otherwise prejudice or undermine our representation for clients with a different position.

For Your Honor's guidance, this firm has carefully considered the conflicts issue and has consulted with other New York counsel on this same point. We have reached the conclusion that by operation of *Jaldhi*, we are in now in a conflict, and we are obliged to resolve the conflict. Under these circumstances, we would respectfully submit that it would be inappropriate, given the very limited time prescribed in Your Honor's Order, to compel the results contemplated by the order before we have had an adequate opportunity to resolve that conflict situation and, where appropriate, make arrangements for separate representation of those clients on whose behalf we will no longer be able to act. This process is ongoing as we speak.

In addition, to compel this firm to respond in such a limited timeframe and potentially obligate us to make arguments or take action which could potentially run *contra* to the interests of other clients on whose behalf alternative representation has not yet been arranged would put us in an untenable position and, to be blunt, would be unfair both to these clients and our firm, not to mention the interference this would visit on the administration of justice. For this reason alone, we would ask that the Order, at the very least, be stayed so that the conflicts issue can be resolved and this firm afforded a reasonable opportunity to take the appropriate steps to protect the interests of clients affected by *Jaldhi*.

2. ***Jaldhi* does not require the immediate vacatur of all attachments.**

Moving on, a fair reading of Your Honor's October 19, 2009, Order indicates that the Court has already concluded that *Jaldhi* necessitates the immediate and blanket vacatur of all attachments under Rule B. With the utmost respect, this firm has doubts as to the accuracy of that conclusion and believes that such conclusion overstates the holding.

In this respect, while the section from *Jaldhi* noted in Your Honor's Order does accurately quote that portion of the opinion, the case itself makes clear that EFTs emanating from a defendant were not captured in the specific holding in *Jaldhi*, and that aspect of the decision was remanded to the District Court for a determination of whether there were other reasons why EFTs in that configuration might not be subject to vacatur. Therefore, at the very least, a blanket application as contemplated by the Order would be inappropriate before a factual inquiry is undertaken as to whether there is a basis upon which the particular configuration of one or more of the transfers at issue in a particular case takes them outside the *Jaldhi* holding.

In addition, even if one was to assume, for the purpose of discussion, that *Jaldhi* may eventually be read or determined to apply equally to transfers both from and to a defendant in the hands of an intermediary bank, the decision would ***only*** apply to EFTs in that configuration, but certainly not to direct wires where an intermediary bank was not involved. As I am sure Your Honor is aware, the banks provide only limited information to counsel when they confirm funds are restrained, and it is often the case that counsel is only informed of a restraint but no specifics are provided. Indeed, some banks refuse to give details, or copies of the remittance instructions, even when asked. As such, we cannot, at this moment, or in the limited time afforded by Your Honor's Order, determine whether one or more of the transfers frozen in this case do not involve an intermediary and could therefore properly be the subject of the attachment notwithstanding *Jaldhi*. That determination can only be made after a factual inquiry is undertaken, and we would need to obtain from the banks more specific information about the transfers before an informed decision could be made. Therefore, and again with the utmost respect, simply wiping the slate clean here as contemplated by Your Honor's Order would deprive Plaintiffs of their due process rights to determine whether *Jaldhi* applies to all restraints. Further, Plaintiffs would be equally deprived of the right to test whether, in the words of the Second Circuit, a legitimate basis exists for the maintenance of the attachment over a transfer emanating from Defendants on alternative grounds.

### 3. Retroactivity.

Apart from the foregoing, and while we recognize that there is authority which stands for the general proposition that a judicial change in the law is generally considered to apply to open cases, the Second Circuit has noted that retroactive application is not absolute. In "some exceptional cases, courts may shape relief in light of the disruption of important reliance interests or the unfairness caused by unexpected judicial decisions." *See Margo v. Weiss*, 213 F.3d 55, 60 n. 2 (quoting *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 761-762 (1995)). We think it would be a fair statement to say that *Jaldhi* is clearly a surprise in the sense that the issue treated by the Second Circuit in what it described as a "mini-*en banc* review" was not expected. Indeed, after as many as three (3) prior Second Circuit cases had all held that an EFT in the hands of an intermediary was attachable, no reasonable litigant would have expected this result given the fact that prior *en banc* applications have been denied and *Jaldhi* was not the subject to a disclosed *en banc* review when the decision was issued. Therefore, it would appear that a reasonable argument could be made against retroactive application, as this situation could well fall within the exception outlined by the Second Circuit in *Margo*.

NYDOCS1/339627.1

### 4. Other exceptions under *Jaldhi*

Finally, there are other issues which would need to be addressed before, we submit, any vacatur application would be ripe for consideration. In this respect, we note that the attachment order was re-served on the banks after each of the transfers was restrained, and to the extent funds were either moved to a separate account or the character of the funds under restraint were altered from their initial form at the time of restraint, that change could have an impact on the "property" evaluation – a factor recognized in *Jaldhi* itself, which was the very reason for the remand. As the Second Circuit noted in *Reibor*, 759 F.2d 262 (2d Cir. 1985), even if there was some infirmity with respect to an initial attachment, it is possible for an asset to have been validly re-attached thereafter.

In the limited time available, I hasten to add that we have not even had an opportunity to consider all of the potential means by which *Jaldhi* may lack applicability to this situation and again, with the utmost respect, we consider the timetable set by Your Honor in the October 19, 2009, Order to be unfair and not in the interests of the proper administration of justice, as the timetable necessitates what could be seen as a rush to justice on the issues generated in the wake of *Jaldhi*. There may well be other reasonable legal arguments available to litigants in the position of Plaintiffs here, which time constraints imposed by Your Honor's Order have not afforded us the opportunity to develop. We submit due process necessitates that the new development in the law created by *Jaldhi* be considered in a more orderly and meaningful fashion, but not under the restricted timeframe imposed by the deadlines in Your Honor's Order.

We appreciate the pressure the Court has been under with the proliferation of attachments filed in the wake of the collapse of the world markets last fall, and the interest the Court has in clearing the docket in an appropriate situation. This said, we respectfully submit that based upon the foregoing factors, the Order should either be stayed (for a reasonable period) or vacated entirely to allow the parties to deal with the issues and then present them in a more reasonable timeframe and ordered fashion where the ramifications of *Jaldhi* can be fairly considered.

I know that in the past, Your Honor and I have spoken very bluntly about this remedy and the need for a full, frank and direct discourse between the bench and the bar, and I hope that this letter is not viewed as being over the top, so to speak, in its tone. Suffice it to say the undersigned verily believes that blanket application of *Jaldhi* in this fashion is inappropriate and we therefore approach the Court with this most sincere application that all parties, on both sides of the "v", be given an adequate opportunity to address the ramifications of this decision in a less compressed fashion.

To the extent possible, we would ask that Your Honor consider these points in advance of the deadlines set by the Order such that if Your Honor is not inclined to grant this application, we be given at least some measurable opportunity to approach the Second Circuit on these issues. Otherwise, we are concerned that we will find ourselves in the position of, on the one hand, having to comply with your Order (which could place the firm in a conflict and/or compel that we advance arguments which could compromise the rights of yet other clients) or being found in contempt on the other.

NYDOCS1/339627.1

October 22, 2009
Page 5 of 5

    In closing, we appreciate the Court's attention to the foregoing, and the many times this Court has extended courtesies to us and our clients in the handling of this and other Rule B cases, especially over the course of the last year. Thank you.

                    Respectfully submitted,

                    FREEHILL HOGAN & MAHAR LLP

                    Peter J. Gutowski

PJG:mjg

cc:    <u>Via Email</u>
       Stroock Stroock Lavan, LLP
       Attn: Henry Mendia, Esq. (hmendia@stroock.com)

> The October 19 Order is stayed. The plaintiff shall advise the Court by October 30, 2009 whether the attached funds were EFTs. The plaintiff must show cause by November 9, 2009 why any seized EFTs should not be vacated.
>
> Denise Cote
> October 23, 2009

NYDOCS1/339627.1